# EXHIBIT A

## **CONFIDENTIAL SETTLEMENT AGREEMENT AND RELEASE**

This Confidential Settlement Agreement and Release ("Agreement") is made and entered into this ___ day of April 2008 (the "Effective Date") by and between C. Earl Grant ("Grant"), on the one hand, and the National Board of Medical Examiners ("NBME") and the Federation of State Medical Boards ("FSMB") on the other.

**WHEREAS,** NBME is an independent, not-for-profit organization which provides high-quality examinations for the health professions; and

**WHEREAS,** FSMB is a national, not-for-profit organization representing state medical boards of the United States and its territories; and

**WHEREAS,** NBME and FSMB co-sponsor the three-step United States Medical Licensing Examination ("USMLE"); and

**WHEREAS,** NBME administers and scores Step 3 of the USMLE; and

**WHEREAS,** Grant has previously taken Step 3 of the USMLE but has not received a passing score; and

**WHEREAS,** on or around September 19, 2007, Grant initiated a lawsuit in the United States District Court for the Northern District of New York, styled *C. Earl Grant v. National Board of Medical Examiners, Federation of States Medical Board*, 7:07-cv-00996-TJM-GJD (the "Litigation") alleging that his examinations were not properly scored and seeking damages and injunctive relief, and

**WHEREAS,** NBME and FSMB deny all of the allegations in the Litigation and assert that at all times their actions with respect to Grant were proper and lawful; and

**WHEREAS,** in the interest of settlement and compromise of the claims made by Grant in the Litigation, and in order to avoid the costs and expenses of litigation, it is the

1

parties' desire to settle amicably any and all claims that have been or could have been raised by Grant with respect to the Step 3 USMLE examination; and

**WHEREAS,** in the interest of avoiding disagreement and unnecessary litigation in the future, it is the desire of the parties to agree upon the procedures to be followed in connection with the scoring of any future examinations taken by Grant.

**NOW, THEREFORE,** in consideration of the mutual promises, terms and conditions made below, the parties agree as follows:

Score Re-check of Certain Step 3 Examinations

1. The parties agree to and acknowledge the following facts:

   a. Grant took the Step 3 USMLE on or around July 9, 2003, July 21, 2004, December 7, 2004, July 25, 2005 and November 1, 2006 (the "Prior Step 3 Examinations").

   b. Grant did not receive passing scores on any of the Prior Step 3 Examinations.

   c. On or around August 30, 2004, Grant requested that NBME rescore the Step 3 USMLE he took on July 21, 2004. Grant did not enclose the full score recheck fee with his request.

   d. On or around September 7, 2004, FSMB informed Grant by letter that he must submit the full fee for the score recheck by November 16, 2008, in order for his score recheck request to be processed.

   e. On or around October 5, 2004, Grant submitted the remainder of the score recheck fee and, thereafter, on or around October 28, 2004, NBME performed a score recheck of the July 21, 2004 Step 3 USMLE

2

in accordance with Grant's request. Following the score recheck, NBME reported to Grant that his score was accurate as originally reported.

    f. On or around August 7, 2006, Grant requested NBME rescore the Step 3 USMLE examinations he took on July 9, 2003, December 7, 2004 and July 25, 2005.

    g. NBME determined Grant's request for rescoring was not timely made in accordance with USMLE policy as set forth in the USMLE *Bulletin of Information* and, accordingly, Grant's July 9, 2003, December 7, 2004 and July 25, 2005 Step 3 examinations were not rescored.

    h. On or around August 2, 2007, Grant requested NBME rescore the Step 3 USMLE he took on November 1, 2006.

    i. NBME determined Grant's request for rescoring was not timely made in accordance with USMLE policy as set forth in the USMLE *Bulletin of Information* and, accordingly, Grant's November 1, 2006 Step 3 examination was not rescored.

2. Notwithstanding the fact that one or more of Grant's earlier requests for rescoring of the Prior Step 3 Examinations may have been untimely made, NBME agrees to perform a score recheck of each of the Prior Step 3 Examinations.

3. In performing said score rechecks, NBME will employ its established procedure for score rechecks, that is:

    a. The electronic record of the answers recorded by the computer when Grant sat for a particular Step 3 USMLE examination (the "Outcome

3

Record") for each of Grant's Prior Step 3 Examinations will be pulled electronically from NBME's database.

b. The Outcome Record for each Prior Step 3 Examination will be scored by a software program (the "QA Scoring Software") separate from the primary software which initially scored such Outcome Record (the "Primary Scoring Software").

c. The QA Scoring Software will generate the following scores for each Prior Step 3 Examination: (1) a multiple choice raw score; (2) a CCS raw score; (3) a combined raw score (multiple choice raw score plus CCS raw score); (4) a two-digit reported score; and (5) a three-digit reported score.

d. For each Prior Step 3 Examination, the scores generated by the QA Scoring Software will be electronically compared to the scores generated by the Primary Scoring Software when such Prior Step 3 Examination was initially scored.

e. Results of the electronic comparison for each Prior Step 3 Examination will be reviewed to determine whether any discrepancy was identified. Steps (a) through (e) herein are referred to collectively as the "Prior Score Recheck."

4. NBME will report the results of the Prior Score Recheck to Grant's attorney within thirty (30) days of the Effective Date of this Agreement, as follows: If no discrepancies are identified, NBME will report that the scores were found to be accurate as reported. If a discrepancy is found, NBME will identify and report the discrepancy.

5. If, as a result of performing the Prior Score Recheck, the original score or pass/fail outcome of any Prior Step 3 Examination is determined to have been incorrect, NBME agrees to correct said original score and/or pass/fail outcome in accordance with the results of the score recheck.

6. Grant acknowledges and agrees that the Prior Score Recheck is objective and fair. Grant acknowledges and understands that, because the Prior Step 3 Examinations were originally administered, scored and checked electronically, the likelihood the Prior Score Recheck will result in a change in any particular Prior Step 3 Examination score or pass/fail outcome is remote.

7. Grant nevertheless acknowledges and agrees that, provided NBME performs the Prior Score Recheck in accordance with the terms of this Agreement, he will not further challenge or object to his scores for the Prior Step 3 Examinations or to the Prior Score Recheck for any reason.

<u>Future Examinations</u>

8. In the event that, following the Effective Date of this Agreement, Grant takes any examinations sponsored or administered by NBME and/or FSMB ("Future Examination"), NBME and/or FSMB agrees to score such Future Examinations in accordance with its then-regularly established procedures, in the same manner as such Future Examinations are scored for other examinees (the "Exam Scoring Procedures").

9. Grant agrees and acknowledges with respect to any Future Examination he may take that is scored in accordance the Exam Scoring procedures, in the same manner as such Future Examinations are scored for other examinees, that such Exam Scoring Procedures are objective and fair.

5

10. In the event Grant wishes to request a score recheck of any Future Examination, including without limitation, any future Step 3 USMLE examination, Grant agrees to abide by the established policy for requesting a score recheck, as may be published by NBME and/or FSMB from time to time (the "Established Recheck Policy").

11. Grant agrees and acknowledges that, if he does not request a score recheck in accordance with Established Recheck Policy, NBME and/or FSMB will not complete the requested recheck.

12. Provided that Grant requests a recheck in accordance with Established Recheck Policy, NBME agrees to conduct and report the results of any such recheck in accordance with its then-regularly established procedures, in the same manner as such rechecks are performed for other examinees (the "Recheck Procedures").

13. Grant agrees that, provided any Future Examination is scored in accordance with the Exam Scoring Procedures and rechecked (provided Grant requests a recheck in accordance with Established Recheck Policy) in accordance with the Recheck Procedures, he will not further challenge or object to his score for any Future Examination or to the Exam Scoring Procedures or Recheck Procedures for any reason.

### Payment

14. On or prior to the Effective Date of this Agreement, Grant agrees to pay to NBME the sum of Three Thousand Dollars ($3,000.00) in full satisfaction of the November 27, 2000 Order of the United States District Court for the District of Minnesota, Fourth Division, and the March 12, 2008 Order of Magistrate Judge DiBianco, copies of which are attached hereto as Exhibits A and B, respectively.

15. Notwithstanding anything to the contrary in this Agreement, NBME shall have no obligation to perform any score rechecks of the Prior Step 3 Examinations unless and until it receives Grant's payment of the sum set forth in paragraph 13.

Release

16. In consideration of the promises and commitments made herein, Grant, on behalf of himself and heirs, administrators, executors, assigns, attorneys and all others claiming rights through him or acting on his behalf (collectively, "Releasors"), hereby releases and discharges NBME, FSMB and their respective parents, subsidiaries and affiliates (collectively the "Releasees") and each of the Releasees' past, present or future shareholders, members, directors, officers, employees, representatives, agents, predecessors, successors, assigns, attorneys and insurers from any and all claims, demands and rights of action which he has had or may have, whether known or unknown, against NBME or FSMB in connection with any examination sponsored, administered, scored, rescored or rechecked by or for NBME or FSMB.

17. Grant agrees that he will not sue in court or file an administrative claim, complaint, charge or action or suit of any nature against NBME or FSMB on any claim, demand or right of action released in this Agreement, except for the purpose of enforcing the terms of this Agreement.

Confidentiality

18. The parties hereto agree not to disclose this Agreement, or any part of it without the prior written consent the other parties, except (1) NBME and FSMB may disclose the fact and terms of this Agreement to its members, officers and directors, insurers and outside auditors, and to employees or agents of NBME or FSMB or related

entities who have a legitimate need to know the terms of the Agreement in the course of performing their duties, provided that such persons or entities shall be bound by the duties of confidentiality applicable to NBME and FSMB, and (2) the parties may disclose this Agreement as may be required by law. In the event that any party is asked to comment on the Litigation, such party shall be permitted only to state that "the matter has been resolved."

### Dismissal of Litigation

19. The parties agree that within ten (10) days of the Effective Date of this Agreement, their respective counsel shall execute and file with the Court for signature by the Court a Stipulation of Dismissal in the form attached hereto as Exhibit C.

### No Admission of Liability

20. NBME and FSMB specifically deny any liability to Grant for any and all claims asserted by Grant against them. Nothing contained in this Agreement shall be construed as an admission by NBME or FSMB of any violation of state, federal, or local statute, regulation, ordinance, or principle of common law or its own policies and procedures, or that it has engaged in wrongdoing of any kind.

### Assignment

21. The parties agree that the rights and obligations under this Agreement shall inure to and be binding upon NBME and FSMB and their successors and assigns, but the rights and obligations of Grant hereunder are personal and may not be assigned to any other person.

### Severability

22. If any provision of this Agreement is determined to be invalid or unenforceable, the remaining provisions of this Agreement shall not be affected thereby and shall be binding upon and enforceable against the parties, and any provision determined to be invalid or unenforceable shall be reformed as necessary to render it valid and enforceable and to reflect the intent of the parties, to the maximum extent possible under applicable law.

### Entire Agreement

23. This Agreement constitutes the entire agreement between the parties with respect to the subject matter hereof and supersedes all prior agreements and understandings, oral and written, between the parties with respect to the subject matter hereof. Neither party shall be bound by, or liable for, any alleged representation, warranty, promise, inducement or statement of intention not embodied in this Agreement. This Agreement may not be modified, altered or changed in any respect, except upon the express written consent of all parties.

### Construction

24. The parties acknowledge that each party and its counsel have reviewed and have had an opportunity to revise and comment upon this Agreement and that the normal rule of construction to the effect that any ambiguities are to be resolved against the drafting party shall not be employed in the interpretation of this Agreement or any amendments hereto.

## Voluntary and Knowing Action

25.     Grant acknowledges that he has been represented by his own attorney, that he has read and understands the terms of this Agreement, and that he is voluntarily entering into the Agreement based upon the advice and recommendation of his attorney.

## Headings

26.     The subject headings of this Agreement are included for convenience only and shall not affect the construction or interpretation of any of its provisions.

## Counterparts

27.     This Agreement may be executed in counterparts and, when taken together, shall constitute the entire agreement between the parties.

## Governing Law

28.     This Agreement will be construed and interpreted in accordance with the laws of the State of New York.

[REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be signed below.

Dated: April ___, 2008        _____
                              C. Earl Grant


Dated: April ___, 2008        National Board of Medical Examiners


                              By: _____
                              Its: _____


Dated: April ___, 2008        Federation of State Medical Boards


                              By: _____
                              Its: _____

11

EXHIBIT A

12

EXHIBIT A