UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| | RE: Civil No. CV 3-96-310 |
| C. Earl Grant, | RE: File No. 99-66 DSD/JMM |
| Plaintiff, | |
| | **CIVIL ACTION** |
| vs. | **AMENDED COMPLAINT** |

L. Thompson-Bowles, Brian Wilsford, Deborah Cusson

David Johnson, Gerald S. Golden, National Board of Medical Examiners

Federation of States Medical Boards

Defendants

---

## INTRODUCTION

1.  Plaintiff, Carrol Earl Grant, is an adult individual with over 17 years of service in the United States Military, whose legal address is P.O. Box 551, Fort Drum, NY 13602.

2.  Defendant National Board of Medical Examiners/Federation of States Medical Board (FSMB) is an organization authorized to offer examinations, and responsible for the USMLE Steps 1, 2, and 3 examination in the licensing, certifying, and credentialing eligible candidates for post-secondary education, trades and professions, whose principal

1

places of business are 3750 Market Street, Philadelphia, PA 19104 (NBME) and 400 Fuller Wiser Road, Suite 300, Euless, TX 76039 (FSMB).

3.      Defendant L. Thompson-Bowles was the President of NBME authorized to offer examinations USMLE Steps 1, 2, and 3, and responsible for administering these exams used for licensing, certifying, and credentialing eligible candidates for post-secondary education, trades and professions, whose principal place of business and address is 3750 Market Street, Philadelphia, PA 19104.

4.      Defendants Brian Wilsford, Deborah Cusson, and David Johnson, are adult individual agents or officers of FSMB, who are employed in the USMLE Step 3 Examination Department during the period of incidents set forth in this complaint, and whose principal place of business and address is 400 Fuller Wiser Road, Suite 300, Euless, TX 76039. These individuals are responsible for communicating falsified USMLE Step 3 examination results to the States Medical Licensing Boards in the NBME/FSMB effort to deny plaintiff's access to the medical profession as a licensed physician.

5.      Defendant Gerald Golden is an employee of the NBME. Golden was the Vice President, Division of Examinee Support Services and Medical School Liaison, responsible for the publishing falsified grade reports in reference to plaintiff's USMLE Steps 1 and 2 exam results, and whose normal place of business was 3750 Market Street, Philadelphia, PA 19104.

6.      Jurisdiction of this claim is based upon presenting a federal question and diversity of citizenship under Title 28, United States Code, Section 1331 and 1332.

7. In 1994 through 1999, plaintiff was a medical student enrolled at the University of Minnesota Medical School, and subject to examination, licensing, certification and credentialing by the defendants.

8. In or about 1994, 1995, 1996, 1997, 1998, 2003, 2004, 2005 and 2006, plaintiff took licensing and certification exams offered by the defendant and its affiliates, including the USMLE Step 1-3, in order to complete his Medical Doctorate degree curricula requirements, proceed to residency training, and become licensed as a Board Eligible and Certified physician.

9. While sitting these exams plaintiff was a qualified disabled, under the Americans with Disability Act, Title 42, United States Code, Section 12102 (2) and 12131 (2) (42 USCS § 12112(2) and 12131(2), and the Human Rights Act of Minnesota (Minn. Stat. § 363A.03, subd. 36 (2006), known to the defendants, and entitled to reasonable accommodation. By these provisions, plaintiff as an eligible person was entitled to reasonable accommodation in the form of more time than the standard duration NBME/FSMB allowed non-disabled persons to take the USMLE examinations.

10. On or around March and August 1995, plaintiff, by timely submitting his request accompanied with adequate supporting documentation, requested the defendants' reasonable disability accommodation during USMLE Step1 exams held respectively in June and September, 1995.

11. The defendants unjustifiably and without explanation denied the plaintiff's request for reasonable accommodation on both occasions, instead notified the plaintiff of denial late, respectively on May 19, 1995 for the June 1995 exam, and on September 11, 1995, for the September 1995.

**12.** The plaintiff had adequately prepared for the examination on both occasions, but took the exams without reasonable accommodation, and was unable to complete all the questions solely because the defendants improperly denied reasonable accommodation for his disability.

**13.** The defendants then discriminately graded the plaintiff's June and September 1995 USMLE Step1 exams, improperly assigned the plaintiff failing grades, and unjustifiably refused to objectively re-grade the plaintiff's exams, despite the plaintiff's request and settlement of required fees, contrary to the defendant's own policy to provide such services upon request and payment of fees.

**14.** On or around 1995, following the foregoing defendant's actions and decisions, and based solely on the defendants' denial of the plaintiff's request for reasonable accommodation, the University of Minnesota Medical School Scholastic Standing Committee (the Committee) suspended the plaintiff from school, and denied the plaintiff's request for alternative examination. Subsequently, in February 1996, the Committee concluded it had erred in believing it required permission from the defendants to provide the plaintiff alternative examination, and reversed its earlier decision by permitting the plaintiff to sit for the alternative examination, and in June 1996, continue his studies.

**15.** On or around April, 1996, plaintiff applied to the defendants for alternative examination, and requested reasonable accommodation from the defendants by timely submitting adequate supporting documentation with request. The defendants again denied the plaintiff's request, verbally notified the plaintiff of this decision four days before scheduled examination date, and in writing one day before the test date.

16. Plaintiff sued the defendant in the federal court in or around April 1996. Faced with the lawsuit, the defendants requested the plaintiff for an out of court settlement, and the parties entered into an agreement on December 29, 1997. A true copy of the plaintiff's 1996 complaint is available for submission as **Exhibit A.**

17. Under the agreement, the defendants agreed that immediately after each examination taken by the plaintiff, copies of all the plaintiff's examination answer sheets and secured in sealed envelopes to be kept by the defendant's attorney. The agreement provided that these copies and answer keys would be used by an independent objective reviewer to re-grade any future examination upon plaintiff's request using the appropriate answer keys. A true copy of this 1996 Agreement was never provided to plaintiff in writing, however, this promise was upheld by the defendant in reference to the USMLE Steps 1 and 2 examinations.

18. Based on that agreement, plaintiff sat the USMLE Step 1 and alternate exams in June, 1996, and requested as provided by the agreement, copies of the examination answer sheets be made and provided to the defendant's attorney for safekeeping. Plaintiff received passing scores for both exams and progressed toward completing his studies at the medical school.

19. In December, 1996, plaintiff applied to the defendant for USMLE Step 2 exams administered by the defendant in March, 1997, before the December 24, 1996 submission deadline, and requested reasonable accommodation from the defendant by certified mail with a request for return receipt. The defendant received the application and request in advanced of the December 24, 1996, as evidenced by the returned receipt. A true copy of this return receipt is attached to this complaint and marked as **Exhibit B.**

The defendant, by a letter dated January 8, 1997, improperly claimed to have received the application late and demanded an additional twenty five dollars ($25.00) in late payments fees. Plaintiff paid the $25.00 fee, and provided the defendant a copy of the returned receipt establishing their timely receipt of the application. Defendant subsequently expressed having made an error and promised to refund the assessed fee to the plaintiff. Four days before the March, 1997 USMLE Step 2 exams, the defendant by a telephone call from its General Counsel, Janet Carson, notified plaintiff that it had denied the plaintiff's request for reasonable accommodation, stating that previously submitted documentation were insufficient, and requested for additional documentation. Ms. Carson promised the plaintiff that she would request a refund of the plaintiff's application fee of $235.00.

20.    Plaintiffs, upon his attorney's advise, and based solely on the defendants' denial of his reasonable accommodation request, did not to take the March, 1997 USMLE Step 2 exam.

21.    On March 20, 1997, the defendants refunded plaintiff's application and late fees amounting to two hundred sixty dollars ($260) by check number 318480. Army Health Professional Scholarship (HPSP) personnel informed plaintiff on April 22, 1997, that his active duty assignment was being cancelled based on the defendants' decision. Since defendants had denied the plaintiff's reasonable accommodation request, the Student Affairs representative at the University of Minnesota Medical School, had informed the HPSP that the plaintiff would likely never graduate from medical school.

22.    Plaintiff, in May 1997, re-applied for USMLE Step 2 exams offered on August 26-28, 1997 and requested reasonable accommodation from the defendant, submitting

6

further documents to support his request. Defendants, after persistent and concerted written and telephone inquiries on timely decision by the plaintiff, plaintiff's attorney, and university officials, notified the plaintiff that it would grant reasonable accommodation to the plaintiff during the August 26, 1997 exams. The defendant notified plaintiff of this decision in two letters dated respectively August 19 and 21, 1997. The defendants also recanted its earlier decision denying plaintiff's reasonable accommodation request, stating that at no point had it communicated either denying, or granting plaintiff's requests for reasonable accommodation.

23. Plaintiff sat the USMLE Step 2 exams offered respectively in August, 1997, and March and August 1998, with reasonable accommodation. The defendant scored and improperly assigned marginal failing plaintiff on all these occasions then unjustifiably refused to objectively re-grade the tests **(Exhibit C)**.

24. Plaintiff's suit filed against the defendant in the Federal District Court in April, 1996, remained pending, a pre-trial deposition hearing was conducted on November 7, 1997, the defendants and plaintiff were both represented by counsel; Janie S. Mayeron and Gerald Golden represented the defendants' and Rodreick Macpherson represented plaintiff. Once more faced with a lawsuit, the defendants requested the plaintiff for an out-of-court agreement soon after the deposition hearing, but before reporting the score for the August 1997 USMLE Step 2 exams.

25. A settlement conference, presided over by the Federal Court Judge Jonathan G. Lebedoff, was conducted on December 29, 1997 in the Judge's Chamber. During the conference plaintiff was only allowed to discuss terms of the settlement with his attorney in a separate room, following which, his attorney would meet with the defendants'

attorneys. Plaintiff hand-wrote a brief summary of requests, including provision for providing similar accommodations, copying answer sheets and/or computerized responses for all future examinations taken by plaintiff, which was presented to the defendant's attorneys and employee Gerald S. Golden, Director of Examinee Records. Defendants accepted these plaintiff's requests as part of a proposed settlement agreement, but the defendant later claimed that those terms were not presented at the settlement conference, and therefore were never part of the proposed agreement.

**26.** Plaintiff requested the defendants for an objective re-grading of his August 1997 USMLE Step 2 exams, as provided by 1996 agreement and described under paragraph 12, and paid the required fees, but the defendants again improperly refused to permit an objective re-grading of the plaintiff's exams.

**27.** Plaintiff took the USMLE Step 2 exam in March, and August, 1998. Defendant maliciously issued plaintiff a failing grade by "2" and "1" points, respectively, and refused to objectively hand-score those exams. See attorney Larry Reed's affidavit **Exhibit "D"** following a review of the defendant's documentation and claim to have objectively re-graded plaintiff's USMLE Step 2 exams and found no change from the originally reported exam scores.

**28.** The defendants, by promising an objective re-grading of the plaintiff's exam without intent to honor the promise, fraudulently induced the plaintiff to sign a settlement agreement on June 19, 1998. Plaintiff's attorney notified the plaintiff on June 18, 1998, that the defendants had promised to re-grade the test, using criteria stated in the proposed settlement agreement and in its policy manual, if it was signed by June 19, 1998. According to this promise the plaintiff would have been permitted to begin his residency

training on June 24, 1998. The plaintiff relying on these promises signed the agreement on June 19, 1998, while the defendant delayed signing the agreement until July 1, 1998. See Settlement Agreement **Exhibit E.** This defendants' delay prevented the plaintiff from beginning his residency training on June 24, 1998. Plaintiff re-took the USMLE Step 2 exam in August, 1998. The defendants issued a failing grade by "1" and subsequently refused to objectively re-grade the plaintiff's examination, and later claimed that by signing the agreement, plaintiff had relinquished his rights to prove the defendants' discrimination or retaliation against him in violation of the 1998 agreement.

**29.** The defendants subsequently persisted in violating the plaintiff's civil right to equally access the medical profession and be free from discrimination by deliberately violating the terms of the 1998 agreement and its procedural agreement to provide fair and accurate grading, continued reprisal, discrimination, and unfair treatment of the defendant. Specifically, the defendant refused to objectively grade and re-grade plaintiff's August 1997, and March and August 1998 USMLE Step 2 exams, and the USMLE Step 3 exam in July 2003, July and December 2004, July 2005 and November 2006. In December 2002, plaintiff submitted application to take the USMLE Step 3 examination in March 2003, the defendant intentionally cancelled plaintiff's application in March 2003, without notice to plaintiff to plaintiff **(Exhibit F)**. The defendant granted the permit to plaintiff in June 2003, with an incorrect first name and caused further delays for plaintiff who was required to provide his USMLE Step 3 results to the US Army Medical Department by April 2003, to report to his active duty assignment on July 1, 2003. Plaintiff was unable to meet the deadline for his July 1, 2003, assignment and was

9

subsequently granted a corrected permit by the defendant later in July to take that examination.

**30.** The defendant continued its discriminatory practices against plaintiff during plaintiff's medical residency training and coerced with Program Directors to report inaccurate grading evaluation to the American Board of Internal Medicine (ABIM), one of its affiliate organizations in its effort to deny plaintiff's right and eligibility to pursue the ABIM Certification examination. See documentation submitted to the Ohio State Medical Board by plaintiff. **Exhibit G.**

**31.** Further, as a result of the defendants' reprisal, discrimination and gross disregard for plaintiff's civil rights, plaintiff has incurred, and expects to incur in the future, economic losses estimated to be in excess of $2,000,000.00 in the form of :

  **a.** Loss in income due to the delayed graduation from medical school, and resulting delay in pursuing residency training and becoming a licensed physician;

  **b.** Additional tuition fees, re-registration and application fees for retaking the USMLE Steps 1, 2, and 3 exams due to the defendant's continued discrimination in its grading and scoring of plaintiff's examinations;

  **c.** Lack of advancement in his professional development in becoming a State Board Certified, and ABIM Certified and licensed practicing physician due to defendant's reckless disregard and discriminatory practices; and,

  **d.** Loss of opportunity to pursue further career fellowship training to provide a more meaningful service as a qualified and fully trained, and licensed practicing physician due to the defendant's reckless disregard and fraudulently discriminatory practices in its grading and scoring of plaintiff's examinations, and its willful intent to

prevent plaintiff's access to the medical profession, and prevent his opportunities for professional growth and development.

## COUNT I

## VIOLATION OF THE AMERICANS WITH DISABILITY ACT
## (42 USCS § 12189)

34.   Paragraphs 1-33 above are incorporated as though set forth at length.

35.   By refusing to provide plaintiff reasonable accommodation during the USMLE Step 1 and 2 exams, unjustifiably canceling the USMLE Step 2 exam in March, 1997 and the USMLE Step 3 exam in March, 2003, and refusing to objectively and without retaliation or discrimination, grade and/or re-grade the plaintiff's exams, the defendants discriminated against plaintiff based on his disabilities, in violation of Title 42, United States Code, Section 12189, and the terms of the out-of-court settlement agreement.

36.   By its retaliation, unfair and subjective grading and scoring, and untimely communication, defendant willfully and intentionally continued to violate plaintiff's civil rights, as a qualified disabled under Title 42, United States Code, Section 12131. As a result of the defendant's continued discriminatory actions, plaintiff has suffered injuries as set forth in Paragraphs 31.

11

## COUNT II

### VIOLATION OF THE MINNESOTA HUMAN RIGHTS ACT

### (Minn. Stat. § 363A.03, subd. 36 (2006)).

37. Paragraphs 1-33 above are incorporated as though set forth at length

38. By refusing to accommodate plaintiff's disability initially, not allowing him additional time to take the USMLE Step 1 and Step 2 exams, continued reprisal by intentionally delaying notification denying reasonable accommodation, subjective grading, refusing to objectively re-grade and correct plaintiff's exams, defendant has unduly delayed the progress of plaintiff's career, and continues to discriminate against the plaintiff on the basis of his disability, in violation of the Minnesota Human Rights Act, (Minn. Stat. § 363A.03, subd. 36 (2006)).

39. As a result of the defendant's continued discriminatory actions, plaintiff has suffered injuries as set forth in Paragraph 31.

## COUNT III

### VIOLATION OF THE CIVIL RIGHTS ACT OF 1964

### (42 USCS § 2000a)

40. Plaintiff re-alleges Paragraphs 1 – 55.

41. By refusing to accommodate plaintiff's disability initially, not allowing him additional time to take the USMLE Step 1 and 2 exams, cancelling the USMLE Step 3

exam in March, 2003, continued reprisal through intentionally delaying notification of denial of request for reasonable accommodation, continuous subjective grading and refusing to objectively re-grade and correct plaintiff's examination scores, defendants unduly delayed progression of the plaintiff's career, impermissibly discriminated, and continues to discriminate against plaintiff on the basis of his disability, race, color, and national origin, in violation of the Civil Rights Act of 1964, Title 42, United States Code, Section 2000a (42 USCS § 2000a) and subsequent amendments.

42.   As a result of the defendant's continued discriminatory actions, plaintiff has suffered injuries as set forth in Paragraphs 31.

## RELIEF REQUESTED

WHEREFORE, plaintiff demands the following relief:

1.   A declaratory judgment declaring that:

    **a.**   The defendants violated the plaintiff's rights under the American with Disabilities Act, by refusing to accommodate the plaintiff's disability, and continue to violate these rights through reprisal, and refusal to provide objective and non-discriminate grading of plaintiff's examinations.

    **b.**   The defendant violated the plaintiff's rights under Minnesota Human Rights Act, by refusing to accommodate plaintiff's disability, and continues to violate this Act, through reprisal, and refusal to provide objective and non-discriminate grading of the plaintiff's examinations.

c.  The defendant violated the plaintiff's rights under the Civil Rights Act of 1964, by denying the plaintiff, a member of the protected class access to the medical profession, and continues to violate the plaintiff's civil rights through reprisal and refusal to provide objective and non-discriminate grading of the plaintiff's examinations.

2.  Injunctive relief,

a.  Directing defendants, jointly and severally, to discontinue their discriminatory activities against plaintiff, and ordering the defendants to grant the plaintiff equal access to the medical profession by engaging in non-discriminate examination, licensing, certification, credentialing of the plaintiff to the medical profession.

b.  Ordering the defendant to evaluate all plaintiff's future USMLE and ABIM Certification exams with objective and fair grading, objective process to correctly re-grade plaintiff's exams using the corresponding answer keys and answer sheets that were copied and secured at the time of the plaintiff's examinations, or computerized data based answer sheets used in the grading and scoring of present and future computerizes examinations.

c.  Ordering the defendant to provide the name(s), and qualification of all reviewer(s), and their evaluation criterion upon a request for re-grading of an examination, where a review is conducted by the defendants instead of a court-appointed reviewer.

      d.    Ordering the defendant to provide answer keys and plaintiff's examination to the Court to facilitate an unbiased review process in the grading and scoring of plaintiff's examinations.

      e.    Ordering such affirmative relief as may be necessary to correct the impact of the defendant's discriminatory conduct on the plaintiff's career, character, and reputation.

3.    Judgment for compensatory damages in favor of the plaintiff and against the defendants jointly and severally, and award of compensatory damages to the plaintiff of an amount to be decided by the court, in the interest of equity and commensurate with the defendants egregious violation of the plaintiff's rights under the Civil Rights Act 1964 and the Minnesota Human Rights.

4.    Judgment for punitive damages in favor of the plaintiff and against the defendants jointly and severally, in an amount to be decided by the Court in the interest of equity and commensurate with the defendants' deliberate, continuous and egregious violation of the plaintiff's rights under the Civil Rights Act 1964 and the Minnesota Human Rights.

5.    An award of treble damages in favor of the plaintiff and against the defendants pursuant to the States Human Rights Acts, and the Civil Rights Act.

6.    Judgment for compensatory damages in favor of the plaintiff and against the defendants jointly and severally, ordering the defendants to pay all of plaintiff's reasonable attorneys' fees and expenses.

7.  For such other and further relief as the Court may determine to be just and equitable.

Respectfully Submitted,

Dated: September 15, 2008      BY:  *C. Earl Grant, M.D.*
C. Earl Grant, M.D., Ph.D.
9501 Farrell Road
P.O. Box 1067
Fort Belvoir, VA 22060