# **EXHIBIT**

# **E**

## GRANT

## CONFIDENTIAL SETTLEMENT AGREEMENT AND RELEASE

This Confidential Settlement Agreement and Release ("Agreement") is made and entered into between C. Earl Grant and the National Board of Medical Examiners ("NBME").

**WHEREAS**, NBME administers and scores Step I and Step II of the three-step United States Medical Licensing Examinations ("USMLE") to eligible students and graduates of United States and Canadian accredited medical schools; and

**WHEREAS**, NBME has informed Grant that it does not determine accommodation for Step III of the USMLE; and

**WHEREAS**, Grant has received a diagnosis of Attention Deficit-Hyperactivity Disorder: Predominantly Inattentive Type ("ADD") and has asserted that he is disabled as defined by the Minnesota Human Rights Act ("MHRA") and the Americans with Disabilities Act ("ADA"); and

**WHEREAS**, Grant requested accommodation from NBME in connection with Step I and Step II of the USMLE, and

**WHEREAS**, NBME, after reviewing Grant's submitted documentation of ADD and concluding that it was insufficient to support a diagnosis of ADD, denied Grant the accommodation he requested; and

**WHEREAS**, Grant is one of the plaintiffs in a lawsuit against NBME entitled *C. Earl Grant and Celi Watts v. National Board of Medical Examiners*, United States District Court, District of Minnesota, Third Division, Civil File No. 3-96-310 ("lawsuit"), in which he has asserted claims against NBME pursuant to the MHRA and ADA; and

**WHEREAS**, NBME denies all of Grant's claims and asserts that at all times its actions with respect to Grant were proper and lawful; and

**WHEREAS**, Grant and NBME have previously entered into an agreement concerning accommodations concerning Grant's request for accommodations made in connection with the Spring 1996 Step I examination (hereafter referred to as "the Spring 1996 Agreement"); and

**WHEREAS**, NBME later granted the request for accommodation which Grant submitted in connection with his application to take the Fall 1997 Step II examination based upon all of the documentation provided by Grant to support his request for accommodation, including the additional documentation which he submitted in connection with that request for accommodation; and

**WHEREAS**, in the interest of settlement and compromise of the charges and claims made by Grant, and in order to avoid the costs and expenses of trial and in order to resolve Grant's concerns of potential damage to his character and reputation, without any admission of liability, it is the mutual desire of NBME and Grant to settle amicably any and all claims that have been or could have been raised by Grant in regard to potential accommodation on Step I and Step II Examinations of the USMLE; and

**WHEREAS**, in the interest of avoiding disagreement and unnecessary litigation in the future, it is the mutual desire of the parties to agree upon accommodations to be provided in connection with future Step II examinations applied for by Grant, and which are determined by NBME.

**NOW, THEREFORE**, in consideration of the mutual promises, terms and conditions made below, the parties agree as follows:

1. <u>Accommodation</u>. NBME will not challenge the diagnosis of ADD which Grant has already received, with respect to all future examinations it administers and for which it makes

2

decisions whether an applicant will be granted examination accommodations. In addition, NBME agrees to continue the accommodation it provided Grant in connection with the Fall 1997 Step II examination in connection with any future Step II examination administered by the NBME and for which he is eligible to take and which he takes, in the same manner it has accommodated Grant in the last Step I and Step II taken by him, *i.e.* with time and one-half to take the examination and a low-distraction room in which to take it, <u>provided that</u> Grant follows the NBME's usual procedure and timely applies for and formally requests accommodation for each test he takes in the future. However, Grant will not be required to provide any additional documentation of his disability, nor shall Grant be required to resubmit information previously accepted by NBME.

    2.    <u>Settlement Payment</u>. Upon execution of this Agreement, NBME agrees to pay Grant and Grant agrees to accept the sum of Twenty-one Thousand Dollars ($21,000.00) as settlement of all Grant's claims, including his claims for compensatory damages, to be paid as follows: one check shall be issued to "C. Earl Grant and the Legal Aid Society of Minneapolis".

    3.    <u>Taxes</u>.   NBME will issue a Form 1099 to Grant. It is specifically understood and agreed that any tax liability for payment by Grant of taxes on the Settlement Payment is solely Grant's responsibility. NBME is not waiving any rights it may have to seek relief from Grant if Grant fails to pay any tax due on the Settlement Payment and if any taxing authority seeks payment of Grant's taxes from NBME. Similarly, Grant is not waiving any rights he may have against NBME if any taxing authority seeks payment from Grant for NBME's failure to comply with the requirements of any applicable tax law or regulation.

3

4. <u>Nondisclosure</u>. NBME hereby agrees not to affirmatively disclose Grant's ADD diagnosis including but not limited to: any of the documentation Grant submitted in support of his requests for accommodation and the reports concerning Grant's condition prepared by agents, representatives and/or employees of NBME to any residency program, potential employer or any other person, except by consent of Grant or by order of a court. However, when requested by Grant or authorized by Grant to provide score reports or transcripts, NBME will disclose on such documents the fact of Grant's accommodation and will disclose upon inquiry the nature of the accommodation.

5. <u>Preservation of Examination Results</u>.

(a) For any Step II examination Grant takes in a pencil and paper format which is administered by NBME in the Twin Cities (Minneapolis/St. Paul area) and for which Grant has requested that a sealed copy of the answers be made pursuant to this subparagraph, NBME agrees to have copies made of Grant's answer sheets immediately after he submits them, and seal the copy in an envelope containing on the outside of the envelope Grant's name, the date when the envelope is sealed and the name of the person who sealed the copy of Grant's answer sheets in the envelope. The sealed answer sheets shall then be hand-delivered to the law firm of Leonard, Street and Deinard (or to any other law firm which NBME may designate), or sent via overnight mail to the law firm of Leonard, Street and Deinard (or to any other law firm which NBME may designate).

For any Step II examination administered by NBME in the Twin Cities (Minneapolis/St. Paul area) which Grant takes by computer and not in a pencil and paper format, NBME will make all reasonable and necessary efforts to copy and seal the computerized

4

examination answers and forward them to counsel for NBME. Grant understands that the copying of his computerized answers may only be possible at a central location (which may be at NBME) and not at the site where Grant takes his examination. In the event that copying his computerized answers can only take place at a central location different from his examination site, Grant agrees that the copying may take place at the central location, so long as the copying takes place as soon as is reasonably practicable following the transmission of the examination answers.

In the event that Grant seeks to have his answer sheets copied and sealed or his computerized answers copied and sealed pursuant to this subparagraph, he shall make this request in writing to Janet Carson, general counsel for NBME, Janie S. Mayeron at Leonard, Street and Deinard, or any other third party designated by NBME, no later than thirty days prior to the date of the exam for which he wants his examination answers copied.

(b) For any Step II examination Grant takes in a pencil and paper format which is administered by NBME, NBME agrees to preserve the following: (1) Grant's answer sheets; (2) the sealed copy of Grant's answer sheets (if applicable pursuant to subparagraph 5 (a) above); (3) Grant's examination booklet; and (4) the answer key for the examination Grant took. These materials are hereafter referred to as the "Test Materials." In addition, for any Step II examination administered by NBME which Grant takes by computer and not in a pencil and paper format, NBME agrees to preserve the computerized equivalent of the Test Materials. The Test Materials or their computerized equivalent shall be preserved for ten years or upon Grant's receipt of a license to practice medicine in any state or territory in the United States, whichever occurs first.

(c) By agreeing to copy answer sheets or the computerized equivalent (if applicable pursuant to subparagraphs 5(a) above) and preserve the Test Materials or their computerized equivalent, except as otherwise provided by this Agreement, the parties agree that this copying and preservation of materials or computerized equivalent shall not, however, give Grant any right or privilege to use these materials or computerized equivalent in a way that other examinees are not entitled to use their materials or computerized equivalent, and in no event shall his examination be scored or evaluated with regard to any marks made in his examination booklet.

6. <u>Non-Retaliation</u>.

(a) NBME agrees not to retaliate against Grant in any manner in connection with the testing or scoring of any future examination taken by Grant and administered or scored by NBME, or in connection with the exercise of Grant's rights under this Agreement.

(b) As part of this agreement not to retaliate, if Grant requests a manual recheck of his examination score in connection with any examination administered or scored by NBME, which examination program provides that the examinee may request a manual recheck by NBME, NBME shall review his score fairly and objectively and using exactly the same procedure as it would use to review any other examinee's score.

(c) In the event that a sealed copy of Grant's Step II examination answers (whether in paper form or on the computer) have been made pursuant to Paragraph 5 of this Agreement, as part of the process of rechecking Grant's Step II examination score pursuant to subparagraph (b) of this section, if requested by Grant, NBME will allow Grant's attorney and its attorney to jointly compare the sealed copy of Grant's examination or computerized answers with the original answer sheets or computerized answers Grant submitted to determine if the sealed copy of the

answer sheets or computerized answers is different from the original answer sheets or computerized answers. If the sealed copy of the answer sheets or computerized answers is different from the original answer sheets or computerized answers, the copied answer sheets or computerized answers will be used for the manual recheck (instead of the original answer sheets or computerized answers). If the sealed copy of the answer sheets or computerized answers and the original answer sheets or computerized answers are the same, the original answer sheets or computerized answers will be used for the manual recheck.

(d)  For the Step II examination, in the event that the manual recheck is performed pursuant to subparagraph 6(b), and the manual recheck identifies an error in the score originally reported, a new score report will be issued to Grant. For the Step II examination, in the event that the manual recheck performed pursuant to subparagraph 6(b), does not reveal an error in the score originally reported, NBME will send Grant a letter informing him that the original score was accurate as reported.

(e)  In the event that Grant pursues a suit or charge of retaliation or for breach of this Agreement, the prevailing party may seek reimbursement of all attorneys' fees and costs incurred in pursuit or defense of such action from the unsuccessful party by bringing a motion for attorneys' fees to the presiding judge of the litigation. The presiding judge may grant or deny such a motion in whole or in part, in his or her discretion.

7.  Release. In return for the payment and commitments made by NBME which are described in this Agreement, Grant hereby releases and discharges NBME (and the related persons who are identified in the subsection entitled, "Who Is Released") from liability for any

claim which he had or may have had against NBME for its refusal to accommodate him in connection with any test administered by NBME.

WHO IS RELEASED: This release covers NBME and all of its parents, subsidiaries, and affiliated corporations, and each of their past, present, or future shareholders, members, directors, officers, employees, representatives, agents, predecessors, successors, assigns, attorneys and insurers.

WHO IS RELEASING: Grant and his heirs, administrators, executors, assigns, attorneys and all others claiming rights through him or acting on his behalf.

WHAT CLAIMS ARE INCLUDED BY RELEASE: Grant is releasing claims which he may have or may claim to have had against NBME for its refusal to accommodate him in connection with any test administered by NBME. They include, but are not limited to, (a) all claims of discrimination (including disability, sex, and age discrimination pursuant to the MHRA or ADA), breach of contract, promissory estoppel, defamation, negligent or intentional infliction of emotional distress, harassment, impairment of economic opportunity, fraud, misrepresentation, or any other theory of liability; (b) all claims for mental anguish, pain and suffering, damage to reputation, punitive damages, attorneys' fees, or lost employment compensation; and (c) all charges, complaints, claims, liabilities, obligations, promises, agreements, damages (money or otherwise), actions, causes of actions, suits, debts, costs, expenses (including but not limited to attorneys' fees) and rights of any nature whatsoever, state or federal, in law or in equity, known or unknown, asserted or unasserted, suspected or unsuspected, including those claims asserted in this lawsuit. Grant agrees that he will not sue in court or file an administrative claim, complaint

or charge of any nature against NBME for a claim filed against NBME and released in this Agreement, except for the purpose of seeking enforcement of this Agreement.

8. <u>Confidentiality</u>. The terms of this Settlement Agreement shall forever be treated as confidential by Grant and NBME and the counsel of each party, who shall not disclose its terms to anyone, except that (1) Grant may disclose the fact and terms of this settlement to his legal counsel, to Dr. Ann Baldwin (who Grant has represented to NBME he has consulted for advice during settlement negotiations), his financial adviser(s) and accountant(s) (collectively referred to as "Confidential Persons"); (2) Grant may disclose the fact of and the non-monetary terms of this settlement to representatives of medical licensing and regulatory authorities (also collectively referred to as "Confidential Persons"); and (3) NBME may disclose the fact and the terms of this Agreement to its members, officers and directors, outside auditors, and to employees or agents of NBME or related entities who have a legitimate need to know the terms of the Agreement in the course of performing their duties (also referred to as "Confidential Persons"). In addition, in the event that NBME is contacted by any representative of a medical licensing or regulatory authority to confirm or deny the accuracy of a representation made by Grant to any persons listed in subparagraphs (1) or (2) above concerning any of the terms of the Settlement Agreement, NBME may confirm or deny the accuracy of Grant's representations and may accurately report the terms of the Settlement Agreement to that person. Both parties may also disclose the terms of the Agreement to representatives of the Internal Revenue Service (IRS), the Minnesota Department of Revenue, or to any other governmental entity responsible for collecting taxes; or if they are required by a court of law to do so. Confidential Persons shall be bound by the duties of confidentiality applicable to the party disclosing the information to the Confidential

9

Person. In the event that NBME or Grant is asked by any person other than Confidential Persons the outcome of this lawsuit or Grant's claims against NBME, Grant, Grant's attorneys, and NBME attorneys and representative shall be permitted only to state that "the matter has been resolved."

9. <u>Dismissal of Lawsuit</u>. NBME and Grant agree that their respective counsel shall execute and file with the Court for signature by the Court a Stipulation of Dismissal with Prejudice Without Costs or Disbursements and Order, of this lawsuit.

10. <u>Non-Admission</u>. NBME specifically denies any liability to Grant for any and all claims asserted by Grant against NBME. Nothing contained in this Agreement shall be construed as an admission by NBME of any violation of state, federal, or local statute, regulation, ordinance, or principle of common law, or that it has engaged in any wrongdoing. Similarly, nothing in this agreement shall be construed as an admission by Grant that his claims were not legitimate or that he is relinquishing any right to enforce his rights under this settlement, or to enforce any other rights he has not released in this agreement.

11. <u>Assignment</u>. The parties agree that the rights and obligations under this Agreement shall insure to and be binding upon NBME and its successors and assigns, but the rights and obligations of Grant hereunder are personal and may not be assigned to any other person.

12. <u>Integration</u>. This Agreement contains the full agreement of the parties and may not be modified, altered or changed in any respect except upon the express written consent of both parties.

13. <u>Voluntary and Knowing Action</u>. Grant acknowledges that he has been represented by his own attorney, that he has read and understands the terms of this Agreement, and that he

is voluntarily entering into the Agreement based upon the advice and recommendation of his attorney.

14. **Governing Law**. This Agreement will be construed and interpreted in accordance with the laws of the State of Minnesota.

15. **Counterparts**. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original.

Dated: June 19, 1998

*/s/ C. Earl Grant*
C. Earl Grant

Dated: June ___, 1998

**National Board of Medical Examiners**

By_____

Its_____

is voluntarily entering into the Agreement based upon the advice and recommendation of his attorney.

14. <u>Governing Law</u>. This Agreement will be construed and interpreted in accordance with the laws of the State of Minnesota.

15. <u>Counterparts</u>. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original.

Dated: June ___, 1998

Dated: ~~June~~ July 1, 1998

C. Earl Grant

National Board of Medical Examiners

By _L. Thompson Bowles MD_

Its _PRESIDENT_

V:\MMLA\DOCS-DLC\RICK\GRANT\GRANTAG2.FIN          11