**45**



HEADQUARTERS, US ARMY MEDICAL DEPARTMENT ACTIVITY
9501 FARRELL ROAD, SUITE E-14
FORT BELVOIR, VIRGINIA 22060-9501

REPLY TO
ATTENTION OF:

> U.S. MAGISTRATE JUDGE - N.D. OF N.Y.
> **RECEIVED**
> SEP 2 3 2008
> AT_____ O'CLOCK_____
> Hon. Gustave J. DiBianco

19 September 2008

SUBMITTED BY
CERTIFIED MAIL

Hon. Magistrate Gustave J. DiBianco
U.S. Courthouse
100 South Clinton Street
P.O. Box 7396
Syracuse, N.Y. 13261-7396

### RE: Case # 7:07-CV-996 (TMJ/GJD)

Dear Honorable Judge DiBianco:

In a recent communication with Mr. Stefan Berg, my former legal counsel he informed
me that the complaint filed with the court is limited in scope and will not adequately
address several aspects of the case which are needed for an effective review be the court.

I am still searching for a representative legal counsel and hope to inform you accordingly
by 30 September 2008. I hereby request that the complaint be amended as written herein
with the supporting exhibits.  However, I look forward to your timely consideration and
action to resolve this matter.

Respectfully,

*C. Earl Grant, M.D.*

MAJ C. Earl Grant, M.D., Ph.D.
US Army Medical Department
DHCN-Fort Belvoir
P.O. Box 1067
Fort Belvoir, VA 22060

cc:    Heidi Martinez
       Ward Norris Heller & Reidy
       300 State Street
       Rochester, NY 14614

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF NEW YORK

---

|  |  |
|---|---|
|  | RE:   Civil No. CV 3-96-310 |
| C. Earl Grant, | RE:   File No. 99-66 DSD/JMM |
| Plaintiff, |  |
|  | **CIVIL ACTION** |
| vs. | **AMENDED COMPLAINT** |

L. Thompson-Bowles, Brian Wilsford, Deborah Cusson

David Johnson, Gerald S. Golden, National Board of Medical Examiners

Federation of States Medical Boards

Defendants

---

## INTRODUCTION

1.      Plaintiff, Carrol Earl Grant, is an adult individual with over 17 years of service in

the United States Military, whose legal address is P.O. Box 551, Fort Drum, NY 13602.

2.      Defendant National Board of Medical Examiners/Federation of States Medical

Board (FSMB) is an organization authorized to offer examinations. and responsible for

the USMLE Steps 1, 2, and 3 examination in the licensing, certifying, and credentialing

eligible candidates for post-secondary education, trades and professions, whose principal

places of business are 3750 Market Street, Philadelphia, PA 19104 (NBME) and 400

Fuller Wiser Road, Suite 300, Euless, TX 76039 (FSMB).

3.      Defendant L. Thompson-Bowles was the President of NBME authorized to offer

examinations USMLE Steps 1, 2, and 3, and responsible for administering these exams

used for licensing, certifying, and credentialing eligible candidates for post-secondary

education, trades and professions, whose principal place of business and address is 3750

Market Street, Philadelphia, PA 19104.

4.      Defendants Brian Wilsford, Deborah Cusson, and David Johnson, are adult

individual agents or officers of FSMB, who are employed in the USMLE Step 3

Examination Department during the period of incidents set forth in this complaint, and

whose principal place of business and address is 400 Fuller Wiser Road, Suite 300,

Euless, TX 76039. These individuals are responsible for communicating falsified

USMLE Step 3 examination results to the States Medical Licensing Boards in the

NBME/FSMB effort to deny plaintiff's access to the medical profession as a licensed

physician.

5.      Defendant Gerald Golden is an employee of the NBME. Golden was the Vice

President, Division of Examinee Support Services and Medical School Liaison,

responsible for the publishing falsified grade reports in reference to plaintiff's USMLE

Steps 1 and 2 exam results, and whose normal place of business was 3750 Market Street,

Philadelphia, PA 19104.

6.      Jurisdiction of this claim is based upon presenting a federal question and diversity

of citizenship under Title 28, United States Code, Section 1331 and 1332.

2

7.      In 1994 through1999. plaintiff was a medical student enrolled at the University of

Minnesota Medical School, and subject to examination, licensing, certification and

credentialing by the defendants.

8.      In or about 1994, 1995, 1996, 1997, 1998, 2003, 2004, 2005 and 2006, plaintiff

took licensing and certification exams offered by the defendant and its affiliates,

including the USMLE Step 1-3, in order to complete his Medical Doctorate degree

curricula requirements, proceed to residency training, and become licensed as a Board

Eligible and Certified physician.

9.      While sitting these exams plaintiff was a qualified disabled, under the Americans

with Disability Act, Title 42, United States Code, Section 12102 (2) and 12131 (2) (42

USCS § 12112(2) and 12131(2), and the Human Rights Act of Minnesota (Minn. Stat. §

363A.03, subd. 36 (2006), known to the defendants, and entitled to reasonable

accommodation. By these provisions, plaintiff as an eligible person was entitled to

reasonable accommodation in the form of more time than the standard duration

NBME/FSMB allowed non-disabled persons to take the USMLE examinations.

10.     On or around March and August 1995, plaintiff, by timely submitting his request

accompanied with adequate supporting documentation, requested the defendants'

reasonable disability accommodation during USMLE Step1 exams held respectively in

June and September, 1995.

11.     The defendants unjustifiably and without explanation denied the plaintiff's

request for reasonable accommodation on both occasions, instead notified the plaintiff of

denial late. respectively on May 19, 1995 for the June 1995 exam, and on September 11.

1995. for the September 1995.

12.     The plaintiff had adequately prepared for the examination on both occasions, but took the exams without reasonable accommodation, and was unable to complete all the questions solely because the defendants improperly denied reasonable accommodation for his disability.

13.     The defendants then discriminately graded the plaintiff's June and September 1995 USMLE Step1 exams, improperly assigned the plaintiff failing grades, and unjustifiably refused to objectively re-grade the plaintiff's exams, despite the plaintiff's request and settlement of required fees, contrary to the defendant's own policy to provide such services upon request and payment of fees.

14.     On or around 1995, following the foregoing defendant's actions and decisions, and based solely on the defendants' denial of the plaintiff's request for reasonable accommodation, the University of Minnesota Medical School Scholastic Standing Committee (the Committee) suspended the plaintiff from school, and denied the plaintiff's request for alternative examination. Subsequently, in February 1996, the Committee concluded it had erred in believing it required permission from the defendants to provide the plaintiff alternative examination, and reversed its earlier decision by permitting the plaintiff to sit for the alternative examination, and in June 1996, continue his studies.

15.     On or around April, 1996, plaintiff applied to the defendants for alternative examination, and requested reasonable accommodation from the defendants by timely submitting adequate supporting documentation with request. The defendants again denied the plaintiff's request, verbally notified the plaintiff of this decision four days before scheduled examination date, and in writing one day before the test date.

**16.**    Plaintiff sued the defendant in the federal court in or around April 1996. Faced with the lawsuit, the defendants requested the plaintiff for an out of court settlement, and the parties entered into an agreement on December 29, 1997.  A true copy of the plaintiff's 1996 complaint is available for submission as **Exhibit A.**

**17.**    Under the agreement, the defendants agreed that immediately after each examination taken by the plaintiff, copies of all the plaintiff's examination answer sheets and secured in sealed envelopes to be kept by the defendant's attorney.  The agreement provided that these copies and answer keys would be used by an independent objective reviewer to re-grade any future examination upon plaintiff's request using the appropriate answer keys.  A true copy of this 1996 Agreement was never provided to plaintiff in writing, however, this promise was upheld by the defendant in reference to the USMLE Steps 1 and 2 examinations.

**18.**    Based on that agreement, plaintiff sat the USMLE Step 1 and alternate exams in June, 1996, and requested as provided by the agreement, copies of the examination answer sheets be made and provided to the defendant's attorney for safekeeping. Plaintiff received passing scores for both exams and progressed toward completing his studies at the medical school.

**19.**    In December, 1996, plaintiff applied to the defendant for USMLE Step 2 exams administered by the defendant in March, 1997, before the December 24, 1996 submission deadline, and requested reasonable accommodation from the defendant by certified mail with a request for return receipt.  The defendant received the application and request in advanced of the December 24, 1996, as evidenced by the returned receipt. A true copy of this return receipt is attached to this complaint and marked as **Exhibit B.**

The defendant, by a letter dated January 8, 1997, improperly claimed to have received the application late and demanded an additional twenty five dollars ($25.00) in late payments fees. Plaintiff paid the $25.00 fee, and provided the defendant a copy of the returned receipt establishing their timely receipt of the application. Defendant subsequently expressed having made an error and promised to refund the assessed fee to the plaintiff. Four days before the March, 1997 USMLE Step 2 exams, the defendant by a telephone call from its General Counsel, Janet Carson, notified plaintiff that it had denied the plaintiff's request for reasonable accommodation, stating that previously submitted documentation were insufficient, and requested for additional documentation. Ms. Carson promised the plaintiff that she would request a refund of the plaintiff's application fee of $235.00.

20.     Plaintiffs, upon his attorney's advise, and based solely on the defendants' denial of his reasonable accommodation request, did not to take the March, 1997 USMLE Step 2 exam.

21.     On March 20, 1997, the defendants refunded plaintiff's application and late fees amounting to two hundred sixty dollars ($260) by check number 318480. Army Health Professional Scholarship (HPSP) personnel informed plaintiff on April 22, 1997, that his active duty assignment was being cancelled based on the defendants' decision. Since defendants had denied the plaintiff's reasonable accommodation request, the Student Affairs representative at the University of Minnesota Medical School, had informed the HPSP that the plaintiff would likely never graduate from medical school.

22.     Plaintiff, in May 1997, re-applied for USMLE Step 2 exams offered on August 26-28, 1997 and requested reasonable accommodation from the defendant, submitting

6

further documents to support his request. Defendants, after persistent and concerted written and telephone inquiries on timely decision by the plaintiff, plaintiff's attorney, and university officials, notified the plaintiff that it would grant reasonable accommodation to the plaintiff during the August 26, 1997 exams. The defendant notified plaintiff of this decision in two letters dated respectively August 19 and 21, 1997. The defendants also recanted its earlier decision denying plaintiff's reasonable accommodation request, stating that at no point had it communicated either denying, or granting plaintiff's requests for reasonable accommodation.

23.     Plaintiff sat the USMLE Step 2 exams offered respectively in August, 1997, and March and August 1998, with reasonable accommodation. The defendant scored and improperly assigned marginal failing plaintiff on all these occasions then unjustifiably refused to objectively re-grade the tests **(Exhibit C)**.

24.     Plaintiff's suit filed against the defendant in the Federal District Court in April, 1996, remained pending, a pre-trial deposition hearing was conducted on November 7, 1997, the defendants and plaintiff were both represented by counsel; Janie S. Mayeron and Gerald Golden represented the defendants' and Rodreick Macpherson represented plaintiff. Once more faced with a lawsuit, the defendants requested the plaintiff for an out-of-court agreement soon after the deposition hearing, but before reporting the score for the August 1997 USMLE Step 2 exams.

25.     A settlement conference, presided over by the Federal Court Judge Jonathan G. Lebedoff, was conducted on December 29, 1997 in the Judge's Chamber. During the conference plaintiff was only allowed to discuss terms of the settlement with his attorney in a separate room, following which, his attorney would meet with the defendants'

7

attorneys. Plaintiff hand-wrote a brief summary of requests, including provision for providing similar accommodations, copying answer sheets and/or computerized responses for all future examinations taken by plaintiff, which was presented to the defendant's attorneys and employee Gerald S. Golden, Director of Examinee Records. Defendants accepted these plaintiff's requests as part of a proposed settlement agreement, but the defendant later claimed that those terms were not presented at the settlement conference, and therefore were never part of the proposed agreement.

26.     Plaintiff requested the defendants for an objective re-grading of his August 1997 USMLE Step 2 exams, as provided by 1996 agreement and described under paragraph 12, and paid the required fees, but the defendants again improperly refused to permit an objective re-grading of the plaintiff's exams.

27.     Plaintiff took the USMLE Step 2 exam in March, and August, 1998. Defendant maliciously issued plaintiff a failing grade by "2" and "1" points, respectively, and refused to objectively hand-score those exams. See attorney Larry Reed's affidavit **Exhibit "D"** following a review of the defendant's documentation and claim to have objectively re-graded plaintiff's USMLE Step 2 exams and found no change from the originally reported exam scores.

28.     The defendants, by promising an objective re-grading of the plaintiff's exam without intent to honor the promise, fraudulently induced the plaintiff to sign a settlement agreement on June 19, 1998. Plaintiff's attorney notified the plaintiff on June 18, 1998, that the defendants had promised to re-grade the test, using criteria stated in the proposed settlement agreement and in its policy manual, if it was signed by June 19, 1998. According to this promise the plaintiff would have been permitted to begin his residency

training on June 24, 1998. The plaintiff relying on these promises signed the agreement

on June 19, 1998, while the defendant delayed signing the agreement until July 1, 1998.

See Settlement Agreement **Exhibit E.** This defendants' delay prevented the plaintiff

from beginning his residency training on June 24, 1998. Plaintiff re-took the USMLE

Step 2 exam in August, 1998. The defendants issued a failing grade by "1" and

subsequently refused to objectively re-grade the plaintiff's examination, and later claimed

that by signing the agreement, plaintiff had relinquished his rights to prove the

defendants' discrimination or retaliation against him in violation of the 1998 agreement.

**29.**      The defendants subsequently persisted in violating the plaintiff's civil right to

equally access the medical profession and be free from discrimination by deliberately

violating the terms of the 1998 agreement and its procedural agreement to provide fair

and accurate grading, continued reprisal, discrimination, and unfair treatment of the

defendant. Specifically, the defendant refused to objectively grade and re-grade

plaintiff's August 1997, and March and August 1998 USMLE Step 2 exams, and the

USMLE Step 3 exam in July 2003, July and December 2004, July 2005 and November

2006. In December 2002, plaintiff submitted application to take the USMLE Step 3

examination in March 2003, the defendant intentionally cancelled plaintiff's application

in March 2003, without notice to plaintiff to plaintiff **(Exhibit F)**. The defendant granted

the permit to plaintiff in June 2003, with an incorrect first name and caused further delays

for plaintiff who was required to provide his USMLE Step 3 results to the US Army

Medical Department by April 2003, to report to his active duty assignment on July 1,

2003. Plaintiff was unable to meet the deadline for his July 1, 2003, assignment and was

subsequently granted a corrected permit by the defendant later in July to take that examination.

**30.**     The defendant continued its discriminatory practices against plaintiff during plaintiff's medical residency training and coerced with Program Directors to report inaccurate grading evaluation to the American Board of Internal Medicine (ABIM), one of its affiliate organizations in its effort to deny plaintiff's right and eligibility to pursue the ABIM Certification examination.  See documentation submitted to the Ohio State Medical Board by plaintiff. **Exhibit G.**

**31.**     Further, as a result of the defendants' reprisal, discrimination and gross disregard for plaintiff's civil rights, plaintiff has incurred, and expects to incur in the future, economic losses estimated to be in excess of  $2,000,000.00 in the form of :

    **a.**     Loss in income due to the delayed graduation from medical school, and resulting delay in pursuing residency training and becoming a licensed physician;

    **b.**     Additional tuition fees, re-registration and application fees for retaking the USMLE Steps 1, 2, and 3 exams due to the defendant's continued discrimination in its grading and scoring of plaintiff's examinations;

    **c.**     Lack of advancement in his professional development in becoming a State Board Certified, and ABIM Certified and licensed practicing physician due to defendant's reckless disregard and discriminatory practices; and,

    **d.**     Loss of opportunity to pursue further career fellowship training to provide a more meaningful service as a qualified and fully trained, and licensed practicing physician due to the defendant's reckless disregard and fraudulently discriminatory practices in its grading and scoring of plaintiff's examinations, and its willful intent to

prevent plaintiff's access to the medical profession, and prevent his opportunities for professional growth and development.

## COUNT I

## VIOLATION OF THE AMERICANS WITH DISABILITY ACT

### (42 USCS § 12189)

34.     Paragraphs 1-33 above are incorporated as though set forth at length.

35.     By refusing to provide plaintiff reasonable accommodation during the USMLE Step 1 and 2 exams, unjustifiably canceling the USMLE Step 2 exam in March, 1997 and the USMLE Step 3 exam in March, 2003, and refusing to objectively and without retaliation or discrimination, grade and/or re-grade the plaintiff's exams, the defendants discriminated against plaintiff based on his disabilities, in violation of Title 42, United States Code, Section 12189, and the terms of the out-of-court settlement agreement.

36.     By its retaliation, unfair and subjective grading and scoring, and untimely communication, defendant willfully and intentionally continued to violate plaintiff's civil rights, as a qualified disabled under Title 42, United States Code, Section 12131. As a result of the defendant's continued discriminatory actions, plaintiff has suffered injuries as set forth in Paragraphs 31.

## COUNT II

## VIOLATION OF THE MINNESOTA HUMAN RIGHTS ACT

### (Minn. Stat. § 363A.03, subd. 36 (2006)).

37.     Paragraphs 1-33 above are incorporated as though set forth at length

38.     By refusing to accommodate plaintiff's disability initially, not allowing him

additional time to take the USMLE Step 1 and Step 2 exams, continued reprisal by

intentionally delaying notification denying reasonable accommodation, subjective

grading, refusing to objectively re-grade and correct plaintiff's exams, defendant has

unduly delayed the progress of plaintiff's career, and continues to discriminate against

the plaintiff on the basis of his disability, in violation of the Minnesota Human Rights

Act, (Minn. Stat. § 363A.03, subd. 36 (2006)).

39.     As a result of the defendant's continued discriminatory actions, plaintiff has

suffered injuries as set forth in Paragraph 31.

## COUNT III

## VIOLATION OF THE CIVIL RIGHTS ACT OF 1964

### (42 USCS § 2000a)

40.     Plaintiff re-alleges Paragraphs 1 – 55.

41.     By refusing to accommodate plaintiff's disability initially, not allowing him

additional time to take the USMLE Step 1 and 2 exams, cancelling the USMLE Step 3

exam in March, 2003, continued reprisal through intentionally delaying notification of denial of request for reasonable accommodation, continuous subjective grading and refusing to objectively re-grade and correct plaintiff's examination scores, defendants unduly delayed progression of the plaintiff's career, impermissibly discriminated, and continues to discriminate against plaintiff on the basis of his disability, race, color, and national origin, in violation of the Civil Rights Act of 1964, Title 42, United States Code, Section 2000a (42 USCS § 2000a) and subsequent amendments.

42.     As a result of the defendant's continued discriminatory actions, plaintiff has suffered injuries as set forth in Paragraphs 31.

## RELIEF REQUESTED

WHEREFORE, plaintiff demands the following relief:

1.     A declaratory judgment declaring that:

   **a.**     The defendants violated the plaintiff's rights under the American with Disabilities Act, by refusing to accommodate the plaintiff's disability, and continue to violate these rights through reprisal, and refusal to provide objective and non-discriminate grading of plaintiff's examinations.

   b.     The defendant violated the plaintiff's rights under Minnesota Human Rights Act, by refusing to accommodate plaintiff's disability, and continues to violate this Act, through reprisal, and refusal to provide objective and non-discriminate grading of the plaintiff's examinations.

c.     The defendant violated the plaintiff's rights under the Civil Rights Act of
1964, by denying the plaintiff, a member of the protected class access to the medical
profession, and continues to violate the plaintiff's civil rights through reprisal and refusal
to provide objective and non-discriminate grading of the plaintiff's examinations.

**2.**     Injunctive relief,

a.     Directing defendants, jointly and severally, to discontinue their
discriminatory activities against plaintiff, and ordering the defendants to grant the
plaintiff equal access to the medical profession by engaging in non-discriminate
examination, licensing, certification, credentialing of the plaintiff to the medical
profession.

b.     Ordering the defendant to evaluate all plaintiff's future USMLE and
ABIM Certification exams with objective and fair grading, objective process to correctly
re-grade plaintiff's exams using the corresponding answer keys and answer sheets that
were copied and secured at the time of the plaintiff's examinations, or computerized data
based answer sheets used in the grading and scoring of present and future computerizes
examinations.

c.     Ordering the defendant to provide the name(s), and qualification of all
reviewer(s), and their evaluation criterion upon a request for re-grading of an
examination, where a review is conducted by the defendants instead of a court-appointed
reviewer.

d.     Ordering the defendant to provide answer keys and plaintiff's examination to the Court to facilitate an unbiased review process in the grading and scoring of plaintiff's examinations.

e.     Ordering such affirmative relief as may be necessary to correct the impact of the defendant's discriminatory conduct on the plaintiff's career, character, and reputation.

3.     Judgment for compensatory damages in favor of the plaintiff and against the defendants jointly and severally, and award of compensatory damages to the plaintiff of an amount to be decided by the court, in the interest of equity and commensurate with the defendants egregious violation of the plaintiff's rights under the Civil Rights Act 1964 and the Minnesota Human Rights.

4.     Judgment for punitive damages in favor of the plaintiff and against the defendants jointly and severally, in an amount to be decided by the Court in the interest of equity and commensurate with the defendants' deliberate, continuous and egregious violation of the plaintiff's rights under the Civil Rights Act 1964 and the Minnesota Human Rights.

5.     An award of treble damages in favor of the plaintiff and against the defendants pursuant to the States Human Rights Acts, and the Civil Rights Act.

6.     Judgment for compensatory damages in favor of the plaintiff and against the defendants jointly and severally, ordering the defendants to pay all of plaintiff's reasonable attorneys' fees and expenses.

7.      For such other and further relief as the Court may determine to be just and

equitable.

Respectfully Submitted,

Dated:  September15, 2008

BY:      C. Earl Grant, M.D., Ph.D.
9501 Farrell Road
P.O. Box 1067
Fort Belvoir, VA 22060

# **EXHIBIT**

# **A**

# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA
### FIRST DIVISION

---

C. Earl Grant and Celi V. Watts,

Civil No. CV 3-96-310

Plaintiffs,

**COMPLAINT**

vs.

National Board of Medical Examiners,

Defendants.

---

## INTRODUCTION

1.    This is a disability discrimination lawsuit brought by C. Earl Grant and
Celi Watts, two medical students who have diagnosed disabilities, against defendant National
Board of Medical Examiners (hereafter "NBME") for failing to offer the United States
Medical Licensing Examination - Step 1 (USMLE Step 1) in a manner that is accessible to
the plaintiffs. The defendant refused to reasonably accommodate plaintiffs' disabilities by,
among other things, allowing them additional time to take the USMLE Step 1 examination.
In doing so, defendants violated federal and state anti-discrimination statutes, including the
Americans With Disabilities Act (ADA), 42 U.S.A. 12101, *et seq.* and the Minnesota Human
Rights Act, Minn. Stat. § 363.01, *et seq.*, specifically including 42 U.S.C. § 12189. Plaintiffs
seek declaratory and injunctive relief, as well as compensatory and punitive damages and
statutory attorneys fees and expenses.

## JURISDICTION

2.    This Court has jurisdiction over plaintiffs' case pursuant to 28 U.S.A.
1331 in that this is an action arising under the laws of the United States. Plaintiffs seek

declaratory, injunctive and monetary relief to redress the deprivation rights secured them by the Americans with Disabilities Act, 42 U.S.A. 12101, *et seq.* This Court has supplemental jurisdiction over those of plaintiffs' claims which arise under the laws of the State of Minnesota, pursuant to 28 U.S.A. 1367, since the federal and state claims arise out of the same operative facts, circumstances and transactions.

## PARTIES

3.     Plaintiff C. Earl Grant is a qualified individual with a disability, as that term is defined by the Americans with Disabilities Act (28 U.S.A. 12102 (2) and 12131 (2)) and by the Minnesota Human Rights Act (Minn. Stat..§ 363.01, subd. 35). Specifically, he has been diagnosed with Attention Deficit Disorder (ADD).

4.     Plaintiff Celi V. Watts is a qualified individual with a disability, as that term is defined by the Americans with Disabilities Act (28 U.S.A. 12102 (2) and 12131 (2)) and by the Minnesota Human Rights Act (Minn. Stat. § 363.01, subd. 35). Specifically, she has been diagnosed with Attention Deficit Disorder (ADD).

5.     The NBME is a public accommodation as that term is defined by the ADA (28 U.S.C. § ) and by the Minnesota Human Rights Act (Minn. Stat. Section § 363.01, subd. 33). It provides testing and certification services for the purpose of licensing physicians.

6.     The NBME is an entity that offers examinations related to applications, licensing, certification or credentialling for post-secondary education, professional or trade purposes, as those terms are used by 42 U.S.C. § 12189.

## FACTS

7.    Plaintiffs are students enrolled at the University of Minnesota Medical School.

8.    In order to become licensed physicians, plaintiffs must take certain licensing examinations offered by defendant NBME, including the USMLE Step I examination.

9.    Plaintiff Grant notified NBME of his disability and requested that NBME reasonably accommodate his disability by allowing him additional time to take the Step I examination on two occasions:  March 23, 1995 and August, 1995.

10.    Defendant NBME refused to accommodate both of Grant's requests for reasonable accommodation.  It notified Grant of its decisions on May 19, 1995 and September 11, 1995.

11.    Plaintiff Watts notified NBME of her disability and requested that NBME reasonably accommodate her disability by allowing her additional time to take the Step I examination on June 15, 1995.

12.    Defendant NBME refused to accommodate Watts' request for reasonable accommodation.  It notified Watts of its decisions on September 11, 1995.

13.    Defendant NBME informed both of the plaintiffs that it was refusing to grant their requests for reasonable accommodation because it disagreed with their doctors' diagnoses that plaintiffs have ADD.

14.    Grant attempted to take the USMLE Step I examinations offered in June and November, 1995 without having the necessary accommodation for his disability.

3

He was not able to complete all of questions in the examination due to his disability and did not pass the examination.

15.     Watts attempted to take the USMLE Step 1 examination offered in September, 1995 without having the necessary accommodation for her disability.  She was not able to complete all of the questions in the examination due to her disability and did not pass the examination.

16.     Grant and Watts intend to take the USMLE Step I examination again when it is offered in the future.

17.     Grant recently made a new request that the NBME reasonably accommodate his disability by allowing him additional time for taking the examination. Watts intends to make another request for accommodation when she applies to take the examination again.  The plaintiffs do not expect that defendant NBME will grant their requests for reasonable accommodation.

18.     Defendant acted with willful disregard for the rights of plaintiffs.

19.     As a result of defendant's refusal to accommodate plaintiffs' disabilities, both of the plaintiffs were subjected to discrimination by the defendant and were deprived of the full and equal use of the services and benefits of the NBME.

20.     As a further result of defendant's refusal to accommodate plaintiffs' disabilities by allowing them additional time to take the USMLE Step I examination, each of the plaintiffs suffered mental and emotional damages, including humiliation, embarrassment, emotional distress, and mental and emotional pain and suffering.

21.     As a further result of defendant's refusal to accommodate plaintiff Grant's disabilities by allowing him additional time to take the USMLE - Step 1

examination, plaintiff Grant has incurred, and expects to incur in the future, economic losses which he estimates to be in the amount of $55,000, in the form of:

    a.    lost future income due to the delay in graduating from medical school and the resulting delay in becoming employed as a physician; and

    b.    application fees for taking two USMLE - Step 1 examinations after defendant refused his request for reasonable accommodation.

22.    As a further result of defendant's refusal to accommodate plaintiff Watts' disabilities by allowing her additional time to take the USMLE - Step 1 examination, plaintiff Watts has incurred, and expects to incur in the future, economic losses which she estimates to be in the amount of $55,000, in the form of:

    a.    lost future income due to the delay in graduating from medical school and the resulting delay in becoming employed as a physician; and

    b.    application fees for taking one USMLE - Step 1 examinations after defendant refused her request for reasonable accommodation.

## COUNT I

### VIOLATION OF THE ADA (42 U.S.C. § 12189)

23.    Plaintiffs reallege Paragraphs 1 - 22.

24.    By refusing to accommodate plaintiffs' disabilities by allowing them additional time to take the USMLE Step 1 examination, defendant NBME discriminated against plaintiffs on the basis of their disabilities, and thereby violated 42 U.S.A. § 12189.

25.    As a result of the defendants' discriminatory actions, plaintiffs suffered the injuries set forth in Paragraphs 19 - 22 of this Complaint.

5

## COUNT II

### VIOLATION OF THE ADA (TITLE III)

26.     Plaintiffs reallege Paragraphs 1 - 25.

27.     By refusing to accommodate plaintiffs' disabilities by allowing them additional time to take the USMLE Step I examination, defendant NBME discriminated against plaintiffs on the basis of their disabilities, and thereby violated Title II of the ADA (42 U.S.A. § 12131 *et seq.*).

28.     As a result of the defendants' discriminatory actions, plaintiffs suffered the injuries set forth in Paragraphs 19 - 22 of this Complaint.

### COUNT III

### VIOLATION OF THE MINNESOTA HUMAN RIGHTS ACT

29.     Plaintiffs reallege Paragraphs 1 - 28.

30.     By refusing to accommodate plaintiffs' disabilities by allowing them additional time to take the USMLE Step I examination,  Defendant NBME discriminated against plaintiffs on the basis of their disabilities, and thereby violated Minnesota Human Rights Act (Minn. Stat. § 363.03, subd. 4).

31.     As a result of the defendants' discriminatory actions, plaintiffs suffered the injuries set forth in paragraphs 19 - 22 of this Complaint.

### RELIEF REQUESTED

WHEREFORE, plaintiffs demand the following relief:

1.     A declaratory judgment that:

    a.     Defendant violated the ADA when it refused to accommodate plaintiffs' disabilities.

6

    b.  Defendant violated the Minnesota Human Rights Act when it refused to accommodate plaintiffs' disabilities.

  2.  Directing to defendant to grant plaintiffs' requests for reasonable accommodation in connection with taking the USMLE Step I examination, including but not limited to, allowing them additional time for taking the examination.

  3.  Judgment against defendants jointly and severally and in favor of each plaintiff in the amount of $80,000 for plaintiff Grant and $80,000 for plaintiff Watts, as and for compensatory damages pursuant to the Minnesota Human Rights Act.

  4.  Judgment against defendants jointly and severally and in favor of Plaintiffs in the amount of $8,500 for each plaintiff, as and for punitive damages pursuant to the Minnesota Human Rights Act.

  5.  An award of Treble Damages in favor of each plaintiff and against each of the defendants pursuant to the Minnesota Human Rights Act (Minn. Stat. § 363.071, subd. 2).

  6.  Ordering each of the defendants to pay a civil penalty pursuant to the Minnesota Human Rights Act (Minn. Stat. § 363.071, subd. 2) and the ADA.

  7.  Ordering such other affirmative relief as may be necessary to correct the impact of the defendants' discriminatory conduct.

  8.  Ordering defendants to pay plaintiffs' reasonable attorneys fees and expenses.

9.   For such other and further relief as the Court may determine to be just and equitable.

Respectfully submitted,

LEGAL AID SOCIETY OF MINNEAPOLIS

Dated: 3 April 1996

BY:   Roderick J. Macpherson, III   (No. 66163)
Pamela S. Hoopes  (No. 208504)
Attorneys for Plaintiffs
MINNESOTA DISABILITY LAW CENTER
430 First Ave North, Suite 300
Minneapolis, MN  55401-1780
(612) 334-5785, ext. 237

8

# **EXHIBIT**

# **B**

3142 Pillsbury Avenue South
Minneapolis, MN 55408-3035
January 23, 1997

To:    Licensing Examination Services Department
NBME
3750 Market Street, Philadelphia, PA 19178-1330

From:   C. Earl Grant   ID #:   4 - 048 - 306 - 7

RE:    Step 2, March 04 - 05, 1997

I have received your memo today regarding the late fee of $25.00. However, the application and supporting documentation were submitted in accordance with the enclosed letter dated December 4, 1996, which stated that the application be postmarked by December 24, 1996. I was not aware of the attached late fee and every effort was made to return the application within the stated time deadline. The returned receipt shows that the application was received on December 24, 1996.

Enclosed is a check in the amount of $25.00 as requested.

Sincerely,

C. Earl Grant

---

**SENDER:**
- Complete items 1 and/or 2 for additional services.
- Complete items 3, 4a, and 4b.
- Print your name and address on the reverse of this form so that we can return this card to you.
- Attach this form to the front of the mailpiece, or on the back if space does not permit.
- Write "Return Receipt Requested" on the mailpiece below the article number.
- The Return Receipt will show to whom the article was delivered and the date delivered.

I also wish to receive the following services (for an extra fee):

1. ☐ Addressee's Address
2. ☐ Restricted Delivery

Consult postmaster for fee.

| 3. Article Addressed to: | 4a. Article Number |
| --- | --- |
| | |
| | 4b. Service Type |
| | ☐ Registered   ☐ Certified |
| | ☐ Express Mail   ☐ Insured |
| | ☐ Return Receipt for Merchandise  ☐ COD |
| | 7. Date of Delivery |
| 5. Received By: (Print Name) | 8. Addressee's Address (Only if requested and fee is paid) |
| 6. Signature: (Addressee or Agent) **X** | |

PS Form **3811**, December 1994              Domestic Return Receipt

*Is your RETURN ADDRESS completed on the reverse side?*

*Thank you for using Return Receipt Service.*

# **EXHIBIT**

## C



**US·MLE**
United States
Medical
Licensing
Examination

# UNITED STATES MEDICAL LICENSING EXAMINATION™

USMLE Step 2 is administered to students and graduates of U.S. and Canadian medical schools by the
**NATIONAL BOARD OF MEDICAL EXAMINERS® (NBME®)**
**3750 Market Street, Philadelphia, Pennsylvania 19104-3190.**
Telephone: (215) 590-9700

## STEP 2 SCORE REPORT

**Grant, C Earl**

**3142 Pillsbury Avenue South**
**Minneapolis, MN 55408-3035**

**USMLE ID:   4-048-306-7**

**Test Date:   August 1997**

The USMLE is a single examination program for all applicants for medical licensure in the United States; it has replaced the Federation Licensing Examination (FLEX) and the certifying examinations of the National Board of Medical Examiners (NBME Parts I, II and III). The program consists of three Steps designed to assess an examinee's understanding of and ability to apply concepts and principles that are important in health and disease and that constitute the basis of safe and effective patient care. Step 2 is designed to assess whether an examinee possesses the medical knowledge and understanding of clinical science considered essential for the provision of patient care under supervision, including emphasis on health promotion and disease prevention. The inclusion of Step 2 in the USMLE sequence ensures that attention is devoted to principles of clinical science that undergird the safe and competent practice of medicine. Results of the examination are reported to medical licensing authorities in the United States and its territories for use in granting an initial license to practice medicine. The two numeric scores shown below are equivalent; each state or territory may use either score in making licensing decisions. These scores represent your results for the administration of Step 2 on the test date shown above.

| | |
|---|---|
| **FAIL +** | This result is based on the minimum passing score recommended by USMLE for Step 2. Individual licensing authorities may accept the USMLE-recommended pass/fail result or may establish a different passing score for their own jurisdictions. |

| | |
|---|---|
| **155 +** | This score is determined by your overall performance on Step 2. For recent administrations, the mean and standard deviation for first-time examinees from U.S. and Canadian medical schools are approximately 207 and 23, respectively, with most scores falling between 140 and 260. A score of 170 is recommended by USMLE to pass Step 2. The standard error of measurement (SEM)‡ for this scale is approximately six points. |

| | |
|---|---|
| **71 +** | This score is also determined by your overall performance on the examination. A score of 82 on this scale is equivalent to a score of 200 on the scale described above. A score of 75 on this scale, which is equivalent to a score of 170 on the scale described above, is recommended by USMLE to pass Step 2. The SEM‡ for this scale is one point. |

**+*Following review and approval of your written request, testing accommodations were provided during the administration of this examination. A similar annotation will be included on your USMLE transcript.***

‡Your score is influenced both by your general understanding of clinical science and the specific set of items selected for this Step 2 examination. The standard error of measurement (SEM) provides an estimate of the range within which your scores might be expected to vary by chance if you were tested repeatedly using similar tests.

451EK232



**US·MLE**
| United States |
| Medical |
| Licensing |
| Examination | TM

# UNITED STATES MEDICAL LICENSING EXAMINATION™

USMLE Step 2 is administered to students and graduates of U.S. and Canadian medical schools by the
**NATIONAL BOARD OF MEDICAL EXAMINERS® (NBME®)**
3750 Market Street, Philadelphia, Pennsylvania 19104-3190.
Telephone: (215) 590-9700

## STEP 2 SCORE REPORT

**Grant, C Earl**

3142 Pillsbury Avenue South
Minneapolis, MN 55408-3035

**USMLE ID:  4-048-306-7**

**Test Date:   March 1998**

The USMLE is a single examination program for all applicants for medical licensure in the United States; it has replaced the Federation Licensing Examination (FLEX) and the certifying examinations of the National Board of Medical Examiners (NBME Parts I, II and III). The program consists of three Steps designed to assess an examinee's understanding of and ability to apply concepts and principles that are important in health and disease and that constitute the basis of safe and effective patient care. **Step 2** is designed to assess whether an examinee possesses the medical knowledge and understanding of clinical science considered essential for the provision of patient care under supervision, including emphasis on health promotion and disease prevention. The inclusion of Step 2 in the USMLE sequence ensures that attention is devoted to principles of clinical science that undergird the safe and competent practice of medicine. Results of the examination are reported to medical licensing authorities in the United States and its territories for use in granting an initial license to practice medicine. The two numeric scores shown below are equivalent; each state or territory may use either score in making licensing decisions. These scores represent your results for the administration of Step 2 on the test date shown above.

| | |
|---|---|
| **FAIL +** | This result is based on the minimum passing score set by USMLE for Step 2.  Individual licensing authorities may accept the USMLE-recommended pass/fail result or may establish a different passing score for their own jurisdictions. |

| | |
|---|---|
| **165 +** | This score is determined by your overall performance on Step 2.  For recent administrations, the mean and standard deviation for first-time examinees from U.S. and Canadian medical schools are approximately 207 and 23, respectively, with most scores falling between 140 and 260.  A score of 170 is set by USMLE to pass Step 2.  The standard error of measurement (SEM)‡ for this scale is approximately six points. |

| | |
|---|---|
| **73 +** | This score is also determined by your overall performance on the examination.  A score of 82 on this scale is equivalent to a score of 200 on the scale described above.  A score of 75 on this scale, which is equivalent to a score of 170 on the scale described above, is set by USMLE to pass Step 2.  The SEM‡ for this scale is one point. |

*+Following review and approval of your written request, testing accommodations were provided during the administration of this examination.  A similar annotation will be included on your USMLE transcript.*

‡Your score is influenced both by your general understanding of clinical science and the specific set of items selected for this Step 2 examination. The standard error of measurement (SEM) provides an estimate of the range within which your scores might be expected to vary by chance if you were tested repeatedly using similar tests.

451JS195

NOTE: Original score report has copyright-protected watermark

# US·MLE

| United States |
| Medical |
| Licensing |
| Examination |

## UNITED STATES MEDICAL LICENSING EXAMINATION™

USMLE Step 2 is administered to students and graduates of U.S. and Canadian medical schools by the
**NATIONAL BOARD OF MEDICAL EXAMINERS® (NBME®)**
3750 Market Street, Philadelphia, Pennsylvania 19104-3190.
Telephone: (215) 590-9700

## STEP 2 SCORE REPORT

**Grant, C Earl**

3142 Pillsbury Avenue South
Minneapolis, MN 55408-3035

**USMLE ID:**  4-048-306-7

**Test Date:**   **August 1998**

The USMLE is a single examination program for all applicants for medical licensure in the United States; it has replaced the Federation Licensing Examination (FLEX) and the certifying examinations of the National Board of Medical Examiners (NBME Parts I, II and III). The program consists of three Steps designed to assess an examinee's understanding of and ability to apply concepts and principles that are important in health and disease and that constitute the basis of safe and effective patient care. **Step 2** is designed to assess whether an examinee possesses the medical knowledge and understanding of clinical science considered essential for the provision of patient care under supervision, including emphasis on health promotion and disease prevention. The inclusion of Step 2 in the USMLE sequence ensures that attention is devoted to principles of clinical science that undergird the safe and competent practice of medicine. Results of the examination are reported to medical licensing authorities in the United States and its territories for use in granting an initial license to practice medicine. The two numeric scores shown below are equivalent; each state or territory may use either score in making licensing decisions. These scores represent your results for the administration of Step 2 on the test date shown above.

| **FAIL** + | This result is based on the minimum passing score set by USMLE for Step 2. Individual licensing authorities may accept the USMLE-recommended pass/fail result or may establish a different passing score for their own jurisdictions. |
|---|---|

| **169** + | This score is determined by your overall performance on Step 2. For recent administrations, the mean and standard deviation for first-time examinees from U.S. and Canadian medical schools are approximately 208 and 23, respectively, with most scores falling between 140 and 260. A score of 170 is set by USMLE to pass Step 2. The standard error of measurement (SEM)‡ for this scale is approximately six points. |
|---|---|

| **74** + | This score is also determined by your overall performance on the examination. A score of 82 on this scale is equivalent to a score of 200 on the scale described above. A score of 75 on this scale, which is equivalent to a score of 170 on the scale described above, is set by USMLE to pass Step 2. The SEM‡ for this scale is one point. |
|---|---|

*+Following review and approval of your written request, testing accommodations were provided during the administration of this examination. A similar annotation will be included on your USMLE transcript.*

‡Your score is influenced both by your general understanding of clinical science and the specific set of items selected for this Step 2 examination. The standard error of measurement (SEM) provides an estimate of the range within which your scores might be expected to vary by chance if you were tested repeatedly using similar tests.



# National Board of Medical Examiners®

3750 MARKET STREET, PHILADELPHIA, PA 19104
TELEPHONE (215) 590-9500

August 29, 1995

Mr. C. Earl Grant
3142 Pillsbury Avenue South
Minneapolis, MN 55408                    USMLE# 4-048-306-7

Dear Mr. Grant:

In accordance with your recent request, we have hand scored your answer materials from the following examination:

| Examination | Test Date |
|---|---|
| USMLE Step 1 | June 1995 |

The result of the hand scoring process has confirmed that your scores are accurate as originally reported.

Because of the many verification procedures built into the machine scoring process, the possibility of score changes has become extremely remote.

I regret I cannot give you a more favorable report.

Sincerely,

Janice V. Cass
Assistant Manager, Examinee Records

JVC:cr



# National Board of Medical Examiners®

3750 MARKET STREET, PHILADELPHIA, PA 19104
TELEPHONE (215) 590-9500

January 6, 1998

USMLE ID# 4-048-306-7

C. Earl Grant, PhD
3142 Pillsbury Avenue South
Minneaplis, MN 55408-3035

Dear Dr. Grant:

In accordance with your recent request, we have hand scored your answer materials from the following examination:

| <u>Examination</u> | <u>Test Date</u> |
|---|---|
| USMLE Step 2 | August 1997 |

The result of the hand scoring process has confirmed that your scores are accurate as originally reported.

Because of the many verification procedures built into the machine scoring process, the possibility of score changes has become extremely remote.

I regret I cannot give you a more favorable report.

Sincerely,

Inna Rozinsky
Supervisor for Registration
and Examinee Records

IR:ad

JUN 24 '98  14:29    FROM COPY ROOM 16TH FL E        TO 93345755           PAGE.002
'98  10:54  FROM:N B M E                   ID:215 580 9755           PAGE    2/2



# National Board of Medical Examiners•

3750 MARKET STREET, PHILADELPHIA, PA 19104
TELEPHONE (215) 590-9500

USMLE ID# 4-048-306-7

June 22, 1998

C. Earl Grant, PhD
3142 Pillsbury Avenue South
Minneapolis, MN 55408-3035

Dear Dr. Grant:

In lieu of your request dated May 4, 1998 (received May 11, 1998), we have been informed that you seek to have your USMLE Step 2 examination manually scored pursuant to NBME's standard procedures. As a consequence, in accordance with this request, we have hand scored your answer materials from the following examination:

| Examination | Test Date |
|---|---|
| USMLE Step 2 | March 1998 |

The result of the hand scoring process has confirmed that your scores are accurate as originally reported.

Because of the many verification procedures built into the machine scoring process, the possibility of score changes has become extremely remote.

I regret I cannot give you a more favorable report.

Sincerely,

Inna Rozinsky
Supervisor for Registration
and Examinee Records

IR:ab

CLIENT ASSISTANCE PROJECT

LEGAL ADVOCACY FOR PERSONS
WITH DEVELOPMENTAL DISABILITIES

MENTAL HEALTH LAW PROJECT

PROTECTION AND ADVOCACY FOR
INDIVIDUAL RIGHTS

EXECUTIVE DIRECTOR
Jeremy Lane

MANAGING ATTORNEYS
Luther A. Granquist
Pamela S. Hoopes

CENTER MANAGER
Lisa Cohen

### MINNESOTA DISABILITY LAW CENTER

THE PROTECTION & ADVOCACY
SYSTEM FOR MINNESOTA

430 FIRST AVENUE NORTH, SUITE 300
MINNEAPOLIS, MN  55401-1780
(612) 332-1441
(TDD) 332-4668
Toll Free 1-800-292-4150
FAX (612) 334-5755

ATTORNEYS
Charlene F. D'Cruz
Steven P. Elliot
Amy Jane Goetz
Kathleen Hagen
Anne L. Henry
Kathy S. Kosnoff
Roderick J. Macpherson III
Anne M. Robertson
Barnett I. Rosenfield
Patricia M. Siebert

ADVOCATES
Linda Bonney (Grand Rapids)
Kursten Dubbels (Fergus Falls)
Sandra M. Moore (Duluth)
Sharon Sanders (Duluth)
Marilyn Spensley (Park Rapids)

June 22, 1998

Magistrate Judge Jonathan G. Lebedoff                **VIA MESSENGER**
United States Magistrate Judge
U.S. Courthouse, Suite 9E
300 South 4th Street
Minneapolis, MN  55415

**RE:**  *C. Earl Grant and Celi V. Watts v. National Board of Medical Examiners*
         *Civil No. CV 3-96-310*

Dear Magistrate Judge Lebedoff:

I am writing to advise you about the status of the Settlement Agreement between Dr. Grant and the National Board of Medical Examiners.

On June 16, I notified Ms. Mayeron that Dr. Grant proposed to settle the lawsuit based upon the last Settlement Agreement that the parties had been negotiating in your chambers in May. I told Ms. Mayeron that Dr. Grant would sign the Settlement Agreement if the defendant would cancel its motion, including the motion for attorneys' fees. On June 17, Ms. Mayeron informed me that NBME had accepted Dr. Grant's settlement proposal and that it would withdraw the motion if he signed the settlement documents no later than Friday, June 19. Ms. Mayeron asked me to draft the Agreement.

On June 18, I delivered a draft of the proposed final version of the Confidential Settlement Agreement and Release to Ms. Mayeron by facsimile. Ms. Mayeron and I reviewed the document on June 18 and she informed me that NBME had approved the document subject to some minor language changes. Ms. Mayeron told me all of the changes that NBME wished to have made in the document. I revised the Confidential Settlement Agreement on June 18 and incorporated all of the language changes which NBME had required. I then submitted the Confidential Settlement Agreement and Release which NBME had approved to Dr. Grant for his signature.

Dr. Grant signed the Settlement Agreement on June 19. I faxed a copy of the signature page from the Settlement Agreement to Ms. Mayeron on Friday. I am enclosing a copy of the

Magistrate Judge Jonathan G. Lebedoff
June 22, 1998
Page 2

signature page from the Settlement Agreement to document the fact that Dr. Grant has signed the Agreement.

On June 19, after NBME had accepted Dr. Grant's settlement proposal and had approved the language of the Confidential Settlement Agreement and Release, Ms. Mayeron advised me that NBME was now demanding that a new term must be included in the Settlement Agreement. This was a term that had never before been discussed by the parties and was not part of the Settlement Agreement that was reached on December 29, 1997. It is Dr. Grant's position that he proposed, and NBME accepted, a settlement agreement and NBME approved the document which he has now signed.

Based on the fact that Dr. Grant has signed the Settlement Agreement, I believe this matter has been resolved.

Sincerely,

MINNESOTA DISABILITY LAW CENTER

Roderick J. Macpherson III
Attorney at Law

RJM:cas

Enclosure

cc:   Janie Mayeron
      C. Earl Grant
      Pamela Hoopes



# National Board of Medical Examiners®

3750 MARKET STREET, PHILADELPHIA, PA 19104
TELEPHONE (215) 590-9500

USMLE ID# 4-048-306-7

November 20, 1998

C. Earl Grant
3142 Pillsbury Avenue South
Minneapolis, MN 55408-3035

Dear Mr. Grant:

In accordance with your recent request, we have hand scored your answer materials from the following examinations:

| Examination | Test Date |
| --- | --- |
| USMLE Step 2 | August 1997 |
| USMLE Step 2 | March  1998 |

The result of the hand scoring process has confirmed that your scores are accurate as originally reported.

Because of the many verification procedures built into the machine scoring process, the possibility of score changes has become extremely remote.

I regret I cannot give you a more favorable report.

In connection with your written request to manually recheck your answers for the August 1997 and March 1998 USMLE Step 2, you submitted a check in the amount of $150.00.  The fee for each manual recheck is $25.00; accordingly, you will be forwarded under a separate cover a refund in the amount of $100.00.

Sincerely,

Inna Rozinsky
Supervisor for Registration
and Examinee Records

IR:ab



# National Board of Medical Examiners®

3750 MARKET STREET, PHILADELPHIA, PA 19104
TELEPHONE (215) 590-9500

USMLE ID# 4-048-306-7

December 16, 1998

C. Earl Grant
3142 Pillsbury Avenue South
Minneapolis, MN 55408-3035

Dear Mr. Grant:

In accordance with your request, dated December 5, 1998, we have hand scored your answer materials from the following examination:

| Examination | Test Date |
|---|---|
| USMLE Step 2 | August 1998 |

The result of the hand scoring process has confirmed that your scores are accurate as originally reported.

Because of the many verification procedures built into the machine scoring process, the possibility of score changes has become extremely remote.

Your letter of December 5 also stated: "I further request that following the hand-scoring and corrections, copies of my USMLE Transcript be forwarded to me along with the corrected scores for this examination." Given that there is no correction to be made to your August 1998 Step 2 scores, it is not clear whether you still wish us to comply with your request for transcripts. Please advise me in this regard. If I do not hear from you to the contrary prior to December 31, I will presume you do not wish to have transcripts provided to you and will forward to you a refund check in the amount of $40.00.

Sincerely,

Inna Rozinsky
Supervisor for Registration
and Examinee Records

IR:ab



US·MLE
United States
Medical
Licensing
Examination ™

# UNITED STATES MEDICAL LICENSING EXAMINATION™

Federation of State Medical Boards of the U.S., Inc.
P.O. Box 619850, Dallas, Texas 75261-9850
Telephone: (817) 868-4041

## STEP 3 SCORE REPORT

**Grant, Carrol Earl**                                      **Test Date: July 25, 2005**

**USMLE ID: 4-048-306-7**

The USMLE is a single examination program for all applicants for medical licensure in the United States; it replaced the Federation Licensing Examination (FLEX) and the certifying examinations of the National Board of Medical Examiners (NBME Parts I, II and III). The program consists of three Steps designed to assess an examinee's understanding of and ability to apply concepts and principles that are important in health and disease and that constitute the basis of safe and effective patient care. **Step 3** is designed to assess whether an examinee possesses the medical knowledge and understanding of clinical science considered essential for the unsupervised practice of medicine, with an emphasis on patient management in ambulatory-care settings. Results of the examination are reported to medical licensing authorities in the United States and its territories for use in granting an initial license to practice medicine. The two numeric scores shown below are equivalent; each state or territory may use either score in making licensing decisions. These scores represent your results for the administration of Step 3 on the test date shown above.

| **FAIL** + | This result is based on the minimum passing score recommended by USMLE for Step 3. Individual licensing authorities may accept the USMLE-recommended pass/fail result or may establish a different passing score for their own jurisdictions. |
| --- | --- |

| **160** + | This score is determined by your overall performance on Step 3. For recent administrations, the mean and standard deviation for first-time examinees from U.S. and Canadian medical schools were approximately 213 and 17, respectively, with most scores falling between 140 and 260. A score of 184 is recommended by USMLE to pass Step 3. The standard error of measurement (SEM)[‡] for this scale is approximately six points. |
| --- | --- |

| **64** + | This score is also determined by your overall performance on the examination. A score of 75 on this scale, which is equivalent to a score of 184 on the scale described above, is recommended by USMLE to pass Step 3. The SEM[‡] for this scale is approximately three points. |
| --- | --- |

+*Following review and approval of your written request, testing accommodations were provided during the administration of this examination. A similar annotation will be included on your USMLE transcript.*

‡Your score is influenced both by your general understanding of clinical medicine and by the specific set of items selected for this Step 3 examination. The Standard Error of Measurement (SEM) provides an index of the variation in scores that would be expected to occur if an examinee were tested repeatedly using different sets of items covering similar content.



## UNITED STATES MEDICAL LICENSING EXAMINATION™

Federation of State Medical Boards of the U.S., Inc.
P.O. Box 619850, Dallas, Texas 75261-9850
Telephone: (817) 868-4041

[Duplicate]

### STEP 3 SCORE REPORT

**Grant, Carrol Earl**                                                    **Test Date: November 1, 2006**

**USMLE ID: 4-048-306-7**

The USMLE is a single examination program for all applicants for medical licensure in the United States; it replaced the Federation Licensing Examination (FLEX) and the certifying examinations of the National Board of Medical Examiners (NBME Parts I, II and III). The program consists of three Steps designed to assess an examinee's understanding of and ability to apply concepts and principles that are important in health and disease and that constitute the basis of safe and effective patient care. **Step 3** is designed to assess whether an examinee possesses the medical knowledge and understanding of clinical science considered essential for the unsupervised practice of medicine, with an emphasis on patient management in ambulatory-care settings. Results of the examination are reported to medical licensing authorities in the United States and its territories for use in granting an initial license to practice medicine. The two numeric scores shown below are equivalent; each state or territory may use either score in making licensing decisions. These scores represent your results for the administration of Step 3 on the test date shown above.

| | |
|---|---|
| **FAIL +** | This result is based on the minimum passing score recommend by USMLE for Step 3. Individual licensing authorities may accept the USMLE-recommended pass/fail result or may establish a different passing score for their own jurisdictions. |

| | |
|---|---|
| **161 +** | This score is determined by your overall performance on Step 3.  For recent administrations, the mean and standard deviation for first-time examinees from U.S. and Canadian medical schools were approximately 213 and 17, respectively, with most scores falling between 140 and 260.  A score of 184 is recommended by USMLE to pass Step 3. The standard error of measurement (SEM)$^{\ddagger}$ for this scale is approximately seven points. |

| | |
|---|---|
| **65 +** | This score is also determined by your overall performance on the examination. A score of 75 on this scale, which is equivalent to a score of 184 on the scale described above, is recommended by USMLE to pass Step 3.  The SEM$^{\ddagger}$ for this scale is approximately three points. |

*+Following review and approval of your written request, testing accommodations were provided during the administration of this examination. A similar annotation will be included on your USMLE transcript.*

‡Your score is influenced both by your general understanding of clinical medicine and by the specific set of items selected for this Step 3 examination. The Standard Error of Measurement (SEM) provides an index of the variation in scores that would be expected to occur if an examinee were tested repeatedly using different sets of items covering similar content.



**US·MLE**
United States
Medical
Licensing
Examination                TM

# UNITED STATES MEDICAL LICENSING EXAMINATION

Federation of State Medical Boards of the U.S., Inc.
P.O. Box 619850, Dallas, Texas 75261-9850
Telephone: (817) 868-4041

## STEP 3 SCORE REPORT

**Grant, Carrol Earl**                                        **Test Date: July 21, 2004**

**USMLE ID: 4-048-306-7**

The USMLE is a single examination program for all applicants for medical licensure in the Unite
replaced the Federation Licensing Examination (FLEX) and the certifying examinations of the Nati
of Medical Examiners (NBME Parts I, II and III). The program consists of three Steps designed t
examinee's understanding of and ability to apply concepts and principles that are important in
disease and that constitute the basis of safe and effective patient care. **Step 3** is designed to assess
examinee possesses the medical knowledge and understanding of clinical science considered essen
unsupervised practice of medicine, with an emphasis on patient management in ambulatory-ca:
Results of the examination are reported to medical licensing authorities in the United States and it:
for use in granting an initial license to practice medicine. The two numeric scores shown below are
each state or territory may use either score in making licensing decisions. These scores represent y
for the administration of Step 3 on the test date shown above.

| | |
|---|---|
| **FAIL +** | This result is based on the minimum passing score recommended by USMLE for Individual licensing authorities may accept the USMLE-recommended pass/fail r may establish a different passing score for their own jurisdictions. |

| | |
|---|---|
| **166 +** | This score is determined by your overall performance on Step 3. For administrations, the mean and standard deviation for first-time examinees from ( Canadian medical schools were approximately 211 and 18, respectively, with mos falling between 140 and 260. A score of 184 is recommended by USMLE to pass The standard error of measurement (SEM)‡ for this scale is approximately six poin |

| | |
|---|---|
| **67 +** | This score is also determined by your overall performance on the examination. A : 75 on this scale, which is equivalent to a score of 184 on the scale described al recommended by USMLE to pass Step 3. The SEM‡ for this scale is approximat points. |

+*Following review and approval of your written request, testing accommodations were provided during the administ
this examination. A similar annotation will be included on your USMLE transcript.*

‡Your score is influenced both by your general understanding of clinical medicine and by the specific set of items sel
this Step 3 examination. The Standard Error of Measurement (SEM) provides an index of the variation in scores that



**US·MLE**
United States
Medical
Licensing
Examination ™

# UNITED STATES MEDICAL LICENSING EXAMINATION™

Federation of State Medical Boards of the U.S., Inc.
P.O. Box 619850, Dallas, Texas 75261-9850
Telephone: (817) 868-4041

## STEP 3 SCORE REPORT

**Grant, Carrol Earl**

**Test Date: December 7, 2004**

**USMLE ID: 4-048-306-7**

The USMLE is a single examination program for all applicants for medical licensure in the United States; it replaced the Federation Licensing Examination (FLEX) and the certifying examinations of the National Board of Medical Examiners (NBME Parts I, II and III). The program consists of three Steps designed to assess an examinee's understanding of and ability to apply concepts and principles that are important in health and disease and that constitute the basis of safe and effective patient care. **Step 3** is designed to assess whether an examinee possesses the medical knowledge and understanding of clinical science considered essential for the unsupervised practice of medicine, with an emphasis on patient management in ambulatory-care settings. Results of the examination are reported to medical licensing authorities in the United States and its territories for use in granting an initial license to practice medicine. The two numeric scores shown below are equivalent; each state or territory may use either score in making licensing decisions. These scores represent your results for the administration of Step 3 on the test date shown above.

| | |
|---|---|
| **FAIL** + | This result is based on the minimum passing score recommended by USMLE for Step 3. Individual licensing authorities may accept the USMLE-recommended pass/fail result or may establish a different passing score for their own jurisdictions. |

| | |
|---|---|
| **164** + | This score is determined by your overall performance on Step 3. For recent administrations, the mean and standard deviation for first-time examinees from U.S. and Canadian medical schools were approximately 211 and 18, respectively, with most scores falling between 140 and 260. A score of 184 is recommended by USMLE to pass Step 3. The standard error of measurement (SEM)‡ for this scale is approximately six points. |

| | |
|---|---|
| **66** + | This score is also determined by your overall performance on the examination. A score of 75 on this scale, which is equivalent to a score of 184 on the scale described above, is recommended by USMLE to pass Step 3. The SEM‡ for this scale is approximately two points. |

+*Following review and approval of your written request, testing accommodations were provided during the administration of this examination. A similar annotation will be included on your USMLE transcript.*

‡Your score is influenced both by your general understanding of clinical medicine and by the specific set of items selected for this Step 3 examination. The Standard Error of Measurement (SEM) provides an index of the variation in scores that would be expected to occur if an examinee were tested repeatedly using different sets of items covering similar content.

# **EXHIBIT**

# **D**

UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| C. Earl Grant, | ) | File No. 99-66 DSD/JMM |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **AFFIDAVIT OF LARRY E. REED** |
| | ) | |
| Gerald S. Golden, Inna Rozinski, and | ) | |
| National Board of Medical Examiners, | ) | |
| | ) | |
| Defendants. | ) | |

STATE OF MINNESOTA   )
                                         )   SS.
COUNTY OF HENNEPIN   )

Upon first being duly sworn and upon oath, Affiant states and alleges as follows:

1.  I am the attorney for the Plaintiff, C. Earl Grant, in the above-entitled matter.

2.  I assisted Dr. Earl Grant in review of prior Board examination results at the offices of Leonard, Street and Deinard.

3.  At the time of the examination, when the sealed exams were opened, we observed that one of the exams had numbers, indicating that someone had been scoring the exam.

4.  We also observed that there were certain portions of the exam that appeared to not have been scored, suggesting a partial scoring.

5.  We questioned this and asked for a re-scoring.

6.  Also, at the time of this meeting, there were other exams without marking.

7.   The exam with the markings suggested that there had been some partial re-

scoring; however, the exams without the markings yielded no indication as to

whether or not the exams had been re-scored.

Date: _3/.7/99_

_Larry E. Reed_
Larry E. Reed

Subscribed and sworn to before me
this ☐7th day of March , 1999.

_Trayshana P. Thomas_
Notary Public



TRAYSHANA P. THOMAS
NOTARY PUBLIC-MINNESOTA
My Commission Expires Jan. 31, 2000

# **EXHIBIT**

# **E**

## GRANT

## CONFIDENTIAL SETTLEMENT AGREEMENT AND RELEASE

This Confidential Settlement Agreement and Release ("Agreement") is made and entered into between C. Earl Grant and the National Board of Medical Examiners ("NBME").

**WHEREAS,** NBME administers and scores Step I and Step II of the three-step United States Medical Licensing Examinations ("USMLE") to eligible students and graduates of United States and Canadian accredited medical schools; and

**WHEREAS,** NBME has informed Grant that it does not determine accommodation for Step III of the USMLE; and

**WHEREAS,** Grant has received a diagnosis of Attention Deficit-Hyperactivity Disorder: Predominantly Inattentive Type ("ADD") and has asserted that he is disabled as defined by the Minnesota Human Rights Act ("MHRA") and the Americans with Disabilities Act ("ADA"); and

**WHEREAS,** Grant requested accommodation from NBME in connection with Step I and Step II of the USMLE, and

**WHEREAS,** NBME, after reviewing Grant's submitted documentation of ADD and concluding that it was insufficient to support a diagnosis of ADD, denied Grant the accommodation he requested; and

**WHEREAS,** Grant is one of the plaintiffs in a lawsuit against NBME entitled *C. Earl Grant and Celi Watts v. National Board of Medical Examiners*, United States District Court, District of Minnesota, Third Division, Civil File No. 3-96-310 ("lawsuit"), in which he has asserted claims against NBME pursuant to the MHRA and ADA; and

**WHEREAS,** NBME denies all of Grant's claims and asserts that at all times its actions with respect to Grant were proper and lawful; and

WHEREAS, Grant and NBME have previously entered into an agreement concerning accommodations concerning Grant's request for accommodations made in connection with the Spring 1996 Step I examination (hereafter referred to as "the Spring 1996 Agreement"); and

WHEREAS, NBME later granted the request for accommodation which Grant submitted in connection with his application to take the Fall 1997 Step II examination based upon all of the documentation provided by Grant to support his request for accommodation, including the additional documentation which he submitted in connection with that request for accommodation; and

WHEREAS, in the interest of settlement and compromise of the charges and claims made by Grant, and in order to avoid the costs and expenses of trial and in order to resolve Grant's concerns of potential damage to his character and reputation, without any admission of liability, it is the mutual desire of NBME and Grant to settle amicably any and all claims that have been or could have been raised by Grant in regard to potential accommodation on Step I and Step II Examinations of the USMLE; and

WHEREAS, in the interest of avoiding disagreement and unnecessary litigation in the future, it is the mutual desire of the parties to agree upon accommodations to be provided in connection with future Step II examinations applied for by Grant, and which are determined by NBME.

NOW, THEREFORE, in consideration of the mutual promises, terms and conditions made below, the parties agree as follows:

1.    Accommodation.  NBME will not challenge the diagnosis of ADD which Grant has already received, with respect to all future examinations it administers and for which it makes

2

decisions whether an applicant will be granted examination accommodations. In addition, NBME agrees to continue the accommodation it provided Grant in connection with the Fall 1997 Step II examination in connection with any future Step II examination administered by the NBME and for which he is eligible to take and which he takes, in the same manner it has accommodated Grant in the last Step I and Step II taken by him, *i.e.* with time and one-half to take the examination and a low-distraction room in which to take it, <u>provided that</u> Grant follows the NBME's usual procedure and timely applies for and formally requests accommodation for each test he takes in the future. However, Grant will not be required to provide any additional documentation of his disability, nor shall Grant be required to resubmit information previously accepted by NBME.

2.     <u>Settlement Payment</u>. Upon execution of this Agreement, NBME agrees to pay Grant and Grant agrees to accept the sum of Twenty-one Thousand Dollars ($21,000.00) as settlement of all Grant's claims, including his claims for compensatory damages, to be paid as follows: one check shall be issued to "C. Earl Grant and the Legal Aid Society of Minneapolis".

3.     <u>Taxes</u>. NBME will issue a Form 1099 to Grant. It is specifically understood and agreed that any tax liability for payment by Grant of taxes on the Settlement Payment is solely Grant's responsibility. NBME is not waiving any rights it may have to seek relief from Grant if Grant fails to pay any tax due on the Settlement Payment and if any taxing authority seeks payment of Grant's taxes from NBME. Similarly, Grant is not waiving any rights he may have against NBME if any taxing authority seeks payment from Grant for NBME's failure to comply with the requirements of any applicable tax law or regulation.

3

4.    <u>Nondisclosure</u>.  NBME hereby agrees not to affirmatively disclose Grant's ADD diagnosis including but not limited to:  any of the documentation Grant submitted in support of his requests for accommodation and the reports concerning Grant's condition prepared by agents, representatives and/or employees of NBME to any residency program, potential employer or any other person, except by consent of Grant or by order of a court.  However, when requested by Grant or authorized by Grant to provide score reports or transcripts, NBME will disclose on such documents the fact of Grant's accommodation and will disclose upon inquiry the nature of the accommodation.

5.    <u>Preservation of Examination Results</u>.

(a)   For any Step II examination Grant takes in a pencil and paper format which is administered by NBME in the Twin Cities (Minneapolis/St. Paul area) and for which Grant has requested that a sealed copy of the answers be made pursuant to this subparagraph, NBME agrees to have copies made of Grant's answer sheets immediately after he submits them, and seal the copy in an envelope containing on the outside of the envelope Grant's name, the date when the envelope is sealed and the name of the person who sealed the copy of Grant's answer sheets in the envelope.  The sealed answer sheets shall then be hand-delivered to the law firm of Leonard, Street and Deinard (or to any other law firm which NBME may designate), or sent via overnight mail to the law firm of Leonard, Street and Deinard (or to any other law firm which NBME may designate).

For any Step II examination administered by NBME in the Twin Cities (Minneapolis/St. Paul area) which Grant takes by computer and not in a pencil and paper format, NBME will make all reasonable and necessary efforts to copy and seal the computerized

4

examination answers and forward them to counsel for NBME.  Grant understands that the copying of his computerized answers may only be possible at a central location (which may be at NBME) and not at the site where Grant takes his examination.  In the event that copying his computerized answers can only take place at a central location different from his examination site, Grant agrees that the copying may take place at the central location, so long as the copying takes place as soon as is reasonably practicable following the transmission of the examination answers.

In the event that Grant seeks to have his answer sheets copied and sealed or his computerized answers copied and sealed pursuant to this subparagraph, he shall make this request in writing to Janet Carson, general counsel for NBME, Janie S. Mayeron at Leonard, Street and Deinard, or any other third party designated by NBME, no later than thirty days prior to the date of the exam for which he wants his examination answers copied.

(b)  For any Step II examination Grant takes in a pencil and paper format which is administered by NBME, NBME agrees to preserve the following:  (1) Grant's answer sheets; (2) the sealed copy of Grant's answer sheets (if applicable pursuant to subparagraph 5 (a) above); (3) Grant's examination booklet; and (4) the answer key for the examination Grant took.  These materials are hereafter referred to as the "Test Materials."  In addition, for any Step II examination administered by NBME which Grant takes by computer and not in a pencil and paper format, NBME agrees to preserve the computerized equivalent of the Test Materials.  The Test Materials or their computerized equivalent shall be preserved for ten years or upon Grant's receipt of a license to practice medicine in any state or territory in the United States, whichever occurs first.

(c)  By agreeing to copy answer sheets or the computerized equivalent (if applicable pursuant to subparagraphs 5(a) above) and preserve the Test Materials or their computerized equivalent, except as otherwise provided by this Agreement, the parties agree that this copying and preservation of materials or computerized equivalent shall not, however, give Grant any right or privilege to use these materials or computerized equivalent in a way that other examinees are not entitled to use their materials or computerized equivalent, and in no event shall his examination be scored or evaluated with regard to any marks made in his examination booklet.

6.    Non-Retaliation.

(a)  NBME agrees not to retaliate against Grant in any manner in connection with the testing or scoring of any future examination taken by Grant and administered or scored by NBME, or in connection with the exercise of Grant's rights under this Agreement.

(b)  As part of this agreement not to retaliate, if Grant requests a manual recheck of his examination score in connection with any examination administered or scored by NBME, which examination program provides that the examinee may request a manual recheck by NBME, NBME shall review his score fairly and objectively and using exactly the same procedure as it would use to review any other examinee's score.

(c)  In the event that a sealed copy of Grant's Step II examination answers (whether in paper form or on the computer) have been made pursuant to Paragraph 5 of this Agreement, as part of the process of rechecking Grant's Step II examination score pursuant to subparagraph (b) of this section, if requested by Grant, NBME will allow Grant's attorney and its attorney to jointly compare the sealed copy of Grant's examination or computerized answers with the original answer sheets or computerized answers Grant submitted to determine if the sealed copy of the

6

answer sheets or computerized answers is different from the original answer sheets or computerized answers. If the sealed copy of the answer sheets or computerized answers is different from the original answer sheets or computerized answers, the copied answer sheets or computerized answers will be used for the manual recheck (instead of the original answer sheets or computerized answers). If the sealed copy of the answer sheets or computerized answers and the original answer sheets or computerized answers are the same, the original answer sheets or computerized answers will be used for the manual recheck.

(d)    For the Step II examination, in the event that the manual recheck is performed pursuant to subparagraph 6(b), and the manual recheck identifies an error in the score originally reported, a new score report will be issued to Grant. For the Step II examination, in the event that the manual recheck performed pursuant to subparagraph 6(b), does not reveal an error in the score originally reported, NBME will send Grant a letter informing him that the original score was accurate as reported.

(e)    In the event that Grant pursues a suit or charge of retaliation or for breach of this Agreement, the prevailing party may seek reimbursement of all attorneys' fees and costs incurred in pursuit or defense of such action from the unsuccessful party by bringing a motion for attorneys' fees to the presiding judge of the litigation. The presiding judge may grant or deny such a motion in whole or in part, in his or her discretion.

7.    Release. In return for the payment and commitments made by NBME which are described in this Agreement, Grant hereby releases and discharges NBME (and the related persons who are identified in the subsection entitled, "Who Is Released") from liability for any

claim which he had or may have had against NBME  for its refusal to accommodate him in connection with any test administered by NBME.

WHO IS RELEASED:  This release covers NBME and all of its parents, subsidiaries, and affiliated corporations, and each of their past, present, or future shareholders, members, directors, officers, employees, representatives, agents, predecessors, successors, assigns, attorneys and insurers.

WHO IS RELEASING:  Grant and his heirs, administrators, executors, assigns, attorneys and all others claiming rights through him or acting on his behalf.

WHAT CLAIMS ARE INCLUDED BY RELEASE:  Grant is releasing claims which he may have or may claim to have had against NBME for its refusal to accommodate him in connection with any test administered by NBME.  They include, but are not limited to,  (a) all claims of discrimination (including disability, sex, and age discrimination pursuant to the MHRA or ADA), breach of contract, promissory estoppel, defamation, negligent or intentional infliction of emotional distress, harassment, impairment of economic opportunity, fraud, misrepresentation, or any other theory of liability; (b) all claims for mental anguish, pain and suffering, damage to reputation, punitive damages, attorneys' fees, or lost employment compensation; and (c) all charges, complaints, claims, liabilities, obligations, promises, agreements, damages (money or otherwise), actions, causes of actions, suits, debts, costs, expenses (including but not limited to attorneys' fees) and rights of any nature whatsoever, state or federal, in law or in equity, known or unknown, asserted or unasserted, suspected or unsuspected, including those claims asserted in this lawsuit.  Grant agrees that he will not sue in court or file an administrative claim, complaint

8

or charge of any nature against NBME for a claim filed against NBME and released in this Agreement, except for the purpose of seeking enforcement of this Agreement.

8.    Confidentiality. The terms of this Settlement Agreement shall forever be treated as confidential by Grant and NBME and the counsel of each party, who shall not disclose its terms to anyone, except that (1) Grant may disclose the fact and terms of this settlement to his legal counsel, to Dr. Ann Baldwin (who Grant has represented to NBME he has consulted for advice during settlement negotiations), his financial adviser(s) and accountant(s) (collectively referred to as "Confidential Persons"); (2) Grant may disclose the fact of and the non-monetary terms of this settlement to representatives of medical licensing and regulatory authorities (also collectively referred to as "Confidential Persons"); and (3) NBME may disclose the fact and the terms of this Agreement to its members, officers and directors, outside auditors, and to employees or agents of NBME or related entities who have a legitimate need to know the terms of the Agreement in the course of performing their duties (also referred to as "Confidential Persons"). In addition, in the event that NBME is contacted by any representative of a medical licensing or regulatory authority to confirm or deny the accuracy of a representation made by Grant to any persons listed in subparagraphs (1) or (2) above concerning any of the terms of the Settlement Agreement, NBME may confirm or deny the accuracy of Grant's representations and may accurately report the terms of the Settlement Agreement to that person. Both parties may also disclose the terms of the Agreement to representatives of the Internal Revenue Service (IRS), the Minnesota Department of Revenue, or to any other governmental entity responsible for collecting taxes; or if they are required by a court of law to do so. Confidential Persons shall be bound by the duties of confidentiality applicable to the party disclosing the information to the Confidential

9

Person. In the event that NBME or Grant is asked by any person other than Confidential Persons the outcome of this lawsuit or Grant's claims against NBME, Grant, Grant's attorneys, and NBME attorneys and representative shall be permitted only to state that "the matter has been resolved."

9. <u>Dismissal of Lawsuit</u>. NBME and Grant agree that their respective counsel shall execute and file with the Court for signature by the Court a Stipulation of Dismissal with Prejudice Without Costs or Disbursements and Order, of this lawsuit.

10. <u>Non-Admission</u>. NBME specifically denies any liability to Grant for any and all claims asserted by Grant against NBME. Nothing contained in this Agreement shall be construed as an admission by NBME of any violation of state, federal, or local statute, regulation, ordinance, or principle of common law, or that it has engaged in any wrongdoing. Similarly, nothing in this agreement shall be construed as an admission by Grant that his claims were not legitimate or that he is relinquishing any right to enforce his rights under this settlement, or to enforce any other rights he has not released in this agreement.

11. <u>Assignment</u>. The parties agree that the rights and obligations under this Agreement shall insure to and be binding upon NBME and its successors and assigns, but the rights and obligations of Grant hereunder are personal and may not be assigned to any other person.

12. <u>Integration</u>. This Agreement contains the full agreement of the parties and may not be modified, altered or changed in any respect except upon the express written consent of both parties.

13. <u>Voluntary and Knowing Action</u>. Grant acknowledges that he has been represented by his own attorney, that he has read and understands the terms of this Agreement, and that he

is voluntarily entering into the Agreement based upon the advice and recommendation of his attorney.

14.     Governing Law.  This Agreement will be construed and interpreted in accordance with the laws of the State of Minnesota.

15.     Counterparts.  This Agreement may be executed in one or more counterparts, each of which shall be deemed an original.


Dated:  June _19_, 1998

_C. Earl Grant_____
C. Earl Grant


Dated:  June ___, 1998             **National Board of Medical Examiners**


By_____

    Its_____

is voluntarily entering into the Agreement based upon the advice and recommendation of his attorney.

14.    Governing Law. This Agreement will be construed and interpreted in accordance with the laws of the State of Minnesota.

15.    Counterparts. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original.


Dated:  June _____, 1998

_____
C. Earl Grant


Dated:  ~~June~~ July 1, _____, 1998         **National Board of Medical Examiners**

By _L. Thompson Bowles MD_

Its _PRESIDENT_