UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

C. EARL GRANT,

                            Plaintiff,

        vs.                                                          Civil Action No.
                                                                     7:07-cv-00996
                                                                     (TJM-GJD)

NATIONAL BOARD OF MEDICAL EXAMINERS and
FEDERATION OF STATES MEDICAL BOARD,

                            Defendants.

_____


**DEFENDANTS' MEMORANDUM OF LAW
IN OPPOSITION TO PLAINTIFF'S MOTION TO
AMEND AND IN SUPPORT OF THEIR
CROSS MOTION FOR SUMMARY JUDGMENT**


                              WARD NORRIS HELLER & REIDY LLP
                              *Attorneys for defendants*
                              *National Board of Medical Examiners*
                              *and Federation of State Medical Boards*
                              300 State Street
                              Rochester, New York 14614
                              (585) 454-0700

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ……………………………………………………… ii

**PRELIMINARY STATEMENT** …………………………………………….. 1

**STATEMENT OF FACTS** ………………………………………………… 4

**ARGUMENT** ……………………………………………………………. 4

      **POINT I –**    **PLAINTIFF'S MOTION TO AMEND HIS COMPLAINT SHOULD BE DENIED BECAUSE AMENDMENT WOULD BE FUTILE.** ……………………………………………… 4

      **POINT II -**    **DEFENDANTS HAVE SATISFIED THEIR BURDEN OF DEMONSTRATING THE ABSENCE OF A GENUINE MATERIAL FACT** …………………………………… 14

      **POINT III -**    **PLAINTIFF'S BREACH OF CONTRACT CLAIMS ARE UNTENABLE** …………………………………… 14

      **POINT IV -**    **DEFENDANTS ARE ENTITLED TO DISMISSAL OF PLAINTIFF'S "DISCRIMINATORY SCORING" CLAIM …** 22

**CONCLUSION** ……………………………………………………. 23

i

## **TABLE OF AUTHORITIES**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ……………………….. 14

*Aquino v. Prudential Life and Casualty Ins. Co.*, 419 F.Supp.2d 259
(E.D.N.Y. 2005) ………………………………………………………... 6

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955 (2007) ……………. 5, 22

*Brown v. Capoziello*, No. 03 Civ. 8712 (LTS) (JCF), 2008 WL 4201636
(S.D.N.Y. September 12, 2008) ………………………………………….. 1

*Chisholm v. United of Omaha Life Ins. Co.*, 514 F.Supp.2d 318 (D. Conn. 2007) … 9, 10

*Corr v. MTA Long Island Bus*, 199 F.3d 1321 (2d Cir. 1999) ……………………… 11

*Dalton v. Educational Testing Service*, 87 N.Y.2d 384, 663 N.E.2d 289 (1995) ……. 15, 16, 17, 18

*D'Amico v. New York State Bd. of Law Examiners*, 813 F.Supp. 217
(W.D.N.Y. 1993) …………………………………………………………. 6

*E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279 (2002) ………………………….. 21

*Ely-Cruikshank Co., Inc. v. Bank of Montreal*, 81 N.Y.2d 399, 615
N.E.2d 985 (1993) ……………………………………………………..……. 14

*Falso v. Churchville-Chili Central School District*, 547 F.Supp.2d 233
(W.D.N.Y. 2008) …………………………………………………………. 5

*Falso v. Sutherland Global Services*, 494 F.Supp.2d 207 (W.D.N.Y. 2007) ………. 11

*Gilmore v. Amityville Union Free School District*, 305 F.Supp.2d 271
(E.D.N.Y. 2004) ………………………………………………………….. 7, 12

*Golden Trade, S.r.L. v. Jordache*, 143 F.R.D. 504 (S.D.N.Y. 1992) ……………….. 21

*Halpern v. F.B.I.*, 181 F.3d 279 (2d Cir. 1999) …………………………………… 14

*Hunt v. Meharry Medical College*, No. 98 Civ. 7193 (MBM) 2000 WL 739551
(S.D.N.Y. June 8, 2000) …………………………………...……………….. 9

*Jones v. New York State Division of Military and Naval Affairs*, 166 F.3d 45
(2d Cir. 1999) ……………………………………………………………….. 4

*Kalantar v. Lufthansa German Airlines*, 402 F.Supp.2d 130 (D. D.C. 2005) ……… 12

*McIntyre-Handy v. APAC Customer Services, Inc.*, 422 F.Supp.2d 611
(E.D. Va. 2006) …………………………………………………………….. 7

*McKie v. Laguardia Community College*, No. 04-CV-555 (RRM) (MDG)
2008 WL 4489796 (E.D.N.Y. Sept. 30, 2008) ……………………………………. 23

*McKinnon v. Hermes of Paris, Inc.*, No. 06 Civ 1001 NRB, 2007 WL 1098707,
at *3 (S.D.N.Y. 2007) …………………………………………………………… 20

*Michels v. Sunoco Home Comfort Service*, No. Civ. A. 04-1906, 2004
WL 2897945 (E.D. Pa. Dec. 13, 2004) ……………………………………………… 5, 6

*MHR Capital Partners LP v. Presstek, Inc.*, 863 N.Y.S.2d 154, 2008 N.Y. Slip. Op.
06507 (N.Y. App. Div. 2008) ……………………………………………………. 16, 19

*Noah v. AOL Time Warner, Inc.*, 261 F.Supp.2d 532 (E.D. Va. 2003)…………….. 12

*Orraca v. Pilatich*, 2008 WL 4443274 (N.D.N.Y. Sept. 26, 2008) …………….…….. 14

*Payne v. New York Power Authority*, 997 F.Supp. 492 (S.D.N.Y. 1998) …………..…… 23

*Powell v. National Board of Medical Examiners*, 364 F.3d 79 (2d Cir. 2004) ………. 14

*Red Ball Interior Demolition Corp. v. Palmadessa*, 173 F.3d 522 (2d Cir. 1999)…… 20

*Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522 (2d Cir. 1994) ………………….. 20, 21

*Russell v. Tennessee Dept. of Correction*, 99 Fed. App'x 575 (6th Cir. 2004) ………. 5, 6

*Shomo v. New York Dept. of Correctional Servs.*, No. 9:04-CV-0910 (LEK/GHL)
2007 WL 2580509 (N.D.N.Y. Sept. 4, 2007 ………………………………………… 7

*Soignier v. American Board of Plastic Surgery*, 92 F.3d 547 (7th Cir. 1996) ………... 9

*T&N PLC v. Fred S. James & Co. of New York, Inc.*, 29 F.3d 57 (2d Cir. 1994) …… 15

*Tamondong v. GMAC Commercial Credit LLC*, No. 06 Civ. 770 (SAS)
2006 WL 3377592 (S.D.N.Y. Nov. 17, 2006) ……………………………………….. 11

*Tori v. University of Minnesota*, No. A06-205, 2006 WL 3772316
(Minn. App. December 26, 2006) ………………………………………………… 6

*Treanor v. MCI Telecomm. Corp.*, 200 F.3d 570 (D.Minn. 2000) …………………….. 10

*Ware v. Wyoming Bd. of Law Examiners*, 973 F.Supp. 1339 (D.Wyo. 1997) ………...   6

*Weg v. Macchiarola*, 995 F.2d 15 (2d Cir. 1993) ……………………………………….   14

*Wm, Kaufman Organization, Ltd v. Graham & James LLP*, 269 A.D.2d 171
703 N.Y.S.2d 439 (N.Y. App. Div. 2000) …………………………………………….   18

*Wormer v. Rensselaer*, No. 07-1641-CV, 2008 WL 4326525 (2d Cir. March 22, 2007) .   4, 22

*Yaeger v. Educational Testing Service*, 158 A.D.2d 602 (N.Y. App. Div. 1990) ………   15, 19

*Yusef v. Vassar College*, 35 F.3d 709 (2d Cir. 1994) …………….…………………...   22

## PRELIMINARY STATEMENT

Defendants National Board of Medical Examiners ("NBME") and Federation of State Medical Boards ("FSMB"), oppose plaintiff's motion to amend his complaint and cross move for summary judgment, dismissing plaintiff's original complaint in its entirety.  In his original complaint, plaintiff alleges a variety of breach of contract claims and seeks damages for "discriminatory scoring," in connection with his numerous failed attempts to pass the United States Medical Licensing Examination® ("USMLE"). In his proposed amended complaint, he abandons those claims entirely in favor of three new discrimination claims against NBME, FSMB and five new, individual defendants.[1]  Neither plaintiff's new claims, nor the claims raised in his original complaint have any merit.  Indeed, plaintiff's claims appear to flow entirely from his subjective belief that he could not have failed the USMLE.  That subjective belief is not based in fact and is wholly inadequate to support his claims against defendants.  Accordingly, leave to amend should be denied and this case should be dismissed.

NBME and FSMB have created and established the USMLE, an essential component of a medical licensure system in the United States designed to ensure that only competent and qualified physicians are licensed to practice medicine.  The USMLE is composed of three separate parts, known as "Steps": Step 1; Step 2, consisting of a Clinical Knowledge (CK) portion and a Clinical Skills (CS) portion; and Step 3.  All state medical boards which license allopathic (M.D.) physicians require candidates to pass all three Steps of the USMLE as a prerequisite to medical licensure.

---

[1]     Although plaintiff did not seek leave pursuant to Fed. R. Civ. P. 21, in considering whether to allow plaintiff to add new defendants, the court should be guided essentially by the same standard as that for a motion to amend. *Brown v. Capoziello*, No. 03 Civ. 8712 (LTS) (JCF), 2008 WL 4201636, *3 (S.D.N.Y. September 12, 2008).  Plaintiff's attempt to add the new defendants would be futile and, therefore, should be denied. *See infra*, at Point I(D)(F).

1

Plaintiff is a candidate for medical licensure who has taken, and failed, each Step of the USMLE on multiple occasions. Plaintiff eventually passed the Steps 1 and Step 2 CK after several tries but, despite five attempts between 2003 and 2006, he has not passed the third and final Step.

In his original complaint, plaintiff asserts that NBME and FSMB: (1) violated his rights under the terms of a prior settlement agreement "by not scoring his examinations objectively;" (2) breached their contract with him as a test-taker "by not scoring his examinations objectively;" (3) "breached their own internal rules by not rescoring [his] examinations when requested;" and (4) engaged in "discriminatory scoring" of his examinations.

In his proposed amended complaint, plaintiff alleges that NBME, FSMB and five of their current or former employees violated section 12189 of the Americans with Disabilities Act ("ADA"), section 363A.03, subdivision 36 of the Minnesota Human Rights Act ("MHRA"), and section 2000a of Civil Rights Act of 1964, by refusing him reasonable test accommodations on the Step 1 and Step 2 exams, and by subjectively scoring and rechecking his USMLE exams.

Plaintiff's new claims are not viable. As an initial matter, plaintiff's proposed new claims do not meet even the minimum pleading threshold required by Rule 8 of the Federal Rules of Civil Procedure. In addition, plaintiff's proposed amended complaint suffers from numerous other fatal flaws: First, plaintiff released many of his proposed claims against NBME and its employees in 1998. Second, the vast majority of his proposed claims are time-barred. Third, the proposed individual defendants are not subject to liability under the ADA. Fourth, plaintiff lacks standing to assert his MHRA claims. Fifth, Title II of the Civil Rights Law of 1964 is simply inapplicable. Finally, even if plaintiff's proposed amended complaint could survive all of these hurdles, his attempt at recasting his claims would still be futile because as

demonstrated in defendants' cross motion for summary judgment, plaintiff has not identified, and cannot identify, any deviation from defendants' standardized processes that would warrant granting him relief.

The claims of plaintiff's original complaint fare no better. His Step 1 and Step 2 claims are time-barred, and his "discriminatory scoring" claim is so lacking in substance that it leaves defendants guessing as to what he is attempting to allege. The remaining claims are entirely without factual support. Specifically, plaintiff's claim that defendants breached the terms of a previous 1998 settlement agreement by not scoring his Step 3 exams objectively fails because it is undisputed that:

- FSMB was not a party to that settlement agreement; and

- NBME scored plaintiff's Step 3 examinations using the same standard procedures it uses to score every other Step 3 examination

Similarly, defendants are entitled to summary judgment on plaintiff's claim that they breached their contract with him as a test-taker by not scoring his Step 3 exams objectively because:

- FSMB had no role in scoring plaintiff's Step 3 examinations; and

- NBME scored plaintiff's Step 3 examinations using the same standard procedures it uses to score every other Step 3 examination.

Defendants are further entitled to summary judgment on plaintiff's claim that they breached their internal rules by not rescoring his Step 3 exams when requested because:

- Plaintiff failed to submit all but one of his score recheck requests within the time frame required by the published USMLE *Bulletin*;

- Defendants followed the procedures set forth in the *Bulletin* and their internal rules when responding to plaintiff's one timely request; and

- Plaintiff has not identified, and cannot identify, any other rule that was breached in any way, or that applied to him.

3

Finally, even if plaintiff had met the minimum pleading requirements for his so-called "discriminatory scoring" claim, it would be subject to dismissal.  The undisputed facts show that NBME scored plaintiff's Step 3 examinations in accordance with its standard procedures, in the same way that it scored every other Step 3 exam.  Similarly, defendants responded to plaintiff's Step 3 score recheck requests in accordance with their standard procedures, in the same way they responded to all other Step 3 recheck requests.  Thus, defendants could not have discriminated against plaintiff in any way.  For these reasons, discussed in greater detail below, plaintiff's motion to amend should be denied, defendants' cross motion for summary judgment should be granted, and this action should be dismissed.

## STATEMENT OF FACTS

The salient facts are set forth in the accompanying Declarations of Gerard F. Dillon, David A. Johnson, and Heidi S. Martinez.

## ARGUMENT

### POINT I

### PLAINTIFF'S MOTION TO AMEND HIS COMPLAINT SHOULD BE DENIED BECAUSE AMENDMENT WOULD BE FUTILE

Under the Federal Rules, a plaintiff's request for leave to amend his complaint should be freely granted where justice so requires.  Fed. R. Civ. P. 15(a)(2).  Where, however, the proposed amendment would be futile, the plaintiff's motion to amend should be denied.  *Jones v. New York State Division of Military and Naval Affairs,* 166 F.3d 45, 55 (2d Cir. 1999) (affirming denial of leave to amend where "proposed amended complaint would be subject to immediate dismissal"); *Wormer v. Rensselaer,* No. 07-1641-CV, 2008 WL 4326525, *2 (2d Cir. March 22, 2007) (affirming dismissal of claims and denying leave to amend as futile because claims were time barred).  Even when read in the light most favorable to plaintiff, the proposed amended

4

complaint suffers from a myriad of fatal flaws.  Accordingly, plaintiff's motion to amend should be denied as futile.

**A.      Plaintiff's Proposed Amended Complaint
Fails To Satisfy Minimum Pleading Standards.**

Rule 8(a) of the Federal Rules of Civil Procedure mandates a "short and plain statement of the claim" showing that plaintiff is entitled to relief.  To meet this minimum pleading requirement, plaintiff's allegations must be specific enough to provide defendants with "fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1964-65 (2007) (citations omitted); *Falso v. Churchville-Chili Central School District*, 547 F.Supp.2d 233, 237-238 (W.D.N.Y. 2008).   In other words, the plaintiff must allege sufficient facts "to state a claim to relief that is plausible on its face," and cannot merely rely upon "labels and conclusions," or a "formulaic recitation of the elements of a cause of action." *Twombly*, 127 S.Ct. at 1964-65.  Neither defendants nor the court are "required to either guess the nature of or create [plaintiff's] claim." *Russell v. Tennessee Dept. of Correction*, 99 Fed. App'x 575, 577 (6th Cir. 2004) (dismissing *pro se* plaintiff's complaint alleging failure to promote him due to his race, where complaint "contained neither details surrounding the alleged denial of promotion nor any facts supporting such claim"); *see also Michels v. Sunoco Home Comfort Service,* No. Civ. A. 04-1906, 2004 WL 2897945, *2-*3 (E.D. Pa. Dec. 13, 2004).  None of plaintiff's proposed new claims meet the minimum pleading standards required by Rule 8.

In the first and second counts of his proposed amended complaint, plaintiff alleges that defendants discriminated against him based on his disability, in violation of section 12189 of the ADA and section 363A.03, subdivision 36 of the MHRA, by refusing to provide reasonable accommodation on the Step 1 and 2 examinations, unjustifiably cancelling the March 2007 Step

5

2 exam and the March 2003 Step 3 exam, and refusing to objectively grade and re-grade his

USMLE exams.  App. Ex. 45, ¶¶ 34-36 and 37-39.

> Under section 12189 of the ADA, any person offering:
>
> examinations or courses related to applications, licensing, certification, or credentialing for secondary or post-secondary education, professional, or trade purposes shall offer such examinations or courses in a place and manner accessible to persons with disabilities or offer alternative accessible arrangements for such individuals.

42 U.S.C. § 12189.  In order to make out a *prima facie* case of discrimination under that section

or under the MHRA, plaintiff must allege facts which, if proven, would show that he is disabled,

that his requests for accommodation were reasonable, and that his requests were denied. *Aquino*

*v. Prudential Life and Casualty Ins. Co.,* 419 F. Supp.2d 259, 270 (E.D.N.Y. 2005); *Ware v.*

*Wyoming Bd. of Law Examiners*, 973 F.Supp. 1339, 1355 (D.Wyo. 1997); see also *Tori v.*

*University of Minnesota*, No. A06-205, 2006 WL 3772316, *3 (Minn. App. December 26, 2006)

(because disability discrimination claims under ADA and MHRA are substantially similar, court

will analyze them under the same standards); *cf. D'Amico v. New York State Bd. of Law*

*Examiners*, 813 F.Supp. 217, 220-221 (W.D.N.Y. 1993).

Here, plaintiff has not alleged any facts regarding the nature of his disability or

impairment.  *See Michels,* 2004 WL 2897945, at *2 (plaintiff's complaint failed to state a claim

where plaintiff did not allege the nature of his claimed disability or impairment); *see also*

*Russell,* 99 F. App'x at 577 (complaint alleging racial discrimination failed to state a claim

where it "contained neither details surrounding the alleged denial of a promotion nor any facts

supporting such claim.").  Moreover, to the extent plaintiff attempts to plead a retaliation claim,

he does not allege any facts which, if true, would establish a causal connection between

defendants' purported adverse actions – cancelling certain exams and subjectively scoring and

rechecking others -- and the assertion of his rights under the ADA.[2]  Absent such allegations, plaintiff's claims must fail. *See e.g., McIntyre-Handy v. APAC Customer Services, Inc.,* 422 F.Supp.2d 611, 623-24 (E.D.Va. 2006) (denying plaintiff's motion to amend in ADA retaliation case where plaintiff failed to assert any facts linking defendant's adverse employment action and her filing of an ADA discrimination charge); *Shomo v. New York Dept. of Correctional Servs.,* No. 9:04-CV-0910 (LEK/GHL), 2007 WL 2580509, *15 (N.D.N.Y. Sept. 4, 2007) (dismissing plaintiff's ADA claims where plaintiff failed to allege facts indicating defendants were motivated by discriminatory animus or ill will due to his disability).

Finally, in Count 3 of his proposed amended complaint, plaintiff asserts that defendants' failure to accommodate him and their "continued reprisal" through purported subjective grading of and refusal to objectively recheck his USMLE scores, was in violation of Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a.  As discussed *infra*, at Point I (F), section 2000a prohibits discrimination based on race, color, religion or natural origin by "places of public accommodation."  Plaintiff alleges no facts at all that would, if true, prove the proposed defendants are "places of public accommodation" or that the proposed defendants discriminated against him based on race or some other protected status.  Accordingly, plaintiff's Civil Rights Act claim is insufficiently pled. *See Gilmore v. Amityville Union Free School District,* 305 F. Supp.2d 271, 279 (E.D.N.Y. 2004) (dismissing claim under 42 U.S.C. § 2000c-8, where plaintiff failed to allege any facts in support of that claim).

---

[2] Plaintiff's only allegations with respect to the proposed individual defendants is that they "published" or "communicated" purportedly falsified results. App. Ex. 45, ¶¶ 4, 5.  Even if individuals could be held liable under the ADA, *see infra* Point I(D), these allegations are insufficient to support a claim that they discriminated against plaintiff on the basis of his disability or in retaliation for the exercise of his ADA rights.

Because plaintiff's proposed amended complaint is devoid of any factual allegations supporting his claims under the ADA, the MHRA, or Title II of the Civil Rights Act of 1964, plaintiff's motion to amend his complaint should be denied as futile.

**B.     Plaintiff Released All Discrimination Claims Against NBME
And Its Employees Relating to His Step 1 and Step 2 Examinations.**

In 1996, plaintiff filed a lawsuit claiming that NBME violated the ADA by failing to provide him with reasonable accommodation on the USMLE. Martinez Decl., ¶ 17. In a 1998 settlement agreement, plaintiff released NBME and its employees "from any claim which he had or may have had against NBME for its refusal to accommodate him in connection with any test administered by NBME." Plaintiff's broad release encompassed:

> (a) all claims of discrimination (including disability, sex, and age discrimination pursuant to the MHRA or ADA), breach of contract, promissory estoppel, defamation, negligent or intentional infliction of emotional distress, harassment, impairment of economic opportunity, fraud, misrepresentation or any other theory of liability; (b) all claims for mental anguish, pain and suffering, damage to reputation, punitive damages, attorneys' fees, or lost employment compensation; and (c) all charges, complaints, claims, liabilities, obligations, promises, agreements, damages (money or otherwise), actions, causes of actions, suits, debts, costs, expenses (including but not limited to attorneys' fees) and rights of any nature whatsoever, state or federal, in law or equity, known or unknown, asserted or unasserted, suspected or unsuspected, including those claims asserted in this lawsuit.

*Id.*, ¶ 21; App. Ex. 51, ¶ 7. In addition, plaintiff agreed that he would not file any further lawsuits against NBME for claims released in the 1998 Settlement Agreement, except for the purpose of seeking to enforce its terms. App. Ex. 51, ¶ 7. Thus, plaintiff is barred from asserting that NBME or its employees discriminated against him in connection with the Step 1 and Step 2 examinations.

C.     **Much of Plaintiff's Proposed Amended Complaint Is Time-Barred.**

1.     All of Plaintiff's Claims Alleging Violation Of The
       ADA Prior to September 19, 2004 Are Time-Barred.

Plaintiff's proposed ADA claims are subject to New York's three year statute of

limitations. *Hunt v. Meharry Medical College,* No. 98 Civ. 7193 (MBM), 2000 WL 739551, *5

(S.D.N.Y. June 8, 2000) (claims under Titles II and III of the ADA are subject to New York's

three year statute of limitations for personal injury actions); *see also Chisholm v. United of

Omaha Life Ins. Co.,* 514 F.Supp.2d 318, 326 (D. Conn. 2007) (ADA claims are subject to

statute of limitations for state personal injury actions); *Soignier v. American Board of Plastic

Surgery,* 92 F.3d 547, 550 (7th Cir. 1996) (state statute of limitations for personal injury actions

applies to claims under the ADA).  Thus, any of plaintiff's ADA claims that accrued prior to

September 19, 2004 are time-barred.

An ADA claim accrues "when the plaintiff 'knows or has reason to know' of the

allegedly injury-causing act." *Hunt,* 2000 WL 739551, at *3. (citation omitted)  Plaintiff's

claims that the proposed defendants violated the ADA by failing to accommodate him accrued,

with respect to each examination, when he became aware that NBME had purportedly refused

his request for accommodation. *See Hunt,* 2000 WL 739551, at *6 (plaintiff's claim against

NBME for failure to grant quadruple time on the USLME accrued when plaintiff received

NBME's letter denying requested accommodation).  Similarly, each of plaintiff's claims of

subjective scoring accrued upon plaintiff's receipt of the relevant score report.  Plaintiff's claims

of failure to objectively recheck his scores accrued, for each exam, at the time that he received

notice that his score would not be rechecked or that his score was correct as originally issued.

*See id.*

9

A plain reading of plaintiff's proposed amended complaint and the documents attached thereto, clearly shows that plaintiff was aware of defendants' alleged actions regarding Steps 1 and 2 of the USMLE well before September 19, 2004.  App. Ex. 45, ¶¶ 11, 13-16, 18-22; 26-29; *see Chisholm,* 514 F.Supp.2d at 324 (Rule 12(b)(6) dismissal is appropriate where it is clear from plaintiff's complaint that claims are time-barred).  Likewise, plaintiff was aware of his claims that defendants purportedly "refused to objectively grade" his July 2003 and July 2004 Step 3 examinations when those exam scores were released on August 6, 2003 and August 18, 2004, respectively.  App. Ex. 45, ¶ 29.[3]  Because plaintiff's ADA claims regarding his Step 1 and Step 2 exams and his July 2003 and July 2004 Step 3 exams are time-barred, his proposed amendment regarding those exams would be futile.

2.      The Vast Majority of Plaintiff's Claims Under the Minnesota Human Rights Law Are Time-Barred.

All discrimination charges under the MHRA must be brought within one year of the alleged discrimination.  Minn. Stat. § 363A.06, Subdivision 3 (2008); *Treanor v. MCI Telecomm. Corp.*, 200 F.3d 570, 573 (D. Minn. 2000).  Plaintiff took all but one of his USMLE examinations prior to September 19, 2006.  App. Ex. 5; App. Ex. 45, ¶¶ 8, 23, 29 and ex. C; App. Ex. 40, ¶¶ 18-26.  Likewise, defendant responded to all of plaintiff's many requests for score rechecks, except his request for a score recheck of the November 2006 Step 3 exam, before September 19, 2006.  Johnson Decl., ¶¶ 20 and 23.  Thus, all of plaintiff's claims except those related to scoring or score rechecks of his November 2006 Step 3 exam, are barred by the statute of limitations, and an amendment to include those claims would be futile.

---

[3] Even if plaintiff's complaint did not clearly demonstrate that these claims accrued prior to September 19, 2004, the undisputed facts show that plaintiff cannot maintain timely ADA claims regarding his Step 1, Step 2, July 2003 Step 3 and July 2004 Step 3 examinations. *See* Defendants' Statement of Undisputed Material Facts.

**D.**    **The Proposed Individual Defendants Are Not**
         **Subject To Liability Under Title II Of The ADA**.

Plaintiff's proposed amended complaint alleges that the five proposed individual

defendants violated the ADA by "communicating" and "publishing" purportedly false USMLE

examination scores.  App. Ex. 45, ¶¶ 3-5.  However, it is well settled that individuals are not

subject to ADA liability.  *E.g., Falso v. Sutherland Global Services*, 494 F. Supp.2d 207, 209

(W.D.N.Y. 2007) (citing *Corr v. MTA Long Island Bus,* 199 F.3d 1321, 1999 WL 980960, at *2

(2d Cir. 1999)); *Tamondong v. GMAC Commercial Credit LLC,* No. 06 Civ. 770 (SAS), 2006

WL 3377592, *2 (S.D.N.Y. Nov. 17, 2006).  Accordingly, plaintiff's request to amend his

complaint to add ADA claims against the proposed individual defendants should be denied as

futile.

**E.**    **Plaintiff Lacks Standing to Assert Claims For**
         **Violation of the Minnesota Human Rights Act**.

The purpose of the Minnesota Human Rights Act is to protect the citizens of Minnesota

from unfair discriminatory practices:

> It is the public policy of this state to secure *for persons in this state*, freedom from
> discrimination … in public accommodations because of race, color, creed, religion,
> national origin, sex, sexual orientation, and disability.

Minn. Stat. § 363A.02, subdivision 1(a)(1) (2008) (emphasis added).  Thus, by its own terms, the

MHRA operates to protect only those persons residing in Minnesota, and does not extend its

reach to citizens of New York or other states.  *Id.*  Plaintiff first raised MHRA claims in 1996,

when he was a student enrolled in the University of Minnesota Medical School.  Martinez Decl.,

¶ 17.  In contrast, plaintiff now claims that his "legal address … is Fort Drum, New York." App.

Ex. 45, ¶ 1; *see also* App. Ex. 40, ¶ 3 (alleging that plaintiff is a "resident of the county of

Jefferson and the State of New York."). Because he is not a resident of Minnesota, plaintiff cannot avail himself of its discrimination laws.

**F.    Title II of The Civil Rights Act of 1964 Does Not Apply To the Proposed Defendants.**

In count 3 of his proposed amended complaint, plaintiff asserts that the proposed defendants' failure to accommodate him and their "continued reprisal" by purportedly engaging in subjective grading and re-grading of his USMLE exams, was in violation of Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a. Title II prohibits specific forms of discrimination in places of public accommodation:

> All persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations of any place of public accommodation, *as defined in this section*, without discrimination or segregation *on the ground of race, color, religion, or national origin.*

42 U.S.C. § 2000a(a) (emphasis added). Plaintiff's attempt to assert a claim under this section fails because defendants are not "places of public accommodation" subject to section 2000a, and because section 2000a does not address disability discrimination.

Title II applies only to the following specifically enumerated "places of public accommodation:" (1) places of transient lodging; (2) places of eating; (3) places of entertainment; and (4) establishments located within or surrounding places of lodging, eating or entertainment. 42 U.S.C. § 2000a(b); *Kalantar v. Lufthansa German Airlines,* 402 F. Supp.2d 130, 139 (D. D.C. 2005) (Title II "clearly delineates the entities which are to be considered as places of public accommodation") (citation omitted). The proposed defendants – NBME, FSMB and five individuals – do not fall within any of those enumerated categories. *See, e.g., Kalantar,* 402 F. Supp.2d at 139 (airplanes not "places of public accommodation"); *Gilmore v. Amityville Union Free School District,* 305 F. Supp.2d 271, 278-79 (public schools not "places of public

accommodation"); *Noah v. AOL Time Warner, Inc.*, 261 F. Supp.2d 532, 542-543 (E.D. Va. 2003) (on-line chat rooms not "places of public accommodation").

Moreover, plaintiff mistakenly seeks to invoke Title II to address his claims of disability discrimination. App. Ex. 45, ¶¶ 34-36. Title II addresses only claims of discrimination on the ground of race, color, religion, or national origin. 42 U.S.C. § 2000a(a). And, as discussed above, plaintiff alleges no facts whatsoever to support a claim for discrimination on one of those grounds. *See supra* Point I (A). Therefore, plaintiff's proposed amendment to include a claim under Title II of the Civil Rights Law of 1964 would be futile.

## G.    The Undisputed Facts Prove That Defendants Did Not Discriminate Against Plaintiff.

Plaintiff's proposed amended complaint suffers from insurmountable flaws. But even if some of plaintiff's claims somehow could be salvaged, the undisputed facts demonstrate unequivocally that plaintiff was not the victim of discrimination or retaliation. As demonstrated in support of defendant's motion for summary judgment, NBME granted plaintiff reasonable test accommodations on each of his Step 3 exams. Moreover, plaintiff's examinations were scored in accordance with NBME's standard procedures, in the same way that every other Step 3 examination was scored. It is also undisputed that defendants acted on plaintiff's requests for score rechecks in accordance with their standard policies and in the same way that it handled all other recheck requests. *See* Defendants' Statement of Undisputed Material Facts ¶¶ 10-11, 16-17, and 24-35; Dillon Decl., ¶¶ 29-40, 43-46, 52-58, and 68-72; Johnson Decl., ¶¶ 16-26. Thus, even if plaintiff could somehow cure the many pleading deficiencies of his proposed amended complaint, plaintiff cannot adduce any facts in support of his subjective belief that his numerous USMLE exam failures must be the result of discrimination or retaliation, instead of a fair

13

representation of his knowledge and skills. Amendment under these circumstances would be futile and, therefore, plaintiff's motion for leave to amend should be denied.

## POINT II

### DEFENDANTS HAVE SATISFIED THEIR BURDEN OF DEMONSTRATING THE ABSENCE OF A GENUINE ISSUE OF MATERIAL FACT

Under Rule 56, where "there is no genuine issue as to any material fact . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Weg v. Macchiarola*, 995 F.2d 15, 18 (2d Cir. 1993). In this regard, a dispute over immaterial or minor facts will not defeat a properly supported motion. *Powell v. National Board of Medical Examiners,* 364 F.3d 79, 84 (2d Cir. 2004). Instead, "there must be evidence on which a jury could reasonably find for the nonmovant." *Id.* Mere speculation or conjecture will not establish a genuine dispute as to a material fact, and cannot defeat a motion for summary judgment. *See Halpern v. F.B.I.*, 181 F.3d 279, 287 (2d Cir. 1999) ("Metaphysical doubt, conjecture, or surmise cannot establish genuine dispute regarding material fact."); *see also Orraca v. Pilatich*, 2008 WL 4443274, fn. 8 (N.D.N.Y. Sept. 26, 2008). Here, defendants' cross motion for summary judgment is solidly supported by detailed facts recited by witnesses with personal knowledge, and those facts demonstrate defendants' entitlement to summary judgment as a matter of law.

## POINT III

### PLAINTIFF'S BREACH OF CONTRACT CLAIMS ARE UNTENABLE

**A.    Plaintiff's Breach Of Contract Claims Regarding His Step 1 And Step 2 Examinations Are Barred By The Statute Of Limitations.**

In New York, the statute of limitations for breach of contract is 6 years. C.P.L.R.

213(2) (McKinney's 2008).  A claim for breach of contract accrues when the breach occurs,

regardless of whether the plaintiff was aware of the breach at that time. *Ely-Cruikshank Co., Inc.*

*v. Bank of Montreal*, 81 N.Y.2d 399, 402, 615 N.E.2d 985, 986 (1993); *T&N PLC v. Fred S.*

*James & Co. of New York, Inc.*, 29 F.3d 57, 59 (2d Cir. 1994) (applying New York law).  Thus,

any claim arising from an allegation that defendants did not score his Step 1 and 2 examinations

objectively would accrue when his exams were scored, and any claim that defendants did not

properly recheck his scores on the Step 1 and 2 examinations accrue when those scores were

rechecked.  All those alleged events occurred on or before December 16, 1998, well outside the

six year period dictated by C.P.L.R. 213(2), and thus they are time-barred. Dillon Decl., ¶¶ 41-

60.  Moreover, it is undisputed that FSMB had no part in scoring or rechecking plaintiff's Step 1

and 2 examination scores, and on this independent ground, summary judgment in FSMB's favor

is warranted.

**B.      Defendants Are Entitled To Summary Judgment With**
**         Regard To Plaintiff's Step 3 Breach of Contract Claims.**

      1.       <u>Defendants Did Not Breach Their Contract With Plaintiff As A Test-Taker</u>.

While breach of contract claims occurring *after* September 19, 2001 are not untimely,

they must be dismissed as untenable.  In New York, a contract is formed between a testing

organization and the test taker when the test taker agrees to be bound by the terms of the testing

organization's registration bulletin. *Dalton v. Educational Testing Service,* 87 N.Y.2d 384, 389

663 N.E.2d 289, 291 (1995).  The testing organization's promised performance under that

contract is "good faith compliance with the [bulletin's] stated procedures." *Id.*, ¶ 387; *Yaeger v.*

*Educational Testing Service,* 158 A.D.2d 602, 604 (N.Y. App. Div. 1990).  Although an

obligation to act in good faith is implied, no obligation can be imposed on the testing

organization that "would be inconsistent with other terms of the contractual relationship."

*Dalton,* at 291-92 (testing organization was not obligated to conduct an investigation where bulletin placed burden of overcoming a finding of score invalidity on the test taker). Moreover, a party alleging breach of contract must first prove that it has performed any condition precedent to the other party's performance. *E.g., MHR Capital Partners LP v. Presstek, Inc.,* 863 N.Y.S.2d 154, 2008 N.Y. Slip. Op. 06507 (N.Y. App. Div. 2008) (where condition precedent was not satisfied, defendant was relieved of its obligations under the contract).

      a.      NBME Scored Plaintiff's Step 3 Examinations Objectively.

In his second claim, plaintiff asserts that defendants breached their contract with him as a test taker by failing to score his Step 3 examinations objectively. App. Ex. 40, ¶ 37. Before taking each Step 3 examination, plaintiff certified that he had read the current USMLE *Bulletin of Information* (the "*Bulletin*") and that he would "abide by the policies and procedures described therein." Johnson Decl., ¶ 14. Thus, the *Bulletin* forms the basis for the contract between plaintiff, as a test taker, and the defendants. *See Dalton,* 663 N.E.2d at 292.

The *Bulletin* informs examinees that all USMLE Steps are administered by computer, and explains the process for scoring:

> When you take a Step, the computer records your responses. After your test ends, your responses are transmitted to the NBME for scoring. The number of test items you answer correctly is converted to two equivalent scores, one on a three-digit score scale and one on a two-digit score scale. Both scales are used for score-reporting purposes.

App. Ex. 1, p. 20; 2, p. 20; 3, p. 26; 4, p. 27. The *Bulletin* also states that NBME uses standard scoring procedures to "ensure that the scores reported for [examinees] accurately reflect the responses recorded by the computer." App. Ex. 1, p. 21; 2, p. 21; 3, p. 27; 4, p. 28.

All Step 3 examinations are scored using those standard scoring procedures. Dillon Decl., ¶ 24. Once an examinee completes the examination, NBME's testing vendor encrypts each examinee's Response Record and transmits it over secure data lines to its data

center. *Id.*, ¶ 19. NBME electronically retrieves the Response Records from the data center via secure transmission lines, decrypts them and stores them in a secure database until they are scored. *Id.*, ¶ 20. NBME then scores each Response Record using its proprietary Scoring Software. *Id.* It also scores each Response Record using separate QA Software. *Id.*, ¶¶ 25-28. Scores generated by the Scoring Software and the QA Software are compared electronically and, if no discrepancy is found, NBME issues a score report containing the computer-generated two-digit and three-digit reported scores. *Id.*, ¶ 27. If a discrepancy is identified, NBME investigates and resolves it, then reports the accurate scores to the examinee. *Id.*, ¶ 28. NBME's careful adherence to this standard process ensures the reliability of Step 3 examination results. *Id.*, ¶ 25.

NBME scored each of plaintiff's Step 3 examinations using this standard process, and no discrepancies between plaintiff's scores generated by the Scoring Software and the QA Software were identified. *Id.*, ¶ 65. Indeed, in a recent letter to the court, plaintiff conceded that he has "no reason to believe that there were problems with the computer programs used for grading the ... Step 3 exams."[4] Martinez Decl., ¶ 9. Thus, it is undisputed that NBME scored plaintiff's Step 3 examinations objectively.

Finally, although FSMB administers the application process for Step 3, it has no role in the scoring of Step 3 examinations. Johnson Decl., ¶ 7. Because the undisputed evidence demonstrates (a) that FSMB did not participate in the scoring of plaintiff's Step 3 examinations, and (b) that NBME scored those examinations objectively and in accordance with its standard

---

[4] Instead, plaintiff appears in his letter to seek to compel defendants to release "answer keys" and plaintiff's Response Record to a third party who would independently score the exams and decide whether plaintiff passed or failed. Martinez Decl., ¶ 8. Requiring NBME to cede control of the scoring process to a third party would be inconsistent with other terms of the *Bulletin* and would seriously undermine the reliability of USMLE results. *See Dalton*, 663 N.E.2d at 294 (requiring testing service to release questionable scores would "seriously undermine" their value to society).

procedures and the terms of the *Bulletin*, defendants are entitled to summary judgment on count 2 of plaintiff's complaint.

      b.  Defendants Followed Their Internal Procedures And The Terms of The Bulletin When Responding To Plaintiff's Requests To Recheck His Step 3 Scores.

In his third claim, plaintiff alleges that defendants "breached their own internal rules by not rescoring Plaintiff's examinations when requested." App. Ex. 40, ¶¶ 40-41.  An allegation of breach of internal rules does not, without more, state an independent ground for relief. *See Wm. Kaufman Organization, Ltd. v. Graham & James LLP,* 269 A.D.2d 171, 173, 703 N.Y.S.2d 439 (N.Y. App. Div. 2000) ("in the absence of a contract, the mere violation of a disciplinary rule will not sustain a breach of contract action").  Viewed most favorably to plaintiff, plaintiff's claim for breach of internal rules is, at best, a restatement of his claim that defendants breached their contract with him as a test-taker by not complying in good faith with the terms of the *Bulletin* regarding score recheck requests. *See Dalton,* 663 N.E.2d at 290 (in breach of contract claim against testing organization, the defendant's "promised performance was good-faith compliance with [its] stated procedures....").

The undisputed evidence shows that the defendants followed both the terms of the *Bulletin* and their internal procedures in responding to plaintiff's score recheck requests.  The *Bulletin* cautions examinees that "a change in score based on a recheck is an extremely remote possibility."  Dillon Decl., ¶ 36.  Nevertheless, the *Bulletin* states that a score recheck will be done if a written request, together with the required service fee, is received by the appropriate registration entity within ninety days of the date the examinee's score was released. *Id.*, ¶ 37.

FSMB is the registration entity for Step 3.  Johnson Decl., ¶ 7.  Plaintiff submitted a request to FSMB for a score recheck of his July 2004 Step 3 examination on August 30, 2004, within ninety days of the date that his July 2004 score was released. *Id.*, ¶ 16.  Accordingly,

FSMB forwarded his request to NBME, and NBME rechecked plaintiff's July 2004 score using the QA Software, in accordance with its standard procedures. Dillon Decl., ¶ 69. The results generated by the QA Software were electronically compared with the scores originally generated by the Scoring Software. *Id.* No discrepancies were identified and, thus, NBME informed plaintiff that his scores on the July 2004 examination were correct as originally reported. *Id.*, ¶ 70. This is the same standard process that defendants follow for all timely Step 3 score recheck requests. *Id.*, ¶ 69.

The remainder of plaintiff's requests for rechecks of his Step 3 scores were untimely. On August 13, 2006, plaintiff requested that his July 2003, December 2004 and July 2005 Step 3 scores be rechecked. Johnson Decl., ¶ 21. In addition, on July 25, 2007, plaintiff requested that his November 2006 Step 3 scores be rechecked. *Id.*, ¶ 24. Each of plaintiff's requests was made at least 8 months – and as long as 3 years – after his scores were released. *Id.*, ¶¶ 21-26. Thus, in accordance with the terms of the *Bulletin* and their internal procedures, defendants properly declined to recheck plaintiff's remaining Step 3 scores. Johnson Decl., ¶¶ 23 and 26.

Moreover, because the *Bulletin* forms the basis for a contract between plaintiff and defendants, the requirement that plaintiff make a timely request for a score recheck is a condition precedent to defendants' performance. Because plaintiff failed to satisfy that condition precedent, defendants were under no obligation to recheck his remaining Step 3 scores. *See MHR Capital Partners LP*, 863 N.Y.S.2d at 156 (bank's failure to execute consent form within the required period relieved defendant of any obligation to proceed to closing under the contract); *see also Yaeger*, 158 A.D.2d at 604 (where test-taker did not use the proffered options, the testing service acted in good faith and according to procedure when it cancelled the test-taker's scores). Thus, defendants' denial of plaintiff's untimely requests to recheck his

remaining Step 3 scores was not a breach of their contract with him as a test-taker, and

defendants are entitled to summary judgment on count 3 of plaintiff's complaint.

2.       Defendants Did Not Breach The 1998 Settlement Agreement.

In his first cause of action, plaintiff alleges that defendants breached the 1998 Settlement

Agreement by not scoring his Step 3 examinations objectively. App. Ex. 40, ¶¶ 34-35.

Settlement agreements are "construed according to general principles of contract law." *Rexnord*

*Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525 (2d Cir. 1994); *see also Red Ball Interior*

*Demolition Corp. v. Palmadessa*, 173 F.3d 481, 484 (2d Cir. 1999).  A party who has performed

its duties under a settlement agreement cannot be held liable for breach.  *McKinnon v. Hermes of*

*Paris, Inc.*, No. 06 Civ. 1001 NRB, 2007 WL 1098707, at *3 (S.D.N.Y. 2007) (no breach of

settlement agreement where the facts demonstrated defendant's "marked adherence" to its

terms).

a.       NBME Did Not Breach The 1998 Settlement Agreement
         Because It Scored Plaintiff's Step 3 Examinations Objectively.

Plaintiff and NBME entered into the 1998 Settlement Agreement to resolve plaintiff's

allegations that, as a result of his diagnosis of ADHD, he was entitled to test accommodations on

Steps 1 and 2 of the USMLE.  Martinez Decl., ¶ 20.  As part of the 1998 Settlement Agreement,

NBME agreed:

> not to retaliate against Grant in any manner in connection with the testing
> or scoring of any future examination taken by Grant and administered or
> scored by NBME, or in connection with the exercise of Grant's rights
> under this Agreement.

*Id.*

As discussed above, NBME scored plaintiff's Step 3 examinations in exactly the same

manner that it scored every other Step 3 examination.  Dillon Decl., ¶ 63.  Plaintiff's Response

20

Record was electronically stored, transmitted to NBME, and scored by the Scoring Software and QA Software. *Id.*, ¶¶ 64-65. The scores generated by each software program were electronically compared, and no discrepancies were identified. *Id.*, ¶ 65. Thereafter, plaintiff's scores were reported to him. *Id.*, ¶¶ 65-66. In fact, in a September 3, 2008 letter to the Court, plaintiff concedes that he has "no reason to believe that there were problems with the computer programs used for grading the … Step 3 exams." Martinez Decl., ¶ 9. Because NBME adhered to its standard procedures when it scored plaintiff's Step 3 examinations, NBME could not have retaliated against plaintiff in breach of the 1998 Settlement Agreement. Accordingly, NBME is entitled to summary judgment on count 1 of plaintiff's complaint.

      b.      **FSMB Was Not A Party to the 1998 Settlement Agreement And Therefore Cannot Be Liable for Breach of That Agreement.**

The first step in proving a claim for breach of a settlement agreement is establishing the existence of a contract between the parties. *See Rexnord*, 21 F.3d at 525. If the defendant is not a party to the contract, it cannot be bound by the contract's terms. *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002) (it is axiomatic that "a contract cannot bind a nonparty"); *Golden Trade, S.r.L. v. Jordache*, 143 F.R.D. 504, 506 (S.D.N.Y. 1992) ("contract between two plaintiffs could not give either of them any greater rights against defendant, which was not party to that contract").

The 1998 Settlement Agreement resolved a lawsuit between plaintiff and NBME, and expressly stated that it "is made and entered into between C. Earl Grant and the National Board of Medical Examiners." App. Ex. 51, p. 1. It was signed only by plaintiff and NBME. *Id.*, pp. 11-12. It is undisputed that FSMB was not a party to the 1996 lawsuit or to the 1998 Settlement Agreement resolving it. Defs.' Statement of Undisputed Material Facts, ¶ 39. As a non-party, FSMB cannot be held liable for an alleged breach of that Agreement. *See Waffle*

*House,* 534 U.S. at 294 (EEOC was not a party to arbitration agreement between employer and employee, and therefore could not be required to arbitrate). Accordingly, FSMB is entitled to summary judgment on count 1 of plaintiff's complaint.

**POINT IV**

**DEFENDANTS ARE ENTITLED TO DISMISSAL OF
PLAINTIFF'S "DISCRIMINATORY SCORING" CLAIM**

In his fourth claim, plaintiff seeks monetary damages for defendants' alleged "discriminatory scoring" of his USMLE examinations. *See* Complaint at ¶ 41. As discussed above, plaintiff must allege sufficient facts to give defendants fair notice of what his claim is and the grounds on which it rests. *See supra,* at Point I(A); *see also Yusuf v. Vassar College,* 35 F.3d 709, 714 (2d Cir. 1994) (dismissal of race discrimination claim proper where plaintiff offered no reason to suspect that defendant's actions had anything to do with his race).

Plaintiff's allegations of "discriminatory scoring" do not even amount to a "formulaic recitation of the elements of a cause of action." *See Twombly,* 127 S. Ct. at 1964-65. Although plaintiff alleges that he is "an individual with a disability as established in a prior action between Plaintiff and Defendants," and that he is African American, he does not identify any statute or law that he claims defendants violated. App. Ex. 40, ¶¶ 1, 13, 40-41. Nor does he provide any clues about the nature of his disability, the specific discriminatory behavior in which defendants allegedly engaged, or how that behavior was causally linked to his alleged disability. In short, plaintiff's allegations of "discriminatory scoring" leave defendants guessing as to the precise nature of his claims and, therefore, are not sufficient to state a claim upon which relief may be granted.

Nor would leave to amend plaintiff's fourth claim be warranted. *See Wormer,* 2008 WL 4326525, at *2 (leave to amend will be denied where amendment would be futile). As

demonstrated above, it is undisputed that NBME scored plaintiff's Step 3 examinations in accordance with its standard procedures. *See supra* Point III (B)(2)(a). Thus, there is simply no basis for plaintiff's claims that defendants engaged in discriminatory scoring of his Step 3 exams.

Plaintiff appears to suggest that because he is "confident" he passed the Step 3 examinations, his failing grades must have been the result of some form of discrimination. App. Ex. 43. But plaintiff's subjective beliefs are insufficient to create a material issue of disputed fact. *See Payne v. New York Power Authority*, 997 F. Supp. 492, 498 (S.D.N.Y. 1998) (plaintiff's "subjective, unparticularized belief that she was treated differently because she is an African-American" was insufficient to defeat motion for summary judgment). Thus, any attempt by plaintiff to amend his complaint would be futile, and the Court should dismiss plaintiff's fourth claim without leave to replead or, in the alternative, grant defendants summary judgment on plaintiff's fourth claim. *See McKie v. Laguardia Community College*, No. 04-CV-555 (RRM) (MDG) 2008 WL 4489796, fn 2 (E.D.N.Y. Sept. 30, 2008) (granting summary judgment where complaint failed properly to allege cause of action, and where plaintiff did not adduce sufficient facts to support such a cause of action in response to summary judgment motion).

## CONCLUSION

For the reasons set forth above, this Court should deny plaintiff's motion to file an amended complaint, grant the cross motion of defendants NBME and FSMB for summary judgment, and dismiss plaintiff's complaint in its entirety.

Dated:  December 5, 2008

Respectfully submitted,

WARD NORRIS HELLER & REIDY LLP


_____s/Heidi S. Martinez_____
Heidi S. Martinez
Ward Norris Heller & Reidy, LLP
300 State Street
Rochester, New York 14614
(585) 454-0700

*Attorneys for National Board of Medical Examiners*
*and Federation of State Medical Boards*

Of Counsel:

Thomas S. D'Antonio
Ward Norris Heller & Reidy, LLP
300 State Street
Rochester, New York 14614

Pamela S. C. Reynolds
Ward Norris Heller & Reidy, LLP
300 State Street
Rochester, New York 14614


TO:    C. Earl Grant, M.D. Ph.D.
       P.O. Box 551
       Fort Drum, NY 13602

       C. Earl Grant, M.D. Ph.D.
       US Army Medical Department
       DHCN-Fort Belvoir
       P.O. Box 1067
       Fort Belvoir, VA  22060