# EXHIBIT A:

## Civil No. CV 3-96-310

.

# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA
### FIRST DIVISION

C. Earl Grant and Celi V. Watts,

Civil No. CV 3-96-310

        Plaintiffs,

**COMPLAINT**

   vs.

National Board of Medical Examiners,

        Defendants.

## INTRODUCTION

1.  This is a disability discrimination lawsuit brought by C. Earl Grant and Celi Watts, two medical students who have diagnosed disabilities, against defendant National Board of Medical Examiners (hereafter "NBME") for failing to offer the United States Medical Licensing Examination - Step 1 (USMLE Step 1) in a manner that is accessible to the plaintiffs. The defendant refused to reasonably accommodate plaintiffs' disabilities by, among other things, allowing them additional time to take the USMLE Step 1 examination. In doing so, defendants violated federal and state anti-discrimination statutes, including the Americans With Disabilities Act (ADA), 42 U.S.A. 12101, *et seq.* and the Minnesota Human Rights Act, Minn. Stat. § 363.01, *et seq.*, specifically including 42 U.S.C. § 12189. Plaintiffs seek declaratory and injunctive relief, as well as compensatory and punitive damages and statutory attorneys fees and expenses.

## JURISDICTION

2.  This Court has jurisdiction over plaintiffs' case pursuant to 28 U.S.A. 1331 in that this is an action arising under the laws of the United States. Plaintiffs seek

declaratory, injunctive and monetary relief to redress the deprivation rights secured them by the Americans with Disabilities Act, 42 U.S.A. 12101, *et seq*.    This Court has supplemental jurisdiction over those of plaintiffs' claims which arise under the laws of the State of Minnesota, pursuant to 28 U.S.A. 1367, since the federal and state claims arise out of the same operative facts, circumstances and transactions.

## PARTIES

3.    Plaintiff C. Earl Grant is a qualified individual with a disability, as that term is defined by the Americans with Disabilities Act (28 U.S.A. 12102 (2) and 12131 (2)) and by the Minnesota Human Rights Act (Minn. Stat..§ 363.01, subd. 35).  Specifically, he has been diagnosed with Attention Deficit Disorder (ADD).

4.    Plaintiff Celi V. Watts is a qualified individual with a disability, as that term is defined by the Americans with Disabilities Act (28 U.S.A. 12102 (2) and 12131 (2)) and by the Minnesota Human Rights Act (Minn. Stat. § 363.01, subd. 35).  Specifically, she has been diagnosed with Attention Deficit Disorder (ADD).

5.    The NBME is a public accommodation as that term is defined by the ADA (28 U.S.C. § ) and by the Minnesota Human Rights Act (Minn. Stat. Section § 363.01, subd. 33).    It provides testing and certification services for the purpose of licensing physicians.

6.    The NBME is an entity that offers examinations related to applications, licensing, certification or credentialling for post-secondary education, professional or trade purposes, as those terms are used by 42 U.S.C. § 12189.

## FACTS

7.     Plaintiffs are students enrolled at the University of Minnesota Medical School.

8.     In order to become licensed physicians, plaintiffs must take certain licensing examinations offered by defendant NBME, including the USMLE Step I examination.

9.     Plaintiff Grant notified NBME of his disability and requested that NBME reasonably accommodate his disability by allowing him additional time to take the Step I examination on two occasions:  March 23, 1995 and August, 1995.

10.     Defendant NBME refused to accommodate both of Grant's requests for reasonable accommodation.  It notified Grant of its decisions on May 19, 1995 and September 11, 1995.

11.     Plaintiff Watts notified NBME of her disability and requested that NBME reasonably accommodate her disability by allowing her additional time to take the Step I examination on June 15, 1995.

12.     Defendant NBME refused to accommodate Watts' request for reasonable accommodation.  It notified Watts of its decisions on September 11, 1995.

13.     Defendant NBME informed both of the plaintiffs that it was refusing to grant their requests for reasonable accommodation because it disagreed with their doctors' diagnoses that plaintiffs have ADD.

14.     Grant attempted to take the USMLE Step I examinations offered in June and November, 1995 without having the necessary accommodation for his disability.

3

He was not able to complete all of questions in the examination due to his disability and did not pass the examination.

15.    Watts attempted to take the USMLE Step 1 examination offered in September, 1995 without having the necessary accommodation for her disability. She was not able to complete all of the questions in the examination due to her disability and did not pass the examination.

16.    Grant and Watts intend to take the USMLE Step I examination again when it is offered in the future.

17.    Grant recently made a new request that the NBME reasonably accommodate his disability by allowing him additional time for taking the examination. Watts intends to make another request for accommodation when she applies to take the examination again. The plaintiffs do not expect that defendant NBME will grant their requests for reasonable accommodation.

18.    Defendant acted with willful disregard for the rights of plaintiffs.

19.    As a result of defendant's refusal to accommodate plaintiffs' disabilities, both of the plaintiffs were subjected to discrimination by the defendant and were deprived of the full and equal use of the services and benefits of the NBME.

20.    As a further result of defendant's refusal to accommodate plaintiffs' disabilities by allowing them additional time to take the USMLE Step I examination, each of the plaintiffs suffered mental and emotional damages, including humiliation, embarrassment, emotional distress, and mental and emotional pain and suffering.

21.    As a further result of defendant's refusal to accommodate plaintiff Grant's disabilities by allowing him additional time to take the USMLE - Step 1

4

examination, plaintiff Grant has incurred, and expects to incur in the future, economic losses which he estimates to be in the amount of $55,000, in the form of:

      a.    lost future income due to the delay in graduating from medical school and the resulting delay in becoming employed as a physician; and

      b.    application fees for taking two USMLE - Step 1 examinations after defendant refused his request for reasonable accommodation.

22.    As a further result of defendant's refusal to accommodate plaintiff Watts' disabilities by allowing her additional time to take the USMLE - Step 1 examination, plaintiff Watts has incurred, and expects to incur in the future, economic losses which she estimates to be in the amount of $55,000, in the form of:

      a.    lost future income due to the delay in graduating from medical school and the resulting delay in becoming employed as a physician; and

      b.    application fees for taking one USMLE - Step 1 examinations after defendant refused her request for reasonable accommodation.

## COUNT I

### VIOLATION OF THE ADA (42 U.S.C. § 12189)

23.    Plaintiffs reallege Paragraphs 1 - 22.

24.    By refusing to accommodate plaintiffs' disabilities by allowing them additional time to take the USMLE Step I examination, defendant NBME discriminated against plaintiffs on the basis of their disabilities, and thereby violated 42 U.S.A. § 12189.

25.    As a result of the defendants' discriminatory actions, plaintiffs suffered the injuries set forth in Paragraphs 19 - 22 of this Complaint.

## COUNT II

### VIOLATION OF THE ADA (TITLE III)

26.     Plaintiffs reallege Paragraphs 1 - 25.

27.     By refusing to accommodate plaintiffs' disabilities by allowing them additional time to take the USMLE Step I examination, defendant NBME discriminated against plaintiffs on the basis of their disabilities, and thereby violated Title II of the ADA (42 U.S.A. § 12131 *et seq*.).

28.     As a result of the defendants' discriminatory actions, plaintiffs suffered the injuries set forth in Paragraphs 19 - 22 of this Complaint.

## COUNT III

### VIOLATION OF THE MINNESOTA HUMAN RIGHTS ACT

29.     Plaintiffs reallege Paragraphs 1 - 28.

30.     By refusing to accommodate plaintiffs' disabilities by allowing them additional time to take the USMLE Step I examination,  Defendant NBME discriminated against plaintiffs on the basis of their disabilities, and thereby violated Minnesota Human Rights Act (Minn. Stat. § 363.03, subd. 4).

31.     As a result of the defendants' discriminatory actions, plaintiffs suffered the injuries set forth in paragraphs 19 - 22 of this Complaint.

### RELIEF REQUESTED

WHEREFORE, plaintiffs demand the following relief:

1.     A declaratory judgment that:

    a.     Defendant violated the ADA when it refused to accommodate plaintiffs' disabilities.

b.    Defendant violated the Minnesota Human Rights Act when it refused to accommodate plaintiffs' disabilities.

2.    Directing to defendant to grant plaintiffs' requests for reasonable accommodation in connection with taking the USMLE Step I examination, including but not limited to, allowing them additional time for taking the examination.

3.    Judgment against defendants jointly and severally and in favor of each plaintiff in the amount of $80,000 for plaintiff Grant and $80,000 for plaintiff Watts, as and for compensatory damages pursuant to the Minnesota Human Rights Act.

4.    Judgment against defendants jointly and severally and in favor of Plaintiffs in the amount of $8,500 for each plaintiff, as and for punitive damages pursuant to the Minnesota Human Rights Act.

5.    An award of Treble Damages in favor of each plaintiff and against each of the defendants pursuant to the Minnesota Human Rights Act (Minn. Stat. § 363.071, subd. 2).

6.    Ordering each of the defendants to pay a civil penalty pursuant to the Minnesota Human Rights Act (Minn. Stat. § 363.071, subd. 2) and the ADA.

7.    Ordering such other affirmative relief as may be necessary to correct the impact of the defendants' discriminatory conduct.

8.    Ordering defendants to pay plaintiffs' reasonable attorneys fees and expenses.

9.    For such other and further relief as the Court may determine to be just and equitable.

Respectfully submitted,

LEGAL AID SOCIETY OF MINNEAPOLIS

Dated: 3 April 1996 _____    _Roderick J Macpherson_

BY:   Roderick J. Macpherson, III   (No. 66163)
      Pamela S. Hoopes  (No. 208504)
      Attorneys for Plaintiffs
      MINNESOTA DISABILITY LAW CENTER
      430 First Ave North, Suite 300
      Minneapolis, MN  55401-1780
      (612) 334-5785, ext. 237

8

## EXHIBIT B:

**1. Affidavit of Larry E. Reed**

**2. Letter from Larry E. Reed to Janet Carson of NBME**

3. **Correspondence from Mr. David Johnson of FSMB.**

UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| C. Earl Grant, | ) | File No. 99-66 DSD JMM |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **AFFIDAVIT OF LARRY E. REED** |
| Gerald S Golden, Inna Rozinski, and | ) | |
| National Board of Medical Examiners, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

STATE OF MINNESOTA )

COUNTY OF HENNEPIN )   SS.

Upon first being duly sworn and upon oath, Affiant states and alleges as follows:

1.  I am the attorney for the Plaintiff, C. Earl Grant, in the above-entitled matter.

2.  I assisted Dr. Earl Grant in review of prior Board examination results at the offices of Leonard, Street and Deinard.

3.  At the time of the examination, when the sealed exams were opened, we observed that one of the exams had numbers, indicating that someone had been scoring the exam.

4.  We also observed that there were certain portions of the exam that appeared to not have been scored, suggesting a partial scoring

5.  We questioned this and asked for a re-scoring.

.  Also, at the time of this meeting, there were other exams without marking.

7.     The exam with the markings suggested that there had been some partial re-scoring; however, the exams without the markings yielded no indication as to whether or not the exams had been re-scored.

Date: 3 · 7 · 9̃

Larry E. Reed

Subscribed and sworn to before me
this 17th day of March, 1999.


Notary Public

TRAYSHANA P. THOMAS
NOTARY PUBLIC-MINNESOTA
My Commission Expires Jan. 31, 2000

## **EXHIBIT C**

**1.** Certified mail receipt and letter.

3142 Pillsbury Avenue South
Minneapolis, MN 55408-3035
January 23, 1997

To:     Licensing Examination Services Department
        NBME
        3750 Market Street, Philadelphia, PA 19178-1330

From:   C. Earl Grant      ID #:     4 - 048 - 306 - 7

RE:     Step 2, March 04 - 05, 1997

I have received your memo today regarding the late fee of $25.00. However, the application and supporting documentation were submitted in accordance with the enclosed letter dated December 4, 1996, which stated that the application be postmarked by December 24, 1996. I was not aware of the attached late fee and every effort was made to return the application within the stated time deadline. The returned receipt shows that the application was received on December 24, 1996.

Enclosed is a check in the amount of $25.00 as requested.


Sincerely,


C. Earl Grant

## EXHIBIT: D

1. AFFIDAVIT OF RODERICK J. MACPHERSON 21 APRIL, 1998.
2. MACPHERSON'S 22 JUNE 1998, LETTER TO MAGISTRATE JONATHAN G. LEBEDOFF
3. LETTERS FROM PACPHERSON ON 18, 19, 22, AND 24 JUNE 1998.

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**
**THIRD DIVISION**

---

C. Earl Grant and Celi V. Watts,

        Plaintiffs,

    vs.

National Board of Medical Examiners,

        Defendant.

Civil No. CV 3-96-310
Judge:  Magnuson

**AFFIDAVIT OF**
**RODERICK J. MACPHERSON, III**
**(Filed Under Seal)**

---

STATE OF MINNESOTA  )
                 ) ss.
COUNTY OF HENNEPIN  )

    Roderick J. Macpherson III., upon oath states:

    1.    I am the attorney for Dr. C. Earl Grant, one of the plaintiffs in the above-entitled lawsuit.  I was present during, and participated in, the settlement negotiations that occurred during the Settlement Conference scheduled for this case on December 29, 1997.

    2.    During the Settlement Conference, the parties agreed to settle the above-referenced lawsuit and reached agreement on the general outline of the terms of the Agreement.  The text of a settlement agreement was not agreed upon during these negotiations.

    3.    In early January, 1998, the defendant's attorney sent me a draft of a Confidential Settlement Agreement and Release for Dr. Grant.  I sent Dr. Grant a copy of the defendant's proposed Agreement on January 8, 1998.

4.     I have had an opportunity to review defendant's proposed Settlement Agreement with Dr. Grant.   While much of the defendant's proposed Agreement correctly reflects the agreement reached by the parties on December 29, several significant aspects do not.

5.     On April 20, 1998, I sent Dr. Grant's proposal for the Settlement Agreement to Janie Mayeron, the attorney for the defendants.  I have not yet heard defendant's response to Dr. Grant's proposals.  A true and accurate copy of Dr. Grant's proposed Agreement is attached to this affidavit as Exhibit A.

6.     Several of the terms of defendant's proposed Settlement Agreement go beyond the terms of the Agreement which the parties reached during the Settlement Conference, including:

    a.    The defendant's proposed release is much broader than is appropriate in this case.  The defendant's proposal for a complete global release was never discussed during the settlement negotiation.

    b.    The defendant's proposal concerning payment to Dr. Grant and paragraph 3 concerning taxes was not agreed upon by the parties at the Settlement Conference.  The language of these two provisions in defendant's proposed Agreement was the result of a request that I made to Nancy Brasel, an attorney who was associated with Ms. Mayeron's law firm who was assisting her with the settlement documents.  I asked Ms. Brasel if the defendant would be willing to make payment in the form of two checks.  I specifically told Ms. Brasel that I had not discussed this proposal with Dr. Grant and that Dr. Grant was not making the proposal.  My request was simply made to find out defendant's position on this matter so that I could discuss it with Dr. Grant to see if it would be acceptable to him.  Ms. Brasel later informed me that the NBME would only agree to issuing two checks if Dr. Grant would agree to indemnify the NBME if any problems arose with the IRS concerning the arrangement.  Dr. Grant later advised me that he was not interested in the proposal.

7.     In addition, the defendant's proposed Agreement conflicts with Dr. Grant's understanding of the meaning of paragraph 6 ("Preservation of Test Results").  Dr. Grant understood that the parties' agreement that defendant would preserve certain test materials

2

included its obligation to copy his answer sheet and preserve the copy in a sealed envelope. Dr.

Grant's understanding was based on the fact that this is the practice defendant had followed

during all of the tests Dr. Grant has taken since this lawsuit was filed. The arrangement was

originally made in connection with the Step I examination Dr. Grant took in the spring of 1996.

Attached to this Affidavit, as Exhibit B, is a true and accurate copy of a letter to me from Ms.

Mayeron dated June 18, 1996 which reflects this arrangement.

Roderick J. Macpherson III

Subscribed and sworn to before me

this 21st day of April, 1998

Notary Public


D. LYNNE DANIELS
NOTARY PUBLIC - MINNESOTA
My Commission Expires
January 31, 2000

CLIENT ASSISTANCE PROJECT

LEGAL ADVOCACY FOR PERSONS
WITH DEVELOPMENTAL DISABILITIES

MENTAL HEALTH LAW PROJECT

PROTECTION AND ADVOCACY FOR
INDIVIDUAL RIGHTS

EXECUTIVE DIRECTOR
Jeremy Lane

MANAGING ATTORNEYS
Luther A. Granquist
Pamela S. Hoopes

CENTER MANAGER
Lisa Cohen

## MINNESOTA DISABILITY LAW CENTER

THE PROTECTION & ADVOCACY
SYSTEM FOR MINNESOTA

430 FIRST AVENUE NORTH, SUITE 300
MINNEAPOLIS, MN  55401-1780
(612) 332-1441
(TDD) 332-4668
Toll Free 1-800-292-4150
FAX (612) 334-5755

ATTORNEYS
Charlene F. D'Cruz
Steven P. Elliot
Amy Jane Goetz
Kathleen Hagen
Anne L. Henry
Kathy S. Kosnoff
Roderick J. Macpherson III
Anne M. Robertson
Barnett I. Rosenfield
Patricia M. Siebert

ADVOCATES
Rochelle Rochrich
Linda Bonney (Grand Rapids)
Kirsten Dubbels (Fergus Falls)
Sandra M. Moore (Duluth)
Sharon Sanders (Duluth)
Marilyn Spensley (Park Rapids)

June 18, 1998

Dr. C. Earl Grant
3142 Pillsbury Avenue South
Minneapolis, MN  55408

**VIA FACSIMILE AND
U.S. MAIL**

Dear Dr. Grant:

On Monday, June 15, 1998, we met and had a lengthy meeting to discuss your legal options concerning the motion the defendant has filed to enforce a settlement agreement and requesting attorney's fees. During our meeting, you authorized me to advise Ms. Mayeron that you would sign the version of the Settlement Agreement that was under discussion during our last meeting at the Magistrate's office, including the defendant's proposals made on May 28. The Agreement would be modified to include all revisions that have been made to the sections of Ms. Watts' Settlement Agreement that also pertain to you.

In addition, you agreed to accept the change in the confidentiality provision of the Agreement. You agreed to accept the language contained in the defendant's proposed Order in place of the confidentiality provision in the May 24 comparison version of the Agreement which we were discussing in the Magistrate's courtroom.

Based on the authorization you gave me, I spoke with Ms. Mayeron and told her that if NBME would drop its motion for attorney's fees, you would sign the Settlement Agreement with the modifications outlined above. Ms. Mayeron informed me this morning that NBME has accepted your proposal. She said that if the Settlement Agreement is signed by Friday, June 19, NBME will withdraw its motion and will also withdraw its request for attorney's fees.

I am, therefore, taking steps to prepare a final version of the Confidential Settlement Agreement which I will fax to you later today for your review. Please call me immediately so we can make arrangements for you to sign the Agreement.

I also spoke with Ms. Mayeron and received information in response to your request concerning the status of your rescoring request. She advised me that if the Settlement Agreement is signed by June 19, NBME will proceed to rescore your tests using the procedures that are contained in

Dr. C. Earl Grant
June 18, 1998
Page 2

the Settlement Agreement. If the Agreement is not signed by Friday, it will rescore the examination according to its normal procedures.

If you need any further information about NBME's position, please give me a call.

Sincerely,

MINNESOTA DISABILITY LAW CENTER

Rick Macpherson
Staff Attorney

RM:cs

cc:     Pamela Hoopes

CLIENT ASSISTANCE PROJECT

LEGAL ADVOCACY FOR PERSONS
WITH DEVELOPMENTAL DISABILITIES

MENTAL HEALTH LAW PROJECT

PROTECTION AND ADVOCACY FOR
INDIVIDUAL RIGHTS

EXECUTIVE DIRECTOR
Jeremy Lane

MANAGING ATTORNEYS
Luther A. Granquist
Pamela S. Hoopes

CENTER MANAGER
Lisa Cohen

## MINNESOTA DISABILITY LAW CENTER

THE PROTECTION & ADVOCACY
SYSTEM FOR MINNESOTA

430 FIRST AVENUE NORTH, SUITE 300
MINNEAPOLIS, MN 55401-1780
(612) 332-1441
(TDD) 332-4668
Toll Free 1-800-292-4150
FAX (612) 334-5755

ATTORNEYS
Charlene F. D'Cruz
Steven P. Elliot
Amy Jane Goetz
Kathleen Hagen
Anne L. Henry
Kathy S. Kosnoff
Roderick J. Macpherson III
Anne M. Robertson
Barnett I. Rosenfield
Patricia M. Siebert

ADVOCATES
Linda Bonney (Grand Rapids)
Kirsten Dubbels (Fergus Falls)
Sandra M. Moore (Duluth)
Sharon Sanders (Duluth)
Marilyn Spensley (Park Rapids)

June 19, 1998

Janie S. Mayeron
Leonard, Street and Deinard
150 South 5th Street
Suite 2300
Minneapolis, MN 55402

**VIA FACSIMILE AND
U.S. MAIL**

RE:   *Grant and Watts v. National Board of Medical Examiners*

Dear Ms. Mayeron:

I am writing to inform you that Dr. Grant has signed the Confidential Settlement Agreement And Release. I am enclosing a copy of the signature page (page 11) of the Agreement showing Dr. Grant's signature. I have in my file two originals of the agreement which have been signed by Dr. Grant. I will provide them to you when we meet to complete the settlement.

I am also enclosing copies of two letters Dr. Grant signed today, one addressed to Nathaniel Khaliq and the other to Commissioner Delores Fridge. I mailed them for my client this evening.

Please contact me on Monday so that we can discuss how to complete the settlement process.

Sincerely,

MINNESOTA DISABILITY LAW CENTER

Rick Macpherson

Enclosure

cc:   Dr. Earl Grant
      Pamela Hoopes

CLIENT ASSISTANCE PROJECT

LEGAL ADVOCACY FOR PERSONS
WITH DEVELOPMENTAL DISABILITIES

MENTAL HEALTH LAW PROJECT

PROTECTION AND ADVOCACY FOR
INDIVIDUAL RIGHTS

EXECUTIVE DIRECTOR
Jeremy Lane

MANAGING ATTORNEYS
Luther A. Granquist
Pamela S. Hoopes

CENTER MANAGER
Lisa Cohen

# MINNESOTA DISABILITY LAW CENTER

THE PROTECTION & ADVOCACY
SYSTEM FOR MINNESOTA

430 FIRST AVENUE NORTH, SUITE 300
MINNEAPOLIS, MN 55401-1780
(612) 332-1441
(TDD) 332-4668
Toll Free 1-800-292-4150
FAX (612) 334-5755

ATTORNEYS
Charlene F. D'Cruz
Steven P. Elliot
Amy Jane Goetz
Kathleen Hagen
Anne L. Henry
Kathy S. Kosnoff
Roderick J. Macpherson III
Anne M. Robertson
Barnett I. Rosenfield
Patricia M. Siebert

ADVOCATES
Linda Bonney (Grand Rapids)
Kursten Dubbels (Fergus Falls)
Sandra M. Moore (Duluth)
Sharon Sanders (Duluth)
Marilyn Spensley (Park Rapids)

June 22, 1998

Magistrate Judge Jonathan G. Lebedoff
United States Magistrate Judge
U.S. Courthouse, Suite 9E
300 South 4th Street
Minneapolis, MN  55415

**VIA MESSENGER**

RE:   *C. Earl Grant and Celi V. Watts v. National Board of Medical Examiners*
      **Civil No. CV 3-96-310**

Dear Magistrate Judge Lebedoff:

I am writing to advise you about the status of the Settlement Agreement between Dr. Grant and the National Board of Medical Examiners.

On June 16, I notified Ms. Mayeron that Dr. Grant proposed to settle the lawsuit based upon the last Settlement Agreement that the parties had been negotiating in your chambers in May. I told Ms. Mayeron that Dr. Grant would sign the Settlement Agreement if the defendant would cancel its motion, including the motion for attorneys' fees. On June 17, Ms. Mayeron informed me that NBME had accepted Dr. Grant's settlement proposal and that it would withdraw the motion if he signed the settlement documents no later than Friday, June 19. Ms. Mayeron asked me to draft the Agreement.

On June 18, I delivered a draft of the proposed final version of the Confidential Settlement Agreement and Release to Ms. Mayeron by facsimile. Ms. Mayeron and I reviewed the document on June 18 and she informed me that NBME had approved the document subject to some minor language changes. Ms. Mayeron told me all of the changes that NBME wished to have made in the document. I revised the Confidential Settlement Agreement on June 18 and incorporated all of the language changes which NBME had required. I then submitted the Confidential Settlement Agreement and Release which NBME had approved to Dr. Grant for his signature.

Dr. Grant signed the Settlement Agreement on June 19. I faxed a copy of the signature page from the Settlement Agreement to Ms. Mayeron on Friday. I am enclosing a copy of the

Magistrate Judge Jonathan G. Lebedoff
June 22, 1998
Page 2


signature page from the Settlement Agreement to document the fact that Dr. Grant has signed the Agreement.

On June 19, after NBME had accepted Dr. Grant's settlement proposal and had approved the language of the Confidential Settlement Agreement and Release, Ms. Mayeron advised me that NBME was now demanding that a new term must be included in the Settlement Agreement. This was a term that had never before been discussed by the parties and was not part of the Settlement Agreement that was reached on December 29, 1997. It is Dr. Grant's position that he proposed, and NBME accepted, a settlement agreement and NBME approved the document which he has now signed.

Based on the fact that Dr. Grant has signed the Settlement Agreement, I believe this matter has been resolved.

Sincerely,

MINNESOTA DISABILITY LAW CENTER

Roderick J. Macpherson III
Attorney at Law

RJM:cas

Enclosure

cc:    Janie Mayeron
       C. Earl Grant
       Pamela Hoopes

CLIENT ASSISTANCE PROJECT

LEGAL ADVOCACY FOR PERSONS
WITH DEVELOPMENTAL DISABILITIES

MENTAL HEALTH LAW PROJECT

PROTECTION AND ADVOCACY FOR
INDIVIDUAL RIGHTS

EXECUTIVE DIRECTOR
Jeremy Lane

MANAGING ATTORNEYS
Luther A. Granquist
Pamela S. Hoopes

CENTER MANAGER
Lisa Cohen

# MINNESOTA DISABILITY LAW CENTER

THE PROTECTION & ADVOCACY
SYSTEM FOR MINNESOTA

430 FIRST AVENUE NORTH, SUITE 300
MINNEAPOLIS, MN 55401-1780
(612) 332-1441
(TDD) 332-4668
Toll Free 1-800-292-4150
FAX (612) 334-5755

ATTORNEYS
Charlene F. D'Cruz
Steven P. Elliot
Amy Jane Goetz
Kathleen Hagen
Anne L. Henry
Kathy S. Kosnoff
Roderick J. Macpherson III
Anne M. Robertson
Barnett I. Rosenfield
Patricia M. Siebert

ADVOCATES
Rochelle Roehrich
Linda Bonney (Grand Rapids)
Kursten Dubbels (Fergus Falls)
Sandra M. Moore (Duluth)
Sharon Sanders (Duluth)
Marilyn Spensley (Park Rapids)

June 24, 1998

Dr. C. Earl Grant                                    **VIA FACSIMILE AND**
3142 Pillsbury Avenue South                          **U.S. MAIL**
Minneapolis, MN 55408

Dear Dr. Grant:

I spoke today with Ms. Mayeron concerning the rescoring of your March Step II examination. Ms. Mayeron informed me that NBME manually rescored your examination and mailed the results to you on Monday. She also sent me a copy of the results by facsimile. I am sending you a copy of those results with this letter.

Ms. Mayeron and I also discussed arrangements for comparing the original test answers with the sealed copy of the test answers. She will have NBME send her the original of your answer sheet. When she receives it, she will let me know and we will meet to do the comparison. I will let you know the results of the comparison immediately after it is completed.

If you have any questions concerning this letter, please call me.

Sincerely,

MINNESOTA DISABILITY LAW CENTER

Rick Macpherson
Staff Attorney

RM:cs

Enclosure

cc:    Pamela Hoopes

## EXHIBIT E:

**1      LETTER FROM NBME.**

JUN 24 '98 .14:29   FROM COPY ROOM 16TH FL E      TO 93345755          PAGE.002
'98  10:54  FROM:N B M E                    ID:215  590  9755          PAGE    2/1



# National Board of Medical Examiners®

3750 MARKET STREET, PHILADELPHIA, PA 19104

TELEPHONE (215) 590-9500



USMLE ID# 4-048-306-7

June 22, 1998

C. Earl Grant, PhD
3142 Pillsbury Avenue South
Minneapolis, MN 55408-3035

Dear Dr. Grant:

In lieu of your request dated May 4, 1998 (received May 11, 1998), we have been informed that you seek to have your USMLE Step 2 examination manually scored pursuant to NBME's standard procedures. As a consequence, in accordance with this request, we have hand scored your answer materials from the following examination:

| <u>Examination</u> | <u>Test Date</u> |
|---|---|
| USMLE Step 2 | March 1998 |

The result of the hand scoring process has confirmed that your scores are accurate as originally reported.

Because of the many verification procedures built into the machine scoring process, the possibility of score changes has become extremely remote.

I regret I cannot give you a more favorable report.

Sincerely,

Inna Rozinsky
Supervisor for Registration
and Examinee Records

IR:ab

## EXHIBIT F:

1 **SETTLEMENT AGREEMENT 1998.**

2 **LETTER TO L. THOMPSON-BOWLES.**

# GRANT

## CONFIDENTIAL SETTLEMENT AGREEMENT AND RELEASE

This Confidential Settlement Agreement and Release ("Agreement") is made and entered into between C. Earl Grant and the National Board of Medical Examiners ("NBME").

WHEREAS, NBME administers and scores Step I and Step II of the three-step United States Medical Licensing Examinations ("USMLE") to eligible students and graduates of United States and Canadian accredited medical schools; and

WHEREAS, NBME has informed Grant that it does not determine accommodation for Step III of the USMLE; and

WHEREAS, Grant has received a diagnosis of Attention Deficit-Hyperactivity Disorder: Predominantly Inattentive Type ("ADD") and has asserted that he is disabled as defined by the Minnesota Human Rights Act ("MHRA") and the Americans with Disabilities Act ("ADA"); and

WHEREAS, Grant requested accommodation from NBME in connection with Step I and Step II of the USMLE, and

WHEREAS, NBME, after reviewing Grant's submitted documentation of ADD and concluding that it was insufficient to support a diagnosis of ADD, denied Grant the accommodation he requested; and

WHEREAS, Grant is one of the plaintiffs in a lawsuit against NBME entitled *C. Earl Grant and Celi Watts v. National Board of Medical Examiners*, United States District Court, District of Minnesota, Third Division, Civil File No. 3-96-310 ("lawsuit"), in which he has asserted claims against NBME pursuant to the MHRA and ADA; and

WHEREAS, NBME denies all of Grant's claims and asserts that at all times its actions with respect to Grant were proper and lawful; and

WHEREAS, Grant and NBME have previously entered into an agreement concerning accommodations concerning Grant's request for accommodations made in connection with the Spring 1996 Step I examination (hereafter referred to as "the Spring 1996 Agreement"); and

WHEREAS, NBME later granted the request for accommodation which Grant submitted in connection with his application to take the Fall 1997 Step II examination based upon all of the documentation provided by Grant to support his request for accommodation, including the additional documentation which he submitted in connection with that request for accommodation; and

WHEREAS, in the interest of settlement and compromise of the charges and claims made by Grant, and in order to avoid the costs and expenses of trial and in order to resolve Grant's concerns of potential damage to his character and reputation, without any admission of liability, it is the mutual desire of NBME and Grant to settle amicably any and all claims that have been or could have been raised by Grant in regard to potential accommodation on Step I and Step II Examinations of the USMLE; and

WHEREAS, in the interest of avoiding disagreement and unnecessary litigation in the future, it is the mutual desire of the parties to agree upon accommodations to be provided in connection with future Step II examinations applied for by Grant, and which are determined by NBME.

NOW, THEREFORE, in consideration of the mutual promises, terms and conditions made below, the parties agree as follows:

1.      Accommodation.  NBME will not challenge the diagnosis of ADD which Grant has already received, with respect to all future examinations it administers and for which it makes

2

decisions whether an applicant will be granted examination accommodations. In addition, NBME agrees to continue the accommodation it provided Grant in connection with the Fall 1997 Step II examination in connection with any future Step II examination administered by the NBME and for which he is eligible to take and which he takes, in the same manner it has accommodated Grant in the last Step I and Step II taken by him, *i.e.* with time and one-half to take the examination and a low-distraction room in which to take it, <u>provided that</u> Grant follows the NBME's usual procedure and timely applies for and formally requests accommodation for each test he takes in the future. However, Grant will not be required to provide any additional documentation of his disability, nor shall Grant be required to resubmit information previously accepted by NBME.

2.   <u>Settlement Payment</u>.  Upon execution of this Agreement, NBME agrees to pay Grant and Grant agrees to accept the sum of Twenty-one Thousand Dollars ($21,000.00) as settlement of all Grant's claims, including his claims for compensatory damages, to be paid as follows:  one check shall be issued to "C. Earl Grant and the Legal Aid Society of Minneapolis".

3.   <u>Taxes</u>.   NBME will issue a Form 1099 to Grant.  It is specifically understood and agreed that any tax liability for payment by Grant of taxes on the Settlement Payment is solely Grant's responsibility.  NBME is not waiving any rights it may have to seek relief from Grant if Grant fails to pay any tax due on the Settlement Payment and if any taxing authority seeks payment of Grant's taxes from NBME.  Similarly, Grant is not waiving any rights he may have against NBME if any taxing authority seeks payment from Grant for NBME's failure to comply with the requirements of any applicable tax law or regulation.

3

4.    <u>Nondisclosure</u>.  NBME hereby agrees not to affirmatively disclose Grant's ADD diagnosis including but not limited to:  any of the documentation Grant submitted in support of his requests for accommodation and the reports concerning Grant's condition prepared by agents, representatives and/or employees of NBME to any residency program, potential employer or any other person, except by consent of Grant or by order of a court.  However, when requested by Grant or authorized by Grant to provide score reports or transcripts, NBME will disclose on such documents the fact of Grant's accommodation and will disclose upon inquiry the nature of the accommodation.

5.    <u>Preservation of Examination Results</u>.

(a)  For any Step II examination Grant takes in a pencil and paper format which is administered by NBME in the Twin Cities (Minneapolis/St. Paul area) and for which Grant has requested that a sealed copy of the answers be made pursuant to this subparagraph, NBME agrees to have copies made of Grant's answer sheets immediately after he submits them, and seal the copy in an envelope containing on the outside of the envelope Grant's name, the date when the envelope is sealed and the name of the person who sealed the copy of Grant's answer sheets in the envelope.  The sealed answer sheets shall then be hand-delivered to the law firm of Leonard, Street and Deinard (or to any other law firm which NBME may designate), or sent via overnight mail to the law firm of Leonard, Street and Deinard (or to any other law firm which NBME may designate).

For any Step II examination administered by NBME in the Twin Cities (Minneapolis/St. Paul area) which Grant takes by computer and not in a pencil and paper format, NBME will make all reasonable and necessary efforts to copy and seal the computerized

4

examination answers and forward them to counsel for NBME. Grant understands that the copying of his computerized answers may only be possible at a central location (which may be at NBME) and not at the site where Grant takes his examination. In the event that copying his computerized answers can only take place at a central location different from his examination site, Grant agrees that the copying may take place at the central location, so long as the copying takes place as soon as is reasonably practicable following the transmission of the examination answers.

In the event that Grant seeks to have his answer sheets copied and sealed or his computerized answers copied and sealed pursuant to this subparagraph, he shall make this request in writing to Janet Carson, general counsel for NBME, Janie S. Mayeron at Leonard, Street and Deinard, or any other third party designated by NBME, no later than thirty days prior to the date of the exam for which he wants his examination answers copied.

(b)  For any Step II examination Grant takes in a pencil and paper format which is administered by NBME, NBME agrees to preserve the following:  (1) Grant's answer sheets; (2) the sealed copy of Grant's answer sheets (if applicable pursuant to subparagraph 5 (a) above); (3) Grant's examination booklet; and (4) the answer key for the examination Grant took. These materials are hereafter referred to as the "Test Materials." In addition, for any Step II examination administered by NBME which Grant takes by computer and not in a pencil and paper format, NBME agrees to preserve the computerized equivalent of the Test Materials. The Test Materials or their computerized equivalent shall be preserved for ten years or upon Grant's receipt of a license to practice medicine in any state or territory in the United States, whichever occurs first.

(c) By agreeing to copy answer sheets or the computerized equivalent (if applicable pursuant to subparagraphs 5(a) above) and preserve the Test Materials or their computerized equivalent, except as otherwise provided by this Agreement, the parties agree that this copying and preservation of materials or computerized equivalent shall not, however, give Grant any right or privilege to use these materials or computerized equivalent in a way that other examinees are not entitled to use their materials or computerized equivalent, and in no event shall his examination be scored or evaluated with regard to any marks made in his examination booklet.

6.      Non-Retaliation.

(a) NBME agrees not to retaliate against Grant in any manner in connection with the testing or scoring of any future examination taken by Grant and administered or scored by NBME, or in connection with the exercise of Grant's rights under this Agreement.

(b) As part of this agreement not to retaliate, if Grant requests a manual recheck of his examination score in connection with any examination administered or scored by NBME, which examination program provides that the examinee may request a manual recheck by NBME, NBME shall review his score fairly and objectively and using exactly the same procedure as it would use to review any other examinee's score.

(c) In the event that a sealed copy of Grant's Step II examination answers (whether in paper form or on the computer) have been made pursuant to Paragraph 5 of this Agreement, as part of the process of rechecking Grant's Step II examination score pursuant to subparagraph (b) of this section, if requested by Grant, NBME will allow Grant's attorney and its attorney to jointly compare the sealed copy of Grant's examination or computerized answers with the original answer sheets or computerized answers Grant submitted to determine if the sealed copy of the

6

answer sheets or computerized answers is different from the original answer sheets or computerized answers. If the sealed copy of the answer sheets or computerized answers is different from the original answer sheets or computerized answers, the copied answer sheets or computerized answers will be used for the manual recheck (instead of the original answer sheets or computerized answers). If the sealed copy of the answer sheets or computerized answers and the original answer sheets or computerized answers are the same, the original answer sheets or computerized answers will be used for the manual recheck.

(d)  For the Step II examination, in the event that the manual recheck is performed pursuant to subparagraph 6(b), and the manual recheck identifies an error in the score originally reported, a new score report will be issued to Grant. For the Step II examination, in the event that the manual recheck performed pursuant to subparagraph 6(b), does not reveal an error in the score originally reported, NBME will send Grant a letter informing him that the original score was accurate as reported.

(e)  In the event that Grant pursues a suit or charge of retaliation or for breach of this Agreement, the prevailing party may seek reimbursement of all attorneys' fees and costs incurred in pursuit or defense of such action from the unsuccessful party by bringing a motion for attorneys' fees to the presiding judge of the litigation. The presiding judge may grant or deny such a motion in whole or in part, in his or her discretion.

7.   Release.  In return for the payment and commitments made by NBME which are described in this Agreement, Grant hereby releases and discharges NBME (and the related persons who are identified in the subsection entitled, "Who Is Released") from liability for any

7

claim which he had or may have had against NBME for its refusal to accommodate him in connection with any test administered by NBME.

WHO IS RELEASED: This release covers NBME and all of its parents, subsidiaries, and affiliated corporations, and each of their past, present, or future shareholders, members, directors, officers, employees, representatives, agents, predecessors, successors, assigns, attorneys and insurers.

WHO IS RELEASING: Grant and his heirs, administrators, executors, assigns, attorneys and all others claiming rights through him or acting on his behalf.

WHAT CLAIMS ARE INCLUDED BY RELEASE: Grant is releasing claims which he may have or may claim to have had against NBME for its refusal to accommodate him in connection with any test administered by NBME. They include, but are not limited to, (a) all claims of discrimination (including disability, sex, and age discrimination pursuant to the MHRA or ADA), breach of contract, promissory estoppel, defamation, negligent or intentional infliction of emotional distress, harassment, impairment of economic opportunity, fraud, misrepresentation, or any other theory of liability; (b) all claims for mental anguish, pain and suffering, damage to reputation, punitive damages, attorneys' fees, or lost employment compensation; and (c) all charges, complaints, claims, liabilities, obligations, promises, agreements, damages (money or otherwise), actions, causes of actions, suits, debts, costs, expenses (including but not limited to attorneys' fees) and rights of any nature whatsoever, state or federal, in law or in equity, known or unknown, asserted or unasserted, suspected or unsuspected, including those claims asserted in this lawsuit. Grant agrees that he will not sue in court or file an administrative claim, complaint

8

or charge of any nature against NBME for a claim filed against NBME and released in this Agreement, except for the purpose of seeking enforcement of this Agreement.

8. <u>Confidentiality</u>. The terms of this Settlement Agreement shall forever be treated as confidential by Grant and NBME and the counsel of each party, who shall not disclose its terms to anyone, except that (1) Grant may disclose the fact and terms of this settlement to his legal counsel, to Dr. Ann Baldwin (who Grant has represented to NBME he has consulted for advice during settlement negotiations), his financial adviser(s) and accountant(s) (collectively referred to as "Confidential Persons"); (2) Grant may disclose the fact of and the non-monetary terms of this settlement to representatives of medical licensing and regulatory authorities (also collectively referred to as "Confidential Persons"); and (3) NBME may disclose the fact and the terms of this Agreement to its members, officers and directors, outside auditors, and to employees or agents of NBME or related entities who have a legitimate need to know the terms of the Agreement in the course of performing their duties (also referred to as "Confidential Persons"). In addition, in the event that NBME is contacted by any representative of a medical licensing or regulatory authority to confirm or deny the accuracy of a representation made by Grant to any persons listed in subparagraphs (1) or (2) above concerning any of the terms of the Settlement Agreement, NBME may confirm or deny the accuracy of Grant's representations and may accurately report the terms of the Settlement Agreement to that person. Both parties may also disclose the terms of the Agreement to representatives of the Internal Revenue Service (IRS), the Minnesota Department of Revenue, or to any other governmental entity responsible for collecting taxes; or if they are required by a court of law to do so. Confidential Persons shall be bound by the duties of confidentiality applicable to the party disclosing the information to the Confidential

9

Person. In the event that NBME or Grant is asked by any person other than Confidential Persons the outcome of this lawsuit or Grant's claims against NBME, Grant, Grant's attorneys, and NBME attorneys and representative shall be permitted only to state that "the matter has been resolved."

9. <u>Dismissal of Lawsuit</u>. NBME and Grant agree that their respective counsel shall execute and file with the Court for signature by the Court a Stipulation of Dismissal with Prejudice Without Costs or Disbursements and Order, of this lawsuit.

10. <u>Non-Admission</u>. NBME specifically denies any liability to Grant for any and all claims asserted by Grant against NBME. Nothing contained in this Agreement shall be construed as an admission by NBME of any violation of state, federal, or local statute, regulation, ordinance, or principle of common law, or that it has engaged in any wrongdoing. Similarly, nothing in this agreement shall be construed as an admission by Grant that his claims were not legitimate or that he is relinquishing any right to enforce his rights under this settlement, or to enforce any other rights he has not released in this agreement.

11. <u>Assignment</u>. The parties agree that the rights and obligations under this Agreement shall insure to and be binding upon NBME and its successors and assigns, but the rights and obligations of Grant hereunder are personal and may not be assigned to any other person.

12. <u>Integration</u>. This Agreement contains the full agreement of the parties and may not be modified, altered or changed in any respect except upon the express written consent of both parties.

13. <u>Voluntary and Knowing Action</u>. Grant acknowledges that he has been represented by his own attorney, that he has read and understands the terms of this Agreement, and that he

is voluntarily entering into the Agreement based upon the advice and recommendation of his attorney.

    14.    <u>Governing Law</u>. This Agreement will be construed and interpreted in accordance with the laws of the State of Minnesota.

    15.    <u>Counterparts</u>. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original.


Dated:  June _19_, 1998

                                     _____
                                       C. Earl Grant

Dated:  June ____, 1998

                                       **National Board of Medical Examiners**

                                       By_____

                                           Its_____

is voluntarily entering into the Agreement based upon the advice and recommendation of his attorney.

14.    <u>Governing Law</u>. This Agreement will be construed and interpreted in accordance with the laws of the State of Minnesota.

15.    <u>Counterparts</u>. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original.

Dated:  June _____, 1998

_____
C. Earl Grant

Dated: ~~June~~ July 1, _____, 1998

**National Board of Medical Examiners**

By  *L. Thompson Bowles MD*

Its  *PRESIDENT*

3142 Pillsbury Avenue South
Minneapolis, MN 55408-3035
July 8, 1998.

Dr. L. Thompson Bowles, President
National Board of Medical Examiners
3750 Market Street
Philadelphia, PA 19104

Dear Dr. Bowles:

RE:        C. EARL GRANT,
           USMLE ID #: 4-048-306-7
           MARCH 1998, STEP 2
           452 UMN, MINNEAPOLIS

On Thursday, June 18, 1998, Mr. Roderick J. Macpherson informed me that Ms. Mayeron, advised him that, "if the Settlement Agreement is signed by June 19, NBME will proceed to rescore your tests using the procedures that are contained in the Settlement Agreement." On Monday, June 22, 1998, I was informed by Mr. Macpherson that, on June 19, after I had signed the agreement with the language proposed by NBME, Ms. Mayeron advised him that NBME then demanded that a new term must be included in the agreement, despite the fact that the new term had never been discussed, and was not part of the agreement.

My request for rescoring dated May 4, 1998, was ignored for over eight weeks despite NBME's policy of rescoring and providing written report within two to three weeks from the time a request is made. Several weeks prior to my signing the agreement, Ms. Mayeron had informed Mr. Macpherson that the NBME would not rescore the tests unless I signed the agreement. Despite the delayed response to my request, and the extreme stress and undue delay of my career, created by the gross disregard, a response from Ms. Inna Rozinsky, dated June 22, 1998, indicated that my USMLE Step 2 examination was manually scored pursuant to NBME's standard procedures, in lieu of my request dated May 4, 1998. I find this to be grossly persistent discrimination and retaliation by the NBME, which is also consistent with the many demands made beyond the terms of the settlement agreement of December 29, 1997.

I was requested to enter into the settlement agreement with the expectation that the NBME would proceed at a higher moral and ethical standards than is currently being displayed. I have faith in God and believe that justice will prevail. Knowing that I have not failed the examinations I will continue to work diligently as I have always done, and maintain my faith in God.

As the president of NBME, I believe that you have a moral and ethical obligation to address this matter appropriately, and I trust that you will use your intellect, authority and power to ensure that this degree of discriminatory activity does not continue to exist within the NBME. I intend to continue the pursuit of my career in more respectful environment. As a physician, and distinguished member of the medical profession I hereby request your personal assistance in reviewing my March 1998, USMLE Step 2 examination in a most objective and fair manner in order to bring this matter to complete closure and allow me the opportunity to continue peacefully with the pursuit of my career. You sincerity will be most highly appreciated. Thank you kindly for your cooperation regarding this matter.

Sincerely,

C. Earl Grant,