UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

C. EARL GRANT,

                              Plaintiff,

          vs.

                                                    Civil Action No.
NATIONAL BOARD OF MEDICAL EXAMINERS and              7:07-cv-00996
FEDERATION OF STATES MEDICAL BOARD,                  (TJM-GJD)

                              Defendants.

_____


# <u>APPENDIX OF CASES</u>

| CASES | TABS |
|-------|------|
| *Legant v. Chase Bank USA, N.A.,* No. 06-CV-1271, 2008 WL 510314 (N.D.N.Y. Dec. 1, 2008) | 1 |
| *Saunders v. Ricks,* No. 9:03-CV-598, 2006 WL 3051792 (N.D.N.Y. Oct. 18, 2006) | 2 |
| *Tatta v. Wright,* No. 05-CV-007, 2007 WL 2993823 (N.D.N.Y. Oct. 10, 2007) | 3 |

**TAB 1**

**H**

Only the Westlaw citation is currently available.

United States District Court,
N.D. New York.
Lawrence D. LEGANT, Plaintiff,
v.
CHASE BANK USA, N.A., Defendant.
No. 06-CV-1271.

Dec. 1, 2008.

West KeySummary
Alternative Dispute Resolution 25T ☞135

25T Alternative Dispute Resolution
    25TII Arbitration
        25TII(B) Agreements to Arbitrate
            25Tk135 k. Modification or Termination.
Most Cited Cases
No genuine issue of material fact existed as to
whether a creditor had the right to arbitrate claims
less than $25,000 to preclude summary judgment
on the debtor's breach of contract claim against the
creditor. The creditor gave the debtor notice of the
proposed amendment to the small claims exception
to remove the $25,000 minimum on arbitration
claims and gave the debtor an opportunity to opt
out. However, the debtor did not opt out and was
therefore, subject to the amended arbitration provi-
sion. Fed.Rules Civ.Proc.Rule 56, 28 U.S.C.A.

Lawrence D. Legant, Binghamton, NY, pro se.

Debra L. Wabnik, Simmons, Jannace Law Firm,
Syosset, NY, for Defendant.

***DECISION and ORDER***

THOMAS J. McAVOY, Senior District Judge.

*1 Plaintiff Lawrence D. Legant commenced the in-
stant action against Defendant Chase Bank USA,
N.A. alleging violations of the Truth in Lending
Act ("TILA"), 15 U.S.C. §§ 1601 et seq., breach of
contract, and seeking to vacate an arbitration award
favoring Defendant. Presently before the Court is
Defendant's motion for summary judgment pursu-
ant to Fed.R.Civ.P. Rule 56 seeking dismissal of
Plaintiff's complaint, to amend its answer to assert a
counterclaim, for judgment against Plaintiff on its
counterclaim, and for sanctions against Plaintiff.

**I. FACTS**[FN1]

> FN1. The following facts are taken from
> Defendant's properly supported statement
> of material facts submitted pursuant to
> N.D.N.Y.L.R. 7.1(a)(3). These facts are
> deemed to be true because Plaintiff failed
> to file a responsive statement of material
> facts.

Plaintiff entered into a consumer credit contract
with Defendant whereby Defendant provided
Plaintiff with a revolving credit account. The con-
tract included a provision that all claims or disputes
between Plaintiff and Defendant could be resolved
by binding arbitration. The original contract in-
cluded an exception whereby claims less than
$25,000 could be submitted to small claims court.
In an amendment to the contract, the $25,000 ex-
ception was removed and Plaintiff was given the
option to pursue in small claims court any claim
falling within the small claims court's jurisdiction,
based on the local court's threshold rather than the
$25,000 limit. Defendant gave Plaintiff the right to
reject the amendment. Plaintiff did not exercise that
right.

Plaintiff stopped paying the account. He consulted
NAES, a company that claimed it could rid Plaintiff
of his $35,000 in credit card debt using only some
letters and forms. NAES charged Plaintiff $2,000
for its service, which included various form letters
that NAES directed Plaintiff to send to Defendant.
These form letters stated that the account had a

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

"billing error" because Defendant failed to credit him for "prepayments". Though Plaintiff asserted in his form letters that his billing statement was inaccurate, he was not sure of the verity of this allegation. Plaintiff followed NAES' advice hoping to exploit a legal technicality that might help him avoid his debt. Before consulting NAES, Plaintiff did not believe there were any errors in his account. Plaintiff now admits that he made no prepayments and that his account contained no billing error. Defendant responded to Plaintiff's billing inquiry.

Defendant ultimately filed a claim with the National Arbitration Forum ("NAF") against Plaintiff for the unpaid credit card bill. Plaintiff objected with another NAES form. The arbitrator issued an award to Defendant for $8,647.03. This award has not been vacated or modified. Plaintiff has not paid the award.

Plaintiff commenced the instant action asserting that Defendant failed to respond to Plaintiff's billing inquiry, wrongfully reported Plaintiff as delinquent, and that there was no valid arbitration provision in his credit card contract. Presently before the Court is Defendant's motion for summary judgment seeking dismissal of the Complaint and also seeking leave to amend its answer to assert a counterclaim, for judgment on the counterclaim, and for sanctions.

## II. STANDARD OF REVIEW

*2 A motion for summary judgment may be granted if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion. Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Facts are material if they may affect the outcome of the case as determined by substantive law. *Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 106 S.Ct.

2505, 91 L.Ed.2d 202 (1986). All ambiguities are resolved, and all reasonable inferences are drawn, in favor of the non-moving party. *Skubel v. Fuoroli,* 113 F.3d 330, 334 (2d Cir.1997).

The party opposing the motion must set forth facts showing that there is a genuine issue for trial. The non-moving party must do more than merely show that there is some doubt or speculation as to the true nature of the facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).[FN2] It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment. *Gallo v. Prudential Residential Servs.* 22 F.3d 1219, 1223-24 (2d Cir.1994); *Graham v. Lewinski,* 848 F.2d 342, 344 (2d Cir.1988).

> FN2. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. *Anderson,* 477 U.S. at 247-48.

When, as here, a party seeks summary judgment against a pro se litigant, a court must afford the non-movant special solicitude. *Triestman v. Fed. Bureau of Prisons.* 470 F.3d 471, 477 (2d Cir.2006).

## III. DISCUSSION

### a. Defendant's Motion for Summary Judgment

### 1. Truth in Lending Act Claims

Plaintiff argues that Defendant violated the TILA because Defendant did not respond to Plaintiff's inquiries made on or about October 29, 2004 regarding alleged billing discrepancies. Plaintiff claims that Defendant knowingly failed to respond to the request within 90 days in violation of 15 U.S.C. §§

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

1666 and 12 C.F.R. § 226.13 and is, therefore, prohibited from collecting the balance owed on the credit card. Plaintiff also argues that Defendant wrongfully notified credit reporting agencies that Plaintiff was delinquent and that filing a claim with the National Arbitration Forum ("NAF") violated the TILA, entitling Plaintiff to damages. Defendant moves for Summary Judgment on the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601 et seq., claims on the grounds that there was no billing error on Plaintiff's account and that it otherwise fulfilled its obligations under the statute.

The relevant portion of the TILA at issue states:

If a creditor, within sixty days after having transmitted to obligor a statement of theobligor's account in connection with an extension of consumer credit, receives ... awritten notice ... from the obligor in which the obligor-

(1) sets forth or otherwise enables the creditor to identify the name and accountnumber (if any) of the obligor,

(2) indicates the obligor's belief that the statement contains a billing error and theamount of such billing error, and

*3 (3) sets forth the reasons for the obligor's belief (to the extent applicable) that thestatement contains a billing error,

the creditor shall, unless the obligor has, after giving such written notice and beforethe expiration of the time limits herein specified, agreed that the statement was correct-

A) not later than thirty days after the receipt of the notice, send a writtenacknowledgment thereof to the obligor, unless the action required insubparagraph (B) is taken within such thirty-day period, and

B) not later than two complete billing cycles of the creditor (in no event laterthan ninety days) after the receipt of the notice and prior to tak-

ing any actionto collect the amount, or any part thereof, indicated by the obligor underparagraph (2) either-

i) make appropriate corrections in the account of the obligor, including the crediting of any finance charges on amountserroneously billed, and transmit to the obligor a notification of suchcorrections and the creditor's explanation of any change in theamount indicated by the obligor under paragraph (2) and, if anysuch change is made and the obligor so requests, copies ofdocumentary evidence of the obligor's indebtedness; or

ii) send a written explanation or clarification to the obligor, afterhaving conducted an investigation, setting forth to the extentapplicable the reasons why the creditor believes the account of the obligor was correctly shown in the statement and, upon request ofthe obligor, provide copies of documentary evidence of the obligor'sindebtedness. In the case of a billing error where the obligor allegesthat the creditor's billing statement reflects goods not delivered tothe obligor or his designee in accordance with the agreement madeat the time of the transaction, a creditor may not construe suchamount to be correctly shown unless he determines that such goodswere actually delivered, mailed, or otherwise sent to the obligor andprovides the obligor with a statement of such determination.

After complying with the provisions of this subsection with respect to an allegedbilling error, a creditor has no further responsibility under this section if the obligorcontinues to make substantially the same allegation with respect to such error.

15 U.S.C.A. § 1666.

Plaintiff sent Defendant a letter claiming that there was a billing error on his account. At deposition Plaintiff admitted that Defendant timely replied to

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

CASE 7:07-cv-00996-TJM-GJD    Document 53-3    Filed 02/27/09    Page 6 of 38

his initial letter. Accordingly, Defendant fulfilled its obligation to respond to Plaintiff's billing inquiry.

The TILA further provides that

[a]fter receiving a notice from an obligor as provided in section 1666(a) of this title, a creditor or his agent may not directly or indirectly threaten to report to any personadversely on the obligor's credit rating or credit standing because of the obligor'sfailure to pay the amount indicated by the obligor under section 1666(a)(2) of thistitle, and such amount may not be reported as delinquent to any third party until thecreditor has met the requirements of section 1666 of this title and has allowed theobligor the same number of days (not less than ten) thereafter to make payment asis provided under the credit agreement with the obligor for the payment ofundisputed amounts.

*4 15 U.S.C.A. § 1666a(a).

The TILA does not prohibit Defendant from reporting delinquencies or from filing an arbitration claim based on delinquent payments. Rather, the statute merely imposes a waiting period before the creditor may report the account to a credit agency. Plaintiff failed to point to any evidence in the record from which it may reasonably be concluded that Defendant did not satisfy the waiting period prior to reporting Plaintiff to credit agencies or instituting arbitration. Because no fair minded trier of fact could reasonably conclude that Defendant violated the TILA, Defendant's Motion for Summary Judgment as to count one is GRANTED.

## 2. Breach of Contract

Plaintiff next contends that Defendant breached its contract with Plaintiff in seeking to arbitrate the dispute because there was no applicable arbitration agreement. In September 2004, Defendant changed the terms of the cardmember agreement. This "Change in Terms Notice and New Cardmember Agreement" stated in pertinent part:

**Claim Covered.**Either you or we may, without the other's consent, electmandatory, binding arbitration of any claim, dispute or controversy by either you orus against the other ... arising from or relating in any way to the CardmemberAgreement, any prior Cardmember Agreement, [or] your credit card Account.... This Arbitration Agreement governs all Claims, whether such Claims are based onlaw, statute, contract, regulation ... or any other legal or equitable ground andwhether such Claims seek as remedies money damages.. or equitable relief. Claims subject to this Arbitration Agreement include Claims regarding theapplicability of this Arbitration Agreement or the validity of the entire CardmemberAgreement or any prior Cardmember Agreement.

Defendant also amended the small claims exception to remove the $25,000 minimum on arbitration claims. Defendant gave Plaintiff the option to pursue any claim in small claims court falling within that court's jurisdiction. Although given the option to do so, Plaintiff did not opt out of this provision.

Under Delaware law, a bank may unilaterally amend its credit card agreements provided it gives notice of the proposed change and an opportunity to opt-out of the proposed change.[FN3]*See Carmack v. Chase Manhattan Bank (USA)* 521 F.Supp.2d 1017. 1024 (N.D.Cal.2007) (citing *Edelist v. MBNA America Bank.* 790 A.2d 1249 (Del.Super.2001)); *see also Mackey v. MBNA America Bank, N.A..* 343 F.Supp.2d 966 (W.D.Wash.2004); *Kurz v. Chase Manhattan Bank USA, N.A.,* 319 F.Supp.2d 457 (S.D.N.Y.2004). If a bank does not receive notice that the card member rejects the amended terms, the amendment becomes effective. *See Edelist,* 790 A.2d at 1258. Here, Plaintiff was given notice of the proposed amendment and given an opportunity to opt-out. Plaintiff did not opt out. He was, therefore, subject to the amended arbitration provision in the contract. Under this provision, Defendant had the right to arbitrate claims less than $25,000. Ac-

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

cordingly, Defendant's motion for Summary Judgment as to count two is granted.

> FN3. Pursuant to the contract between Plaintiff and Defendant, Delaware law applies to the Plaintiff's account. This contractual choice-of-law provision is valid and enforceable, *see Wing Shing Products (BVI), LTd. v. Simatelex Manufactory Co., Ltd.,* 479 F.Supp.2d 388 (S.D.N.Y.2007), and Plaintiff makes no argument concerning choice of law.

### 3. Arbitration Clause

**\*5** In his fourth count, Plaintiff seeks to prevent Defendant from enforcing its arbitral award. The arbitrator found that there was a valid arbitration provision and an arbitrable dispute. To the extent Plaintiff challenges the arbitration provision, for reasons discussed *supra,* the arbitration provision is valid. *Buckeye Check Cashing, Inc. v. Cardegna,* 546 U.S. 440, 445, 126 S.Ct. 1204, 163 L.Ed.2d 1038 (2006). Because Plaintiff failed to raise grounds upon which the arbitral award should be vacated, Defendant's Motion for Summary Judgment as to count four is granted.

### b. Defendant's Motion to Amend Answer

Defendant moves to amend its answer pursuant to Fed.R.Civ.P. 15(a) to assert a counterclaim against Plaintiff and for judgment on the counterclaim. Plaintiff objects to the Defendant's motion to amend on the basis that the motion is untimely. Rule 15(a)(2) provides that a court shall freely grant leave to amend pleadings "when justice so requires." Fed.R.Civ.P. 15(a). The Court liberally construes this directive. *Kirkland v. City of New York,* 2007 WL 1541367 (E.D.N.Y.2007). Leave to amend may be denied where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the

amendment, futility of amendment, etc." *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227. 9 L.Ed.2d 222 (1962).

Here, the Court finds no undue delay. Much of the delay in this case is due to Plaintiff's conduct. Plaintiff's failure to comply with discovery forced Defendant to make two separate motions to compel discovery. Discovery was not completed until June 13, 2008. Although Defendant likely knew of the grounds for its counterclaim long ago, the Court finds that the delay is not undue amd that the motion for leave to amend is timely. See, *Manhattan Fuel Co., Inc. v. New England Petroleum Corp.,* 422 F.Supp. 797 (S.D.N.Y.1976), *aff'd,* 578 F.2d 1368 (2d Cir.1978) (allowing amendment two years after completion of discovery). In any event, absent a showing of prejudice, delay alone generally is insufficient grounds upon which a motion for leave to amend. *Block v. First Blood Assocs.,* 988 F.2d 344, 350 (2d Cir.1993).

In determining whether an amendment to a pleading causes undue prejudice, courts look to "whether the assertion of the new claim would: (i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; [or] (ii) significantly delay the resolution of the dispute."*Id.* Here, Defendant seeks to assert a counterclaim to confirm the arbitral award. This assertion requires no more discovery than that required by Plaintiff's initial Complaint which alleged that Defendant improperly obtained an arbitral award against him. Plaintiff need not expend any additional resources and there is no likelihood of delay of the resolution of this action. Plaintiff fails to identify any prejudice from asserting a counterclaim at this time.

**\*6** To the extent Plaintiff may be challenging Defendant's proposed counterclaim as time-barred, the Court finds that the motion to confirm the arbitral award is timely. The Delaware Uniform Arbitration Act ("DUAA") provides that:

> The Court shall confirm an award upon complaint or application of a partyin an existing case made

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

within one year after its delivery to the party, unless within the time limits hereinafter imposed grounds are urged for vacating or modifying or correcting the award, in which case the Court shall proceed as provided in §§ 5714 and 5715.

10 Del.C. § 5713.

The arbitral award was issued in August 2006. Defendant's Counterclaim seeking to confirm the arbitral award is timely because it relates back to the original Answer served by Defendant on October 25, 2006.[FN4] *See Rubin v. Valicenti Advisory Services, Inc.* (finding amended pleading relates back to filing of original pleading for statute of limitations purposes, because claim or defense asserted in amended pleading arose out of conduct, transaction, or occurrence in original pleading); *see also S.E.C. v. Montle,* 65 Fed. Appx. 749 (2d Cir.2003). Accordingly, Defendant's motion to amend its answer to assert a counterclaim seeking confirmation of the arbitral award is granted.

> FN4. Rule 15(c)(1)(B) states an amendment relates back when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out-or attempted to be set out-in the original pleading."Fed.R.Civ.P. 15(c)(1)(B). The counterclaim asserted by the Defendant expands upon the allegations in Plaintiff's complaint as well as Defendant's answer that Defendant obtained an arbitration award against Plaintiff that Plaintiff has not paid. The Answer was served on October 25, 2006, well within a year of the August 23, 2006 arbitral award.

**c. Defendant's Motion for Judgment on Its Counterclaim**

Next, Defendant moves for judgment on its counterclaim. The parties agreed in their contract that Delaware law governs. None of the factors provided in §§ 5714 or 5715 of the DUAA present grounds for vacating this award. Plaintiff having failed to present a valid basis upon which the arbitral award should be vacated or otherwise not enforced, the Court grants Defendant's motion and confirms the arbitration award in the amount of $8,647.03.

**d. Defendant's Motion for Sanctions Against Plaintiff**

Finally, Defendant requests sanctions against Plaintiff. Plaintiff's actions in this case appear to be without any justifiable basis in law or fact. Nonetheless, the Court declines to impose sanctions absent a properly filed motion pursuant to Fed.R.Civ.P. 11.

**IV. CONCLUSION**

For the reasons stated above, Defendant's Motion for Summary Judgment GRANTED and Plaintiff's Complaint is DISMISSED IN ITS ENTIRETY. Defendant's motion to amend its answer GRANTED; the arbitration award in the amount of $8,647.03 is confirmed; Defendant's motion for sanctions against Plaintiff is denied with leave to renew.

**IT IS SO ORDERED.**

N.D.N.Y.,2008.
Legant v. Chase Bank USA, N.A.
Slip Copy, 2008 WL 5105314 (N.D.N.Y.)

END OF DOCUMENT

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

**TAB 2**

Westlaw

Slip Copy Case 7:07-cv-00996-TJM-GJD    Document 53-3    Filed 02/27/09    Page 10 of 38 Page 1
Slip Copy, 2006 WL 3051792 (N.D.N.Y.)
(Cite as: 2006 WL 3051792 (N.D.N.Y.))

**H**
Only the Westlaw citation is currently available.

United States District Court,
N.D. New York.
Antonio SAUNDERS, Plaintiff,
v.
Superintendent RICKS; Commissioner Goord,
Commissioner of Corrections; Captain Racette;
Sergeant Sinical; Nurse Buffham; Officer Cook;
Officer Woods, Correctional Officer; Lt. Uhler, Lt.
at Disciplinary Hearing; John Doe, Officer; and
Nurse Rushford, Defendants.
**No. 9:03-CV-598.**

Oct. 18, 2006.

Antonio Saunders, Newport News, VA, pro se.

Hon. Eliot Spitzer, Attorney General of the State of
New York, Patrick F. Macrae, Esq., Ed J.
Thompson, Esq., Asst. Attorneys General, Syra-
cuse, NY, for Defendants.

### DECISION and ORDER

DAVID N. HURD, District Judge.

**\*1** Plaintiff, Antonio Saunders, brought this civil
rights action pursuant to 42 U.S.C. § 1983. By Re-
port-Recommendation dated August 14, 2006, the
Honorable George H. Lowe, United States Magis-
trate Judge, recommended that defendants' motion
for summary judgment be granted. No objections to
the Report-Recommendation have been filed.

Based upon a careful review of the entire file and
the recommendations of Magistrate Judge Lowe,
the Report-Recommendation is accepted and adop-
ted in its entirety. *See* 28 U.S.C. 636(b)(1).

Accordingly, it is

ORDERED that

1. Defendants' motion for summary judgment is
GRANTED;

2. The complaint is DISMISSED; and

3. The Clerk is directed to enter judgment accord-
ingly.

IT IS SO ORDERED.
GEORGE H. LOWE, Magistrate Judge.

### REPORT-RECOMMENDATION

This matter has been referred to me for Report and
Recommendation by the Honorable David N. Hurd,
United States District Judge, pursuant to 28 U.S.C.
§ 636(b) and Local Rule N.D.N.Y. 72.3(c). In this
*pro se* civil rights action brought under 42 U.S.C. §
1983, Antonio Saunders ("Plaintiff") alleges that,
while he was incarcerated at Upstate Correctional
Facility ("Upstate C.F.") from July of 1999 to June
of 2000, ten employees of the New York State De-
partment of Correctional Services ("DOCS") viol-
ated various of Plaintiff's rights under the Eighth
and Fourteenth Amendments. (Dkt. No. 6 [Plf.'s
Am. Compl.].) More specifically, Plaintiff alleges
that DOCS Commissioner Glenn Goord, Upstate
C.F. Superintendent Thomas Ricks, Upstate C.F.
Captain S. Racette, Upstate C.F. Lt. D. Uhler, Up-
state C.F. Sgt. Sinical, Upstate C.F. Officer D.
Cook, Upstate C.F. Officer Woods, Upstate C.F.
Nurse D. Buffham, Upstate C.F. Nurse M. Rush-
ford, and an unidentified "John Doe" Correctional
Officer ("Defendants") violated Plaintiff's rights in
the following ways: (1) by recklessly failing to pro-
tect Plaintiff from his cellmate, Inmate Ronald
Lynch; (2) by being deliberately indifferent to
Plaintiff's serious injuries sustained during an at-
tack by Inmate Lynch in May of 2000; (3) by inten-
tionally or recklessly injuring Plaintiff's fingers
through closing a cell-door's "feed up hatch" on
them in May of 2000; and (4) by depriving him of a
fair and impartial hearing officer in a disciplinary
hearing in May of 2000 on a false misbehavior re-

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

port. (Id.)

Currently before the Court is Defendants' motion for summary judgment. (Dkt. No. 49.)Generally, Defendants' motion raises the following four issues: (1) whether Plaintiff has failed to establish (or even state) an Eighth Amendment claim against Defendants Goord, Ricks and Racette for recklessly failing to protect him from Inmate Lynch; (2) whether Plaintiff has failed to establish (or even state) an Eighth Amendment claim against Defendants Sinical, Woods, Buffham and Rushford for being deliberately indifferent to his serious medical needs; (3) whether Plaintiff has failed to establish (or even state) an Eighth Amendment claim against Defendant Cook for injuring Plaintiff's fingers in the feed up hatch; and (4) whether Plaintiff has failed to establish (or even state) a Fourteenth Amendment claim against Defendant Uhler for being biased during Plaintiff's disciplinary hearing. (Dkt. No. 49, Part 3 [Defs.' Mem. of Law].) For the reasons discussed below, I answer each of the foregoing questions in the affirmative. As a result, I recommend that Defendants' motion for summary judgment be granted.

## I. SUMMARY JUDGMENT STANDARD

**\*2** Under Fed.R.Civ.P. 56(c), summary judgment is warranted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."Fed.R.Civ.P. 56(c). In determining whether a genuine issue of material [FN1] fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party.[FN2]

> FN1. A fact is "material" only if it would have some effect on the outcome of the suit. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).

> FN2. Schwapp v. Town of Avon, 118 F.3d

106, 110 (2d Cir.1997) [citation omitted]; Thompson v. Gjivoje, 896 F.2d 716, 720 (2d Cir.1990) [citation omitted].

However, when the moving party has met its initial burden of establishing the absence of any genuine issue of material fact, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial."Fed.R.Civ.P. 56(e).[FN3] The nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts."[FN4]"A dispute regarding a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party."[FN5]

> FN3.See also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 585-87 (1986).

> FN4. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 585-86 (1986); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

> FN5. Ross v. McGinnis, 00 Civ. 0275, 2004 WL 1125177, \*8 (W.D.N.Y. March 29, 2004) [internal quotations omitted] [emphasis added].

Imposed over this general burden-shifting framework is the generous perspective with which the Court generally views a pro se civil rights plaintiff's papers.[FN6]For example, where a civil rights plaintiff is proceeding pro se, and the defendant has filed a dispositive motion, generally the Court must construe the plaintiff's complaint and opposition papers liberally so as to raise the strongest arguments that they suggest.[FN7]

> FN6.See Haines v. Kerner, 404 U.S. 519, 520-21 (1972)(per curiam) (pro se civil rights action); Ortiz v. Cornetta, 867 F .2d 146, 148 (2d Cir.1989)(pro se civil rights action); Aziz Zarif Shabazz v. Pico, 994 F.Supp. 460, 467 (S.D.N.Y.1998)(pro se

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

civil rights action), *aff'd in part, vacated in part on other grounds,* 205 F.3d 1324 (2d Cir.2000) (unpublished decision).

FN7.*See Weixel v. Bd. of Ed. of City of New York,* 287 F.3d 138, 146 (2d Cir.2002) (motion to dismiss in civil rights case); *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994) (motion for summary judgment in civil rights case); *Thomas v. Irving,* 981 F.Supp. 794, 799 (W.D.N.Y.1997) (motion for summary judgment in civil rights case).

Having said that, "[p]roceeding pro se does not otherwise relieve a [party] from the usual requirements to survive a motion for summary judgment."[FN8]Moreover, "there are circumstances where an overly litigious inmate, who is quite familiar with the legal system and with pleading requirements, may not be afforded such special solicitude."[FN9]I note that, in such cases, the overly litigious inmate is not being denied this special solicitude or status as a form of punishment for his litigiousness but as a form of recognition of his obvious litigation experience (and the lack of need for special solicitude).[FN10]

FN8. *Bussa v. Aitalia Line Aeree Italiane S.p.A.,* 02-CV-10296, 2004 WL 1637014, at *4 (S.D.N.Y. July 21, 2004) [citations omitted], *accord, Durran v. Selsky,* 251 F.Supp.2d 1208, 1211 (W.D.N.Y.2003) [citations omitted]. For example, although "[t]he work product of *pro se* litigants should be generously and liberally construed, ... [a *pro se* litigant's] failure to allege either specific facts or particular laws that have been violated renders [an] attempt to oppose defendants' motion ineffectual." *Kadosh v. TRW, Inc.,* No. 91 Civ. 5080, 1994 WL 681763, at *5 (S.D.N.Y. Dec. 5, 1994).

FN9.*See, e.g., Gill v. Frawley,* 02-CV-1380, 2006 WL 1742738, at *3 & n. 2 (N.D.N.Y. June 22, 2006) (McAvoy,

J; Lowe, M.J.) (plaintiff had filed at least 20 actions in Northern District of New York and five other actions in Southern District of New York); *Davidson v. Talbot,* 01-CV-0473, 2005 U.S. Dist. LEXIS 39576, at *19 & n. 10 (N.D.N.Y. March 31, 2005) (Treece, M.J.) (plaintiff had filed 20 actions in the Northern District of New York alone); *Gill v. Riddick,* 03-CV-1456, 2005 U.S. Dist. LEXIS 5394, at *7 & n. 3 (N.D.N.Y. March 31, 2005) (Treece, M.J.) (plaintiff had filed 20 actions in Northern District alone of New York); *see also Johnson v. Eggersdorf,* 8 Fed. Appx. 140, 143 (2d Cir. May 17, 2001) (unpublished opinion) (plaintiff at one point had 12 simultaneously pending lawsuits in Northern District alone), *aff'g,* 97-CV-0938, Decision and Order (N.D.N.Y. May 28, 1999) (Kahn, J.), *adopting,* 97-CV-0938, Report-Recommendation, at 1, n. 1 (N.D.N.Y. Apr. 28, 1999) (Smith, M.J.); *Johnson v. C. Gummerson,* 201 F.3d 431 (2d Cir.1999) (plaintiff at one point had 12 simultaneously pending lawsuits in Northern District alone), *aff'g,* 97-CV-1727, Decision and Order (N.D.N.Y. June 11, 1999) (McAvoy, J.), *adopting,* 97-CV-1727, Report-Recommendation (N.D.N.Y. April 28, 1999) (Smith, M.J.); *Davidson v. Flynn,* 32 F.3d 27, 31 (2d Cir.1994) (plaintiff at one time had at least 30 simultaneously pending lawsuits); *Davidson v. Dean,* 204 F.R.D. 251, 257 (S.D.N.Y.2001) (plaintiff at one point had 30 simultaneous pending suits); *Santiago v. C.O. Campisi,* 91 F.Supp.2d 665, 670 (S.D.N.Y.2000) (plaintiff had 10 suits pending in district); *McGann v. U.S.,* 98-CV-2192, 1999 WL 173596, at *2, 8-10 (S.D.N.Y. March 29, 1999) (court found 79 reported decisions of cases that plaintiff had filed during previous 43 years); *Brown v. McClellan,* 93-CV0901, 1996 U.S. Dist. LEXIS 8164, at *3-4, & n. 3, 1996 WL 328209

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

(W.D.N.Y.1996) (plaintiff had filed seven previous lawsuits against prison officials); *Brown v. Selsky*, 93-CV-0268, 1995 U.S. Dist. LEXIS 213, at *2, n. 1, 1995 WL 13263 (W.D.N.Y. Jan. 10, 1995) (plaintiff had seven cases pending in district).

FN10.*See, supra,* note 9 (citing cases discussing rationale for denying special status to overly litigious *pro se* litigants).

Here, after carefully considering the matter, I conclude that Plaintiff's litigation experience warrants denying him the special solicitude or status normally afforded *pro se* civil rights litigants. In addition to the current action, Plaintiff previously filed at least six federal district court actions, and two federal appeals, in this Circuit within an eight-year period.[FN11]Furthermore, two of these actions were successful inasmuch that Plaintiff recovered $25,000 in exchange for his agreement to voluntarily dismiss the actions.[FN12]Moreover, with regard to the current action, I note that the motion papers that Plaintiff has submitted over the past several years have often been fairly good-being typed, being accompanied by affidavits, and containing legal memoranda, exhibits, etc.[FN13]As a result, some of Plaintiff's motions have been granted.[FN14]Also militating in favor of a finding that Plaintiff is not in need of the special status normally afforded to *pro se* litigants is the fact that he has apparently benefitted from the legal assistance of a "jailhouse lawyer," as he puts it.[FN15]

FN11. Specifically, he has filed the following six actions: (1) *Saunders v. Suarez,* 94-CV-3845, a prisoner civil rights action filed on 8/17/94 in the Eastern District of New York; (2) *Saunders v. Noble,* 96-CV-9347, a prisoner civil rights action filed on 11/10/98 in the Southern District of New York; (3) *Saunders v. Goord,* 98-CV-8501, a prisoner civil rights action filed on 12/2/98 in the Southern District of New York; (4) *Saunders v. Artuz,* 99-CV-0354, a *habeas corpus* proceeding

filed on 1/19/99 in the Southern District of New York; (5) *Saunders v. City of New York,* 01-CV-6045, a prisoner civil rights action filed on 9/5/01 in the Eastern District of New York; and (6) *Saunders v. Dunkin,* 02-CV-0292, a *habeas corpus* proceeding filed on 1/11/02 in the Eastern District of New York. Moreover, he filed the following two appeals: (1) *Saunders v. Dunkin* on 4/12/02 (which appeal was dismissed on 6/24/02); and (2) *Saunders v. City of New York* on 10/26/01 (which appeal was dismissed on 1/16/02). While I do not rely on this fact in reaching my conclusion that Plaintiff should be denial the special status normally afforded to *pro se* litigants, I cannot help but note that, in his response to one of Defendants' interrogatories in this action, Plaintiff apparently misrepresented the number of other lawsuits he had previously filed, failing to identify four of those lawsuits. (Dkt. No. 49, Part 6, at Ex. B-5 [Plf.'s response to Defs.' Interrogatory No. 9, in which Plf. swore that the only other lawsuits that he had filed before July 16, 2004, were *Saunders v. Suarez,* 94-CV-3845, and *Saunders v. Goord,* 98-CV-8501].)

FN12. Specifically, in *Saunders v. Suarez* (E.D.N.Y.) and *Saunders v. Noble* (S.D.N.Y.) Plaintiff received $25,000 pursuant to settlement agreements. *See Saunders v. Suarez,* No. 94-CV-3845 (E.D.N.Y. Feb. 2.1999) (Stipulation and Order of Dismissal Pursuant to Settlement); *Saunders v. Noble,* No. 96-CV-9347 (S.D.N.Y. Jan. 28, 1999) (Stipulation and Order of Dismissal Pursuant to Settlement); Dkt. No. 49, Part 6, at Ex. B-5 [Plf.'s response to Defs.' Interrogatory No. 9, in which Plf. states, "I filed one 1983 civil suit in 1994 in the Eastern District of New York which was settled."].)

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

FN13.*(See, e.g.,* Dkt. Nos. 26, 30, 56.)

FN14.*(See, e.g.,*Dkt. No. 34.)

FN15. (Dkt. No. 50 [Order of 4/4/05 rejecting Plf.'s motion to compel, in which Plf. asserts that he was being assisted by a "Jail House Lawyer Todd Chaney"].) *See* John C. Rothermich, "Ethical and Procedural Implications of "Ghostwriting" for *Pro Se* Litigants: Toward Increased Access to Civil Justice," 67 *Fordham L.Rev.* 2687, 2697 (Apr.1999) (arguing that, when the papers of a *pro se* litigant are "ghostwritten" by a legal assistant, the "special leniency" normally afforded to *pro se* litigants is "unwarranted") [citations omitted].

**\*3** Finally, I note that Plaintiff appears to have two "strikes" against him for purposes of 28 U.S.C. § 1915(g)'s "three strikes" rule.[FN16]

FN16.28 U.S.C. § 1915(g) ("In no event shall a prisoner bring a civil action or appeal a judgment under this section [enabling the prisoner to proceed *in forma pauperis*] if the prisoner has, on 3 or more occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury."); *see Saunders v. Dunkin,* 02-CV-0292 (E.D.N.Y.) (Order dated 3/19/02 granting Defs.' motion to dismiss Plf.'s *habeas corpus* petition for failure to state a claim based on untimeliness); *Saunders v. City of New York,* 01-CV-6045 (E.D.N.Y.) (Order dated 10/17/01 granting Defs.' motion to dismiss Plf.'s civil rights complaint for failure to state a claim based on qualified immunity).

## II. STATEMENT OF MATERIAL FACTS

The facts set forth in a movant's Rule 7.1(a)(3) Statement of Material Facts will be taken as true to the extent those facts are supported by the evidence in the record [FN17] and are not specifically controverted by the non-movant.[FN18]A district court has no duty to perform an independent review of the record to find proof of a factual dispute.[FN19]In the event the district court chooses to conduct such an independent review of the record, it may review any verified complaint (which, of course, is treated as an affidavit) for proof of a factual dispute.[FN20]Here, I note that Plaintiff's Second Amended Complaint is not verified. (Dkt. No. 8.)

FN17.*See Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co.,* 373 F.3d 241, 243-245 (2d Cir.2004) ("If the evidence submitted in support of the motion for summary judgment motion does not meet the movant's burden of production, then summary judgment must be denied even if no opposing evidentiary matter is presented.... [I]n determining whether the moving party has met this burden ..., the district court may not rely solely on the statement of undisputed material facts contained in the moving party's Rule 56.1 statement. It must be satisfied that the citation to evidence in the record supports the assertion.") [citation omitted]; *see, e.g .., Govan v. Campbell,* 289 F.Supp.2d 289, 295 (N.D.N.Y. Oct. 29, 2003) (Sharpe, M.J.) ("In this case, [the plaintiff] did not file a statement of undisputed facts in compliance with Local Rule 7.1(a)(3). Consequently, the court will accept the *properly supported* facts contained in the defendants' 7.1 statement.") [emphasis ad- ded].

FN18.*See* Local Rule 7.1(a)(3) (*"Any facts set forth in the Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party."*).

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

FN19.*See Amnesty Am. v. Town of West Hartford,* 288 F.3d 467, 470 (2d Cir.2002) ("We agree with those circuits that have held that Fed.R.Civ.P. 56 does not impose an obligation on a district court to perform an independent review of the record to find proof of a factual dispute.") (citations omitted); *accord, Lee v. Alfonso,* No. 04-1921, 2004 U.S.App. LEXIS 21432 (2d Cir. Oct. 14, 2004), *aff'g,* 97-CV-1741, 2004 U.S. Dist. LEXIS 20746, at *12-13 (N.D.N.Y. Feb. 10, 2004) (Scullin, J.) (granting motion for summary judgment); *Fox v. Amtrak,* 04-CV-1144, 2006 U.S. Dist. LEXIS 9147, at *1-4 (N.D.N.Y. Feb. 16, 2006) (McAvoy, J.) (granting motion for summary judgment); *Govan v. Campbell,* 289 F.Supp.2d 289, 295 (N.D.N.Y. Oct. 29, 2003) (Sharpe, M.J.) (granting motion for summary judgment); *Prestopnik v. Whelan,* 253 F.Supp.2d 369, 371-372 (N.D.N.Y.2003) (Hurd, J.).

FN20.*See Patterson v. County of Oneida,* 375 F.3d 206, 219 (2d. Cir.2004) ("[A] verified pleading ... has the effect of an affidavit and may be relied upon to oppose summary judgment."); *Fitzgerald v. Henderson,* 251 F.3d 345, 361 (2d Cir.2001) (holding that plaintiff "was entitled to rely on [his verified amended complaint] in opposing summary judgment"), *cert. denied,* 536 U.S. 922 (2002); *Colon v. Coughlin,* 58 F.3d 865, 872 (2d Cir.1993) ("A verified complaint is to be treated as an affidavit for summary judgment purposes.") [citations omitted]; Fed.R.Civ.P. 56(c) ("The judgment sought shall be rendered forthwith if the ... affidavits ... show that there is no genuine issue as to any material fact....").

Furthermore, to be sufficient to create a factual issue, an affidavit must, among other things, be based "on personal knowledge ." [FN21]An affidavit is not based on personal knowledge if, for example, it is based on mere "information and belief" or hearsay.[FN22]In addition, such an affidavit must not be conclusory.[FN23]An affidavit is conclusory if, for example, its assertions lack any supporting evidence or are too general.[FN24]Moreover, "[a]n affidavit must not present legal arguments."[FN25]

FN21.Fed.R.Civ.P. 56(e) ("Supporting and opposing affidavs shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to the matters stated therein."); *see also U.S. v. Private Sanitation Indus. Ass'n of Nassau/Suffolk, Inc .,* 44 F.3d 1082, 1084 (2d Cir.1995) [citations omitted], *cert. denied sub nom, Ferrante v. U.S.,* 516 U.S. 806 (1995).

FN22.*See Patterson,* 375 F.3d at 219 ("[Rule 56(e)'s] requirement that affidavits be made on personal knowledge is not satisfied by assertions made 'on information and belief.'...[Furthermore, the Rule's] requirement that the affiant have personal knowledge and be competent to testify to the matters asserted in the affidavits also means that the affidavit's hearsay assertion that would not be admissible at trial if testified to by the affiant is insufficient to create a genuine issue for trial."); *Sellers v. M.C. Floor Crafters, Inc.,* 842 F.2d 639, 643 (2d Cir.1988) ("[Defendant's] affidavit states that it is based on personal knowledge *or* upon information and belief.... Because there is no way to ascertain which portions of [Defendant's] affidavit were based on personal knowledge, as opposed to information and belief, the affidavit is insufficient under Rule 56 to support the motion for summary judgment."); *Applegate v. Top Assoc., Inc.,* 425 F.2d 92, 97 (2d Cir.1970) (rejecting affidavit made on "suspicion ... rumor and hearsay"); *Spence*

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Case 7:07-cv-00996-TJM-GJD   Document 53-3   Filed 02/27/09   Page 16 of 38

v. *Maryland Cas. Co.,* 803 F.Supp. 649, 664 (W.D.N.Y.1992) (rejecting affidavit made on "secondhand information and hearsay"), *aff'd,* 995 F.2d 1147 (2d Cir.1993).

FN23.*See*Fed.R.Civ.P. 56(e) (requiring that non-movant "set forth specific facts showing that there is a genuine issue for trial"); *Patterson,* 375 F.3d at 219 (2d. Cir.2004) ("Nor is a genuine issue created merely by the presentation of assertions [in an affidavit] that are conclusory.") [citations omitted]; *Applegate,* 425 F.2d at 97 (stating that the purpose of Rule 56[e] is to "prevent the exchange of affidavits on a motion for summary judgment from degenerating into mere elaboration of conclusory pleadings").

FN24.*See, e.g., Bickerstaff v. Vassar Oil,* 196 F.3d 435, 452 (2d Cir.1998) (McAvoy, C.J., sitting by designation) ("Statements [for example, those made in affidavits, deposition testimony or trial testimony] that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment.") [citations omitted]; *West-Fair Elec. Contractors v. Aetna Cas. & Sur.,* 78 F.3d 61, 63 (2d Cir.1996) (rejecting affidavit's conclusory statements that, in essence, asserted merely that there was a dispute between the parties over the amount owed to the plaintiff under a contract); *Meiri v. Dacon,* 759 F.2d 989, 997 (2d Cir.1985) (plaintiff's allegation that she "heard disparaging remarks about Jews, but, of course, don't ask me to pinpoint people, times or places.... It's all around us" was conclusory and thus insufficient to satisfy the requirements of Rule 56[e] ), *cert. denied,* 474 U.S. 829 (1985); *Applegate,* 425 F.2d at 97 ("[Plaintiff] has provided the court [through his affidavit]

with the characters and plot line for a novel of intrigue rather than the concrete particulars which would entitle him to a tri- al.").

FN25.N.D.N.Y. L.R. 7.1(a)(2).

Finally, even where an affidavit is based on personal knowledge and is nonconclusory, it may be insufficient to create a factual issue where it is (1) "largely unsubstantiated by any other direct evidence" and (2) "so replete with inconsistencies and improbabilities that no reasonable juror would undertake the suspension of disbelief necessary to credit the allegations made in the complaint."FN26

FN26.*See, e.g., Jeffreys v. City of New York,* 426 F.3d 549, 554-555 (2d Cir.2005) (affirming grant of summary judgment to defendants in part because plaintiff's testimony about an alleged assault by police officers was "largely unsubstantiated by any other direct evidence" and was "so replete with inconsistencies and improbabilities that no reasonable juror would undertake the suspension of disbelief necessary to credit the allegations made in the complaint") [citations and internal quotations omitted]; *Argus, Inc. v. Eastman Kodak Co.,* 801 F.2d 38, 45 (2d Cir.1986) (affirming grant of summary judgment to defendants in part because plaintiffs' deposition testimony regarding an alleged defect in a camera product line was, although specific, "unsupported by documentary or other concrete evidence" and thus "simply not enough to create a genuine issue of fact in light of the evidence to the contrary"); *Allah v. Greiner,* 03-CV-3789, 2006 WL 357824, at *3-4 & n. 7, 14, 16, 21 (S.D.N.Y. Feb. 15, 2006) (prisoner's verified complaint, which recounted specific statements by defendants that they were violating his rights, was conclusory and discredited by the evidence, and therefore insufficient to create issu *Olle v. Columbia*

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

*Univ.*, 332 F.Supp.2d 599, 612 (S.D.N.Y.2004) (plaintiff's deposition testimony was insufficient evidence to oppose defendants' motion for summary judgment where that testimony recounted specific allegedly sexist remarks that "were either unsupported by admissible evidence or benign"), *aff'd*, 136 Fed. Appx. 383 (2d Cir.2005) (unreported decision).

## III. ANALYSIS

**A. Whether Plaintiff Has Failed to Establish (or Even State) an Eighth Amendment Claim Against Defendants Goord, Ricks and Racette for Recklessly Failing to Protect Him from Inmate Lynch**

The Eighth Amendment imposes on prison officials "a duty ... to protect prisoners from violence at the hands of other prisoners."[FN27]Accordingly, "[a] prisoner injured while in custody may recover for violations of his Eighth Amendment rights if the injury resulted from the defendant prison official's purposeful subjection of the prisoner to a 'substantial risk of serious harm' or from the official's deliberate indifference to that risk."[FN28]"A showing of deliberate indifference requires (1) demonstrating that the conditions of incarceration pose a substantial risk of serious harm, and (2) establishing that the "prison officials possessed sufficient culpable intent."[FN29]Culpable intent exists where a prison official "has knowledge that an inmate faces a substantial risk of serious harm and he disregards that risk by failing to take reasonable measures to abate the harm."[FN30]

FN27. *Fischl v. Armitage*, 128 F.3d 50, 55 (2d Cir.1997) (citing *Farmer v. Brennan*, 511 U.S. 825, 833 [1994] ).

FN28. *Fischl*, 128 F.3d at 55 (citing *Farmer*, 511 U.S. at 834 and *Weyant v. Oost*, 101 F.3d 845, 856 [2d Cir.1996] ).

FN29. *Hayes v. New York City Dep't of*

*Corr.*, 84 F.3d 614, 620 (2d Cir.1996) (citing *Farmer*, 511 U.S. at 834).

FN30. *Hayes*, 84 F.3d at 620 (citing *Farmer*, 511 U.S. at 834);*see also Rivera v. Senkowski*, 62 F.3d 80, 84-85 (2d Cir.1995) (deliberate indifference requires an objective component that the alleged deprivation is sufficiently serious, and a subjective component that the charged official, at a minimum, knew of and disregarded an excessive risk to inmate health or safety).

Here, I realize that "[n]ot ... every injury suffered by one prisoner at the hands of another ... translates into constitutional liability for prison officials responsible for the victim's safety."[FN31]However, in the interest of keeping this Report-Recommendation brief, I will assume for the sake of argument that Plaintiff has adduced sufficient evidence to create an issue of fact as to whether or not he was incarcerated under conditions posing a substantial risk of serious harm.[FN32]Specifically, I note that the record evidence indicates that, following the alleged attack by Inmate Lynch on or about May 16, 2000, Plaintiff was suffering from a fracture on the "tip" of his nose, a bruise below both eyes, a dime-sized abrasion on his nose, a golf-ball sized swelling on the left side of his head, a two-inch bite-mark on his left bicep, a four-and-one-half-inch abrasion on his back, and pain in his head.[FN33]

FN31. *Farmer*, 511 U.S. at 834.

FN32.*See, e.g., King v. Department of Corr.*, 95-CV-3057, 1998 WL 67669, at *5 (S.D.N.Y. Feb. 18, 1998) (inmate who, during attack by fellow inmate, received 12-13 stitches for cuts to the face, neck, and shoulder fulfilled objective requirement of Eighth Amendment test); *Knowles v. New York City Dep't of Corr.*, 904 F.Supp. 217, 221 (S.D.N.Y.1995) (inmate who, during attack by fellow inmate using a sharp object, sustained a cut to the face

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

requiring sixty stitches, met the objective requirement of Eighth Amendment test).

FN33.(CompareDkt. No. 49, Part 4, ¶¶ 15, 18, 26 [Defs.' Rule 7.1 Statement, asserting facts and citing record evidence supporting those facts] withDkt. No. 56, Plf.'s Rule 7.1 Response, ¶¶ 15, 18, 26 [not specifically denying relevant fact asserted in Paragraph *15, admitting facts asserted in Paragraph 18, and denying facts asserted in Paragraph 26 but citing no record evidence in support of that denial].)

**\*4** The issue, then, is whether Plaintiff has adduced sufficient evidence to create a question of fact as to whether Defendants had the culpable intent necessary to sustain a claim of failure to protect. Again, in order to prevail in demonstrating a culpable state of mind, a plaintiff must show both: (1) the defendant had actual knowledge of a substantial risk of harm to the plaintiff; and (2) the defendant disregarded that risk by failing to take reasonable measures to abate the harm.[FN34]"One way to make out such a claim is to allege that 'a substantial risk of inmate attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant official being sued had been exposed to information concerning the risk and thus must have known about it.' " [FN35] Courts routinely deny deliberate indifference claims based upon surprise attacks.[FN36]

FN34. Farmer, 511 U.S. at 837.

FN35. Coronado v. Goord, 99-CV-1674, 2000 WL 1372834, at *4 (S.D .N.Y. Sept. 25, 2000) (quoting Farmer, 511 U.S. at 842-43).

FN36.See, e.g., Zimmerman v. Macomber, 95-CV-0882, 2001 U.S. Dist. LEXIS 12499, at *12-19 (S.D.N.Y. Aug. 21, 2001) (granting summary judgment for defendants based on unexpected attack on in-

mate); Coronado. 2000 WL 1372834, at *4 (dismissing complaint where officers unaware of earlier attacks on inmate at prior prison); Grant v. Burroughs, 96-CV-2753, 2000 WL 1277592, at *3 (S.D.N.Y. Sept. 8, 2000) (granting summary judgment for defendants based on unexpected attack on inmate after earlier argument); King v. Dept. of Corr.. 95-CV3057, 1998 WL 67669, at *5-6 (S.D.N.Y. Feb. 18. 1998) (failure to protect from isolated attack, after threat from prison official, did not sustain § 1983 claim).

Here, I find no evidence that either (1) any Defendant had actual knowledge of a substantial risk of harm to Plaintiff or (2) that any Defendant disregarded that risk by failing to take reasonable measures to abate the harm. The sole basis of any knowledge of a risk of harm in this case consists of three letters from Plaintiff to Defendants Goord, Ricks or Racette, and a memorandum from a correctional sergeant to Defendant Racette-all dated between six weeks and nine months before the alleged assault by Inmate Lynch on or about May 16, 2000.[FN37]

FN37. (Dkt. No. 49, Part 6, C-5 [Plf.'s letter of 8/8/99 to Def. Goord complaining of being placed in cell with Inmate Hodges, who was physically ill, and indicating that he had previously communicated this complaint to C.O. Jones], C-14 [Plf.'s letter of 8/16/99 to Def. Ricks complaining of being placed in cell with Inmate Hodges, who allegedly had been told by someone that Plf. was a snitch], C-9 [Plf.'s letter of 9/19/99 to Def. Ricks complaining of being placed in cell with Inmate Speight, who allegedly had been told by someone that Plf. was a snitch], C-12 [Plf.'s letter of 3/26/00, erroneously dated 11/26/00, to Def. Racette complaining about his cell's proximity to the cells of Inmates Roddick and Corss, whom Plf. claimed were his enemies], C-10 [memorandum of 3/29/00

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

from Sgt. Barker to Def. Racette stating that Plf. had complained on 3/24/00 about being exposed to members of the "Bloods" gang, but that Sgt. Barker had investigated the complaint and found its basis to be "sketchy at best"].)

Defendants analyze these communications in some detail, concluding that none of them put Defendants Goord, Ricks and/or Racette on notice of an attack against Plaintiff by Inmate Lynch.[FN38] Plaintiff, on the other hand, argues that the letters, when construed liberally and considered together, show that Plaintiff had an extensive "enemy list" (due to Plaintiff's gang affiliation) and that Plaintiff needed to be placed in Protective Custody and/or in a single cell until a transfer to another facility could be arranged.[FN39]

> FN38.*(See, e.g.,*Dkt. No. 49, Part 3, at 8-9 [Defs.' Mem. of Law]; Dkt. No. 49, Part 4, ¶¶ 2, 3, 6, 10, 11, 12 [Defs.' Rule 7 .1 Statement].)

> FN39. (Dkt. No. 56, Plf.'s Mem. of Law, at 4-6.)

First, there is no evidence of any prior problem between Plaintiff and *Inmate Lynch* of which any Defendant was or should have been aware. For example, setting aside the considerable length of time between Plaintiff's prior letters and the incident in question, none of the communications in question mention Inmate Lynch. Moreover, Plaintiff has not cited any evidence (nor even alleged or argued) that Defendants Goord, Ricks or Racette should have known, before May 16, 2000, that Inmate Lynch bore, or would bear, Plaintiff any animosity (e.g., that Inmate Lynch was a member of "the Bloods" gang, that Inmate Lynch believed Plaintiff to be a "snitch," or that Inmate Lynch had previously attacked fellow cell mates).

Second, even if Plaintiff's letters to these Defendants could have, when construed liberally and considered together, constituted reason to believe that Plaintiff might be attacked by a future cell mate, these Defendants can reasonably be held to be "on notice" only of letters that were addressed to them or read by them. Here, each of Plaintiff's letters was addressed to only one Defendant (and not the other two Defendants); and no evidence exists that more than one of the three Defendant read any of the letters (if any of the three Defendants read those letters). While Plaintiff may believe that those three Defendants were negligent in the performance of their duties, such negligence is not actionable under 42 U.S.C.1983 .[FN40] Even a conclusion of negligence would be extremely difficult to reach under the circumstances, in which, prior to May 16, 2000, each time Plaintiff complained about his cell assignment, he was promptly moved.

> FN40. *Farmer,* 511 U.S. at 835 ("[D]eliberate indifference describes a state of mind more blameworthy than negligence.").

**\*5** As a result, I recommend that the Court dismiss Plaintiff's Eighth Amendment claim against Defendants Goord, Ricks or Racette for failing to protect him from Inmate Lynch.

**B. Whether Plaintiff Has Failed to Establish (or Even State) an Eighth Amendment Claim against Defendants Sinical, Woods, Buffham and Rushford for Deliberate Indifference to Plaintiff's Serious Medical Needs**

Defendants recite the correct legal standard that governs Plaintiff's claim of inadequate medical care under the Eighth Amendment. Generally, to prevail on such a claim, Plaintiff must show two things: (1) that Plaintiff had a sufficiently serious medical need; and (2) that Defendant was deliberately indifferent to that serious medical need. *Estelle v. Gamble,* 429 U.S. 97, 104 (1976); *Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir.1998).

**1. Serious Medical Need**

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

As discussed earlier in Part III.A. of this Report-Recommendation, following the alleged attack on Plaintiff by Inmate Lynch on or about May 16, 2000, Plaintiff was suffering from a fracture on the "tip" of his nose, a bruise below both eyes, a dimesized abrasion on his nose, a golf-ball sized swelling on the left side of his head, a two-inch bitemark on his left bicep, a fourand-one-half-inch abrasion on his back, and pain in his head.[FN41] Conspicuously absent from Plaintiff's medical records are any notations of medical staff, during the time in question, reporting complaints by Plaintiff of the sort of "severe" (or "extreme," "agonizing," "excruciating," etc.) pain [FN42] that would be necessary to elevate Plaintiff's medical condition to one of constitutional dimensions.[FN43] However, in the interest of keeping this Report-Recommendation brief, I will assume for the sake of argument that Plaintiff has adduced sufficient evidence to create an issue of fact as to whether or not he was suffering from a medical need that was sufficiently serious for purposes of the Eighth Amendment.

> FN41.*(Compare*Dkt. No. 49, Part 4, ¶¶ 15, 18, 26 [Defs.' Rule 7.1 Statement] *with*Dkt. No. 56, Plf.'s Rule 7.1 Response, ¶¶ 15, 18, 26].)

> FN42. (Dkt. No. 49, Part 6, at Ex. D [Plf.'s medical records].)

> FN43.*See Hathaway v. Coughlin,* 37 F.3d 63, 66 (2d Cir.1994) (standard contemplates "a condition of urgency, one that may produce death, degeneration or extreme pain") [citation omitted].

## 2. Deliberate Indifference

The problem with Plaintiff's Eighth Amendment claim is that he has adduced no evidence that Defendants Sinical, Woods, Buffham and Rushford acted with the sort of *criminal recklessness* necessary to impose on them liability under 42 U.S.C. §

1983.[FN44] Indeed, the available evidence indicates that the medical staff at Upstate C .F. promptly and continuously examined Plaintiff and treated his injuries.

> FN44.*See Farmer v. Brennan,* 511 U.S. 825, 827 (1994) ( "[S]ubjective recklessness as used in the criminal law is a familiar and workable standard that is consistent with the Cruel and Unusual Punishments Clause as interpreted in our cases, and we adopt it as the test for "deliberate indifference" under the Eighth Amendment."); *Hemmings v. Gorczyk,* 134 F.3d 104, 108 (2d Cir.1998) ("The required state of mind [for a claim of deliberate indifference to a serious medical need under the Eighth Amendment is] equivalent to criminal recklessness...."); *Hathaway v. Coughlin,* 99 F.3d 550, 553 (2d Cir.1996) ("The subjective element requires a state of mind that is the equivalent of criminal recklessness....").

For example, the uncontroverted evidence indicates that, after the alleged attack on May 16, 2000, an examination of Plaintiff (or an attempted examination of Plaintiff) occurred at the following times: (1) approximately 6:30 a.m. on May 17, 2000, by Defendant Buffham; (2) approximately 1:00 p.m. on May 17, 2000, by Defendant Buffham; (3) 4:00 p.m. on May 17, 2000, by Defendant Rushford; (4) 6:15 a.m. on May 18, 2000, by another nurse; (5) 11:45 a.m. on May 18, 2000, by Defendant Rushford and another nurse; (6) approximately 6:30 a.m. on May 19, 2000, by Defendant Buffham; and (7) 6:21 a.m. on May 20, 2000, by another nurse.[FN45] Furthermore, the uncontroverted evidence indicates that, after the alleged attack on May 16, 2000, Plaintiff's treatment included the following: (1) four packets of pain medication and a cold compress at approximately 6:30 a.m. on May 17, 2000, by Defendant Buffham; (2) a tetanus shot at 11:45 a.m. on May 18, 2000, by Defendant Rushford; (3) four packets of pain medication and mul-

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

tiple packets of bacitracin (a topical antibiotic ointment) at approximately 6:30 a.m. on May 19, 2000, by Defendant Buffham; and (4) an x-ray examination of his nose at some point between May 20, 2000, and June 5, 2000.[FN46]These persistent efforts by the medical staff at Upstate C.F. to examine and treat Plaintiff are particularly impressive when one considers Plaintiff's numerous refusals to accept such examinations and treatment.[FN47]

> FN45. (Dkt. No. 49, Part 6, at Ex. D [Plf.'s medical records]; compareDkt. No. 49, Part 4, ¶¶ 15, 17-21, 26 [Defs.' Rule 7 .1 Statement, asserting facts and citing record in support of those facts] withDkt. No. 56, Plf.'s Rule 7.1 Response, ¶¶ 15, 17-21, 26 [admitting various of the asserted facts, or failing to specifically deny various of the asserted facts, or specifically denying various of the asserted facts but failing to cite record in support of such denials].)

> FN46.(Id.)

> FN47.(Id. [indicating Plf.'s refusal to accept Tylenol at approximately 6:30 a.m. on May 17, 2000, his refusal to be examined at approximately 1:00 p.m. on May 18, 2000, and his refusal to have his nose x-rayed at 11:45 a.m. on May 18, 2000].)

**\*6** At most, there is evidence of a difference of opinion between Plaintiff and Defendants Buffham or Rushford, or *conceivably* a hint of negligence on the part of Defendants Buffham or Rushford. However, neither a difference of opinion nor negligence would be enough to make any medical staff member of Upstate C.F. liable to Plaintiff under the Eighth Amendment.[FN48](This is especially true of Defendants Sinical or Woods, who have not been shown to be personally involved in the alleged Eighth Amendment deprivation.) [FN49]As the Second Circuit has explained,

> FN48.See Estelle v. Gamble, 429 U.S. 97, 106 (1976) ("[A] complaint that a physi-

cian has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."); *Chance v. Armstrong,* 143 F.3d 698, 703 (2d Cir.1998) ("It is well-established that mere disagreement over the proper treatment does not create a constitutional claim. So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation.").

> FN49. Even if the medical staff at Upstate C.F. did not adequately treat Plaintiff, there is no evidence that either Defendant Sinical (a correctional sergeant) or Defendant Woods (a correctional officer) had anything to do with such inadequate treatment.

It must be remembered that the State is not constitutionally obligated, much as it may be desired by inmates, to construct a perfect plan for [medical] care that exceeds what the average reasonable person would expect or avail herself of in life outside the prison walls. [A] correctional facility is not a health spa, but a prison in which convicted felons are incarcerated. Common experience indicates that the great majority of prisoners would not in freedom or on parole enjoy the excellence in [medical] care which plaintiff[ ] understandably seeks.... We are governed by the principle that the objective is not to impose upon a state prison a model system of [medical] care beyond average needs but to provide the minimum level of [medical] care required by the Constitution.... The Constitution does not command that inmates be given the kind of medical attention that judges would wish to have for themselves.... The essential test is one of medical necessity and not one simply of desirability.
*Dean v. Coughlin,* 804 F.2d 207, 215 (2d Cir.1986) [internal quotations and citations omitted].

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

As a result, I recommend that the Court dismiss Plaintiff's Eighth Amendment claim against Defendants Sinical, Woods, Buffham and Rushford for deliberate indifference to a serious medical need.

## C. Whether Plaintiff Has Failed to Establish (or Even State) an Eighth Amendment Claim Against Defendant Cook for Injuring Plaintiff's Fingers

Defendants argue that (1) Plaintiff has failed to establish the objective element of an Eighth Amendment excessive force claim because he has failed to establish that the incident in which his hand was (allegedly) caught in the "feed up hatch" caused him anything more than *de minimis* pain or injury, and (2) in any event, Plaintiff has failed to establish the subjective element of an Eighth Amendment excessive force claim because he has failed to establish that Defendant Cook acted maliciously and sadistically in (allegedly) closing the feed up hatch on Plaintiff's hands. (Dkt. No. 49, Part 3, at 17-18.) Plaintiff responds that (1) his pain and injuries were more than *de minimis* in that the injuries caused his hand to bleed and required the application of antibiotic ointment, and (2) Defendant Cook's malice and sadism are evidenced by the fact that he laughed after "slamming" the feed up hatch on Plaintiff's hand. (Dkt. No. 56, Mem. of Law, at 11-12.)

*7 Several problems exist with Plaintiff's argument. Plaintiff's argument regarding the nature of his hand pain and injuries is not supported by the available record. Indeed, the current record highlights the minimal nature of any pain or injury to Plaintiff's hand. Specifically, Plaintiff's medical records show that, approximately five and a half hours after the alleged incident with the feed up hatch at 6:15 a.m. on May 18, 2000, Plaintiff's hand was examined by Defendant Rushford and another nurse for his complaints of finger injury. After that examination, Defendant Rushford and the other nurse noted the following findings: (1) Plaintiff was moving all of his digits with purpose, and his hand exhibited a good range of motion; (2) his "capillary

refill" was "brisk," and his fingers were "pink & warm"; (3) there was no swelling or bleeding; (4) he had, on his left index and middle fingers, "pinhead sized" areas, which appeared to be old due to the fact that there were scabs present; and (5) he was not complaining of pain or discomfort.[FN50] As the Sixth Circuit found with regard to similar injuries sustained by an inmate after his hand was caught in a "feed up" hatch, I find that such injuries are, as a matter of law, *de minimis* for purposes of an Eighth Amendment excessive force claim. *See Owens v. Johnson,* No. 99-2094, 2000 U.S.App. LEXIS 15541, at *6 (6th Cir. June 23, 2000) (affirming district court's grant of summary judgment to defendants on inmate's Eighth Amendment claim because corrections officer's use of force in closing of "feed up tray" caused *de minimis* injury to inmate's hand).[FN51]

> FN50. (Dkt. No. 49, Part 6, at Ex. D-4, D-7 [Plf.'s medical records]; *compare* Dkt. No. 49, Part 4, ¶ 20 [Defs.' Rule 7.1 Statement, asserting facts at issue] *with* Dkt. No. 56, Plf.'s Rule 7.1 Response, ¶ 20 [not specifically controverting facts at issue].)

> FN51. *See also Hudson v. McMillian,* 503 U.S. 1, 9-10 (1992) ("That is not to say that every malevolent touch by a prison guard gives rise to a federal cause of action.... The Eighth Amendment's prohibition of 'cruel and unusual punishment' necessarily excludes from constitutional recognition *de minimis* uses of force, provided that the use of such force is not of a sort 'repugnant to the conscience of mankind.' "); *see, e.g., Outlaw v. Newkirk,* 259 F.3d 833, 839 (7th Cir.2001) (finding no Eighth Amendment violation where use of force caused superficial injury to prisoner's hand).

Of course, that does not end the Eighth Amendment inquiry, since the ultimate issue is whether a particular use of force was wanton and unnecessary-i.e., excessive. Therefore, the Court should also con-

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

sider "the need for application of force, the rela-
tionship between that need and the amount of force
used, [any] threat reasonably perceived by
[Defendant], and any effort made to temper the
severity of a forceful response." *Hudson v. McMil-
lian,* 503 U.S. 1, 7 (1992) [internal quotation marks
and citation omitted]; *see also Romano v. Howarth,*
998 F.2d 101, 105 (2d Cir.1993).

Here, the uncontroverted record evidence estab-
lishes the following facts: (1) at approximately 6:15
a.m. on May 18, 2000, Plaintiff's medical visit was
terminated because he had become "belligerent and
boisterous" and had "grabb[ed] at the feedup tray";
(2) after Defendant Cook had closed the feed up
hatch and walked away, Plaintiff complained that
his medication (apparently some aspirin) was stuck
in the feed up hatch; (3) Defendant Cook returned
and opened the feed up hatch so that Plaintiff could
retrieve his medication; (4) as Plaintiff was retriev-
ing his medication, he stated to Defendant Cook
words to the effect of "I'm gonna fuck you up, you
fucking cracker," whereupon Defendant Cook
closed the feed up hatch; and (5) during the final
closing of the feed up hatch, Plaintiff's hand was
struck by the feed up hatch.[FN52]

> FN52. *(See* Dkt. No. 49, Part 6, Exs. D-3,
> C-28, C-29, C-30, C-32; *compare*Dkt. No.
> 49, Part 4, ¶ 19 [Defs.' Rule 7.1 Statement,
> containing record citations supporting the
> facts asserted] *with*Dkt. No. 56, Plf.'s Rule
> 7.1 Response, ¶ 19 [not providing any re-
> cord citations in support of any denials of
> the facts asserted by Defendants]; *see
> also*Dkt. No. 8, ¶ 21 [Plf.'s Second Am.
> Compl., in which he acknowledged cursing
> at Def. Cook, calling him a "stupid fuck"];
> Dkt. No. 56, Plf.'s Affid. in Opp., ¶ 30
> [swearing that "as plaintiff reached for the
> medication left there by the nurse, Defend-
> ant Cook slammed the feed-up slot closed
> on his hand and then laughed," but not
> denying uttering abusive or menacing
> words to Def. Cook *before* Def. Cook

closed the feed-up slot, and basing his in-
ference that Def. Cook *intended* to catch
Plaintiff's hand in the feed-up slot solely
on the alleged fact that Def. Cook laughed
afterward].)

**\*8** It is undisputed that the feed up hatch eventually
needed to be closed. Plaintiff argues, rather, that (1)
Defendant Cook intentionally closed the feed up
hatch on Plaintiff's hand, and (2) indeed, Defendant
Cook "slammed" the feed up hatch, that is, he
closed the feed up hatch with unnecessary force.
Conspicuously missing from Plaintiff's argument is
any citation to a corroborating affidavit from one of
the "prisoners who [were] double-bunked on the
same gallery,"[FN53] or an inculpatory interrogatory
response or request-for-admission response from
Defendant Cook (or Defendant Rushford, who was
allegedly present at the time).[FN54] Plaintiff's sole
"evidence" that Defendant Cook intended to catch
Plaintiff's hand in the feed up hatch is Plaintiff's
brief sworn assertion that Defendant Cook
"laughed" after the incident.[FN55]While such
laughter, if true, would certainly be unkind, it
would not, under the circumstances, be unconstitu-
tional.

> FN53. (Dkt. No. 8, ¶ 16 [Plf.'s Second Am.
> Compl., referring to such other prisoners].)

> FN54. (Dkt. No. 8, ¶ 21 [Plf.'s Second Am.
> Compl., alleging that Defendant Rushford
> was present at the time in question].)

> FN55. (Dkt. No. 56, Plf.'s Affid. in Opp., ¶
> 30 [swearing that "as plaintiff reached for
> the medication left there by the nurse, De-
> fendant Cook slammed the feed-up slot
> closed on his hand and then laughed"].) I
> note that, because Plaintiff's Second
> Amended Complaint is not verified, it does
> not have the effect of an affidavit. *(See*
> Dkt. No. 8.)

This is because Defendant Cook's response to
Plaintiff's (alleged) injury is only one of the factors

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

to be considered under the above-described *Hudson* Eighth Amendment analysis. Among the other factors to be considered are the amount of force used and the need for that force (e.g., to prevent any threat reasonably perceived by Defendant). As discussed earlier, Plaintiff's medical records (which show only a minimal injury, if any, to Plaintiff's hand) indicate that the force used to close the feed up hatch had also been minimal.[FN56] Furthermore, the fact that Plaintiff was uttering menacing words at Defendant Cook at the time of the injury suggests that Defendant Cook closed the feed up hatch not with the intention of injuring Plaintiff's hand but the intention of blocking an aperture between himself and a convicted felon who was, at the time, harassing him (and arguably threatening him).[FN57]

> FN56.*See Owens,* 2000 U.S.App. LEXIS 15541, at *6 ("While not dispositive of the issue, de minimis injuries suggest de minimis use of force by defendants.").

> FN57. I recognize that Plaintiff was ultimately not convicted of "threatening" Defendant Cook pursuant to Disciplinary Rule 102.10 (only "harassing" Defendant Cook pursuant to Disciplinary Rule 107 .11).*(See* Dkt. No. 49, Part 6, Exs. C-28, C-29, C-30, C-31.) However, such an acquittal, which could have been for any number of reasons, does not mean that Defendant Cook did not, at the time in question, *reasonably* perceive Plaintiff's utterances to constitute a threat, for purposes of the above-described *Hudson* Eighth Amendment analysis.

Balancing the amount of force used and the need for force under the circumstances, as established by the available record, I find that no reasonable juror could find that Defendant Cook had violated Plaintiff's Eighth Amendment rights. I note that this Court reached a similar conclusion approximately a decade ago under analogous circumstances, involving a correction officer's accidentally closing of a "feed up" hatch on an inmate's hand at a time

when the inmate was not complying with the correction officer's directives. *See Boyd v. Selmer,* 842 F.Supp. 52, 56-57 (N.D.N.Y.1994) (McAvoy, J.).

As a result, I recommend that the Court dismiss Plaintiff's Eighth Amendment claim against Defendant Cook for injuring Plaintiff's fingers.

**D. Whether Plaintiff Has Failed to Establish (or Even State) a Fourteenth Amendment Claim Against Defendant Uhler for Being Biased During Plaintiff's Disciplinary Hearing**

Defendants argue that this claim should be dismissed for two reasons: (1) Plaintiff failed to exhaust his administrative remedies with respect to this claim in that he did not appeal Defendant Uhler's disciplinary hearing decision; and (2) Plaintiff has adduced no evidence that Defendant Uhler was so impartial as to present "a hazard of arbitrary decisionmaking." (Dkt. No. 49, Part 3, at 18-22 [Defs.' Mem. of Law].) However, Plaintiff responds to only the second argument. (Dkt. No. 56, Plf.'s Mem. of Law, at 13-14.)

**1. Failure to Exhaust Administrative Remedies**

**\*9** By failing to respond to Defendants' first argument (regarding Plaintiff's failure to exhaust his administrative remedies), Plaintiff may be deemed to have *consented* to that argument under Local Rule of Practice 7.1(b)(3).[FN58] Thus, Plaintiff's claim against those Defendants may be dismissed on that ground alone.[FN59] Of course, a pre-requisite for basing a decision to dismiss on this ground is a finding that Defendants have met their modest threshold burden [FN60] to demonstrate entitlement to the relief requested in their motion for summary judgment.[FN61] Here, I make such a finding.

> FN58.*See* N.D.N.Y. L.R. 7.1(b)(3) ("Where a properly filed motion is unopposed and the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

therein, the non-moving party's failure to file or serve any papers as this Rule requires shall be deemed as consent to the granting or denial of the motion, as the case may be, unless good cause is shown."); *cf.*Fed.R.Civ.P. 56(e) ("When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's *response* ... must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so *respond,* summary judgment, if appropriate, shall be entered against the adverse party.") [emphasis added].

FN59.*See, e.g., Beers v. GMC,* 97-CV-0482, 1999 U.S. Dist. LEXIS 12285, at *27-31 (N.D.N.Y. March 17, 1999) (McCurn, J.) (deeming plaintiff's failure, in his opposition papers, to oppose several arguments by defendants in their motion for summary judgment as consent by plaintiff to the granting of summary judgment for defendants with regard to the claims that the arguments regarded, under Local Rule 7.1[b][3] ).

FN60.*See Ciaprazi v. Goord,* 02-CV0915, 2005 WL 3531464, at *8 (N.D.N.Y. Dec. 22, 2005) (Sharpe, J.; Peebles, M.J.) (characterizing defendants' threshold burden on a motion for summary judgment as "modest") [citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323-324 (1986) ].

FN61.*See* N.D.N.Y. L.R. 7.1(b)(3) ("Where a properly filed motion is unopposed *and the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein,* the non-moving party's failure to file or serve any papers as this Rule requires shall be deemed as consent to the

granting or denial of the motion, as the case may be, unless good cause is shown.") [emphasis added].

Specifically, I find that Defendants have adduced evidence, which is not controverted by Plaintiff, establishing the following facts: (1) Plaintiff was issued three misbehavior reports during the time in question-one by Defendant Cook, one by Sgt. Zerniak, and one by Defendant Buffham; (2) Lt. DuBray served as the hearing officer with respect to the misbehavior report issued by Defendant Cook, and Defendant Uhler served as the hearing officer with respect to the misbehavior reports issued by Sgt. Zerniak and Defendant Buffham; (3) in this action, Plaintiff challenges only the disciplinary hearing conducted by Defendant Uhler with respect to the misbehavior report issued by Defendant Buffham (since the disciplinary hearing conducted by Defendant Uhler with respect to the misbehavior report issued by Sgt. Zerniak did not result in a finding of guilt); and (4) while Plaintiff appealed the finding of guilt reached by Lt. DuBray (with respect to the misbehavior report issued by Defendant Cook), Plaintiff never appealed the finding of guilt reached by Defendant Uhler with respect to the misbehavior report issued by Defendant Buffham.[FN62]

FN62.*(Compare*Dkt. No. 49, Part 4, ¶¶ 15, 16, 19, 22-25, 27 [Defs.' Rule 7.1 Statement, containing record citations supporting the facts asserted] *with*Dkt. No. 56, Plf.'s Rule 7.1 Response, ¶¶ 15, 16, 19, 22-25, 27 [admitting and/or not specifically denying the relevant facts asserted by Defendants, and in any event providing no record citations for any denials of those facts].)

The Prison Litigation Reform Act of 1995 ("PLRA") requires that prisoners who bring suit in federal court must first exhaust their available administrative remedies: "No action shall be brought with respect to prison conditions under § 1983... by a prisoner confined in any jail, prison, or other cor-

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

rectional facility until such administrative remedies as are available are exhausted."[FN63] The Department of Correctional Services ("DOCS") has available a well-established three-step grievance program:

FN63. 42 U.S.C. § 1997e.

First, an inmate is to file a complaint with the Grievance Clerk. An inmate grievance resolution committee ("IGRC") representative has seven working days to informally resolve the issue. If there is no resolution, then the full IGRC conducts a hearing and documents the decision. Second, a grievant may appeal the IGRC decision to the superintendent, whose decision is documented. Third, a grievant may appeal to the central office review committee ("CORC"), which must render a decision within twenty working days of receiving the appeal, and this decision is documented.[FN64]

FN64. White v. The State of New York, 00-CV-3434, 2002 U.S. Dist. LEXIS 18791, at *6 (S.D.N.Y. Oct 3, 2002) (citing N.Y. Comp.Codes R. & Regs. Tit. 7, § 701.7).

DOCS also has a separate and distinct administrative appeal process for inmate misbehavior hearings:

1. For Tier III superintendent hearings, the appeal is to the Commissioner's designee, Donald Selsky, D.O.C.S. Director of Special Housing/Inmate Disciplinary Program, pursuant to 8 N.Y.C.R.R. § 254.8;

*10 2. For Tier II disciplinary hearings, the appeal is to the facility Superintendent pursuant to 7 N.Y.C.R.R. § 253.8; and

3. For Tier I violation hearings, the appeal is to the facility Superintendent or a designee pursuant to 7 N.Y.C.R.R. § 252.6.

Individual decisions or dispositions regarding inmate misbehavior reports and hearings, or inmate grievances, are not considered grievable matters;

however, the policies, rules and procedures of the disciplinary and grievance programs may be the subject of a grievance.[FN65] Generally, if a prisoner has failed to follow each of these steps prior to commencing litigation, he has failed to exhaust his administrative remedies.[FN66]

FN65. See 7 N.Y.C.R.R. § 701.3(e)(1), (2); see also N.Y. Dep't Corr. Serv. Directive No. 4040 at III.E.

FN66. Rodriguez v. Hahn, 209 F.Supp.2d 344, 347-48 (S.D.N.Y.2002); Reyes v. Punzal, 206 F.Supp.2d 431, 433 (W.D.N .Y.2002).

However, the Second Circuit recently held that a three-part inquiry is appropriate where a defendant contends that a prisoner has failed to exhaust his available administrative remedies, as required by the PLRA.[FN67] First, "the court must ask whether [the] administrative remedies [not pursued by the prisoner] were in fact 'available' to the prisoner."[FN68] Second, if those remedies were available, "the court should ... inquire as to whether [some or all of] the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it ... or whether the defendants' own actions inhibiting the [prisoner's] exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense."[FN69] Third, if the remedies were available and some of the defendants did not forfeit, and were not estopped from raising, the non-exhaustion defense, "the Court should consider whether 'special circumstances' have been plausibly alleged that justify the prisoner's failure to comply with the administrative procedural requirements."[FN70]

FN67. See Hemphill v. State of New York, 380 F.3d 680, 686, 691 (2d Cir.2004).

FN68. Hemphill, 380 F.3d at 686 (citation omitted).

FN69. Id. [citations omitted].

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

> FN70.*Id.* [citations and internal quotations omitted].

Here, I can find no evidence in the record (or even an allegation or argument by Plaintiff) that (1) the administrative remedies not pursued by Plaintiff were in fact "not available" to Plaintiff, (2) any of the Defendants forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it, or any of the Defendants took actions that inhibited Plaintiff's exhaustion of remedies such as to estop those Defendants from raising Plaintiff's failure to exhaust as a defense, or (3) "special circumstances" exist justifying Plaintiff's failure to comply with the administrative procedural requirements.

As a result, I recommend that the Court dismiss Plaintiff's Fourteenth Amendment claim against Defendant Uhler due to Plaintiff's failure to exhaust his available administrative remedies. Because sufficient grounds exist upon which to base a dismissal of this claim, it is not necessary to address Defendants' alternative argument that Plaintiff has adduced no evidence that Defendant Uhler was so impartial as to present "a hazard of arbitrary decisionmaking." However, in the interest of thoroughness, I will briefly do so.

### 2. Failure to Adduce Evidence of Partiality

*11 Defendants recite the correct legal standard governing claims of bias against prison disciplinary hearing officers. *(See* Dkt. No. 49, Part 3, at 21-22 [Defs.' Mem. of Law].) Applying this standard, Defendants argue that Plaintiff's claim of improper bias against Defendant Uhler is based solely on the fact that Defendant Uhler found against Plaintiff on two of the five charges contained in Defendant Buffham's misbehavior report. (Dkt. No. 49, Part 3, at 22 [Defs.' Mem. of Law].) Plaintiff responds that his claim of improper bias is not only based on the fact that Defendant Uhler found against Plaintiff on two of the five charges; it is also based on the fact that Defendant Uhler's finding of guilt against Plaintiff on those two charges was completely un-

supported by the evidence. (Dkt. No. 56, Plf.'s Mem. of Law, at 13-14.)

There are two problems with Plaintiff's argument. First, he has adduced no evidence that Defendant Uhler's finding of guilt was completely unsupported by the evidence. Indeed, the record completely contradicts Plaintiff's argument.[FN71] Second, even if Plaintiff had adduced such evidence, he has adduced no evidence that Defendant Uhler's finding of guilt was caused by some type of bias (e.g., a conflict of interest, prejudice, etc.) rather than being caused by simple error. His argument that the (allegedly) unsupported ruling itself constitutes evidence of bias is wholly circular and conclusory. Plaintiff does not even specifically allege that Defendant Uhler suppressed evidence, distorted testimony, or failed to inform Plaintiff of the charges or evidence. In any event, the record evidence would contradict such an allegation.[FN72]

> FN71.*(See, e.g.,*Dkt. No. 49, Part 6, at C-24 [stating the evidence upon which Def. Uhler relied when reaching his determination of guilt], C-26 [indicating that Def. Buffham testified at the hearing].)

> FN72.*(See, e.g.,*Dkt. No. 49, Part 6, at C-26 [indicating that Plf. did not request any witnesses, and that Def. Buffham testified at the hearing], C-23 [indicating that misbehavior report had been served on Plf.].)

As a result, I recommend that, in the alternative, the Court dismiss Plaintiff's Fourteenth Amendment claim against Defendant Uhler due to Plaintiff's failure to adduce any evidence of improper bias by Defendant Uhler.

**ACCORDINGLY,** it is

**RECOMMENDED** that Defendants' motion for summary judgment (Dkt. No. 49) be *GRANTED.*

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten days within which to file written objections to the foregoing report. Such

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE AP-PELLATE REVIEW.** *Roldan v. Racette.* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Sec'y of Health and Human Svcs..* 892 F.2d 15 [2d Cir.1989] ); 28 U.S.C. § 636(b); Fed.R.Civ.P. 6(a), 6(e), 72.

N.D.N.Y.,2006.
Saunders v. Ricks
Slip Copy, 2006 WL 3051792 (N.D.N.Y.)

END OF DOCUMENT

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

**TAB 3**

Only the Westlaw citation is currently available.

United States District Court,
N.D. New York.
Louis TATTA, Plaintiff,
v.
Dr. Lester WRIGHT, Associate Commissioner of
Health Services for D .O.C.S., Defendant.
**No. 05-CV-0071 (GLS/DRH).**

Oct. 10, 2007.

Louis Tatta, Napanoch, NY, pro se.

Hon. Andrew M. Cuomo, Attorney General for the
State of New York, James J. Seaman, Esq., Assist-
ant Attorney General, of Counsel, Albany, NY, for
the Defendant.

### *MEMORANDUM-DECISION AND ORDER*

GARY L. SHARPE, U.S. District Judge.

### I. *Introduction*

*1 Plaintiff *pro se* Louis Tatta ("Tatta") brings this
action pursuant to 42 U.S.C. § 1983. Tatta alleges
that defendant Dr. Lester Wright ("Dr.Wright"),
DOCS Chief Medical Officer, violated his constitu-
tional rights under the First, Eighth, and Fourteenth
Amendments. *See Am. Compl.; Dkt. No 21.*Dr.
Wright's motion for summary judgment was re-
ferred to Magistrate Judge David R. Homer for re-
port and recommendation.[FN1]*See*Dkt. No. 23;*see
also*28 U.S.C. § 636(b)(1)(A), (B); N.D.N.Y.R.
723(c); Gen. Order No. 12, § D(1)(G). Judge
Homer recommended that the complaint be dis-
missed in its entirety.

> FN1. The Clerk is directed to append
> Judge Homer's Report-Recommendation to
> this decision, and familiarity is presumed.

Pending are Tatta's specific, timely objections to
Judge Homer's recommendation that the Eighth
Amendment claim be dismissed, and that all of
Tatta's claims be dismissed under the alternate the-
ory of qualified immunity. The court reviews these
objections *de novo* and the remainder of the report
for clear error. *See Objection, Dkt. No. 29.*Upon
careful consideration of the arguments, the relevant
parts of the record, the applicable law, and the addi-
tional reasons cited, the court adopts the Report-
Recommendation.

### II. *Standard of Review*

A party's objection to the findings and recommend-
ations of the Magistrate Judge must be filed within
10 days of receiving the Magistrate's recommenda-
tion and order. *See Almonte v. N.Y. State Div. of
Parole,* No. 9:04-CV-484, 2006 WL 149049, at
*2-6 (N.D.N.Y. Jan. 18, 2006). Objections must be
written and specific, which is to say they must
"specify the findings and recommendations to
which [the party] object[s], and the basis for their
objections."*Id.* Objections must also be based on ar-
guments raised initially before the Magistrate
Judge. *Id.*

Those recommendations and findings as to which
the party has made timely, specific objection based
on arguments raised before the Magistrate Judge
must be reviewed *de novo. Id.* However, those re-
commendations and findings as to which the party
has not made timely and/or specific objection are
not entitled to any review, although the court may,
in its discretion, elect to conduct a review nonethe-
less. *Id.* While a court may conduct a discretionary
review under any standard it sees fit, this court has
consistently applied a "clearly erroneous" standard.
*Id.* Under this standard a recommendation or find-
ing of the Magistrate will be overturned only if "the
court determines that there is a mistake of fact or
law which is obvious and affects substantial
rights."*Id* . Objections based on arguments not

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

raised as a matter of first impression before the Magistrate Judge are also not entitled to any review. *Id.* In such a situation the court may again elect to conduct a discretionary review, this time using a *de novo* standard as a matter of necessity, since the Magistrate has not had an opportunity to pass on the argument. *Id.*

### III. *Discussion*

### A. *Equal Protection and First Amendment Claims*

**\*2** Judge Homer has recommended that Dr. Wright's motion for summary judgment be granted on Tatta's: (1) Equal Protection claim because it is based entirely on inadmissible hearsay, fails to allege different treatment between persons similarly situated, and puts forth no evidence of discriminatory animus; and (2) First Amendment claim because Tatta cannot "demonstrate he suffered any adverse action as a result of filing his grievances." *See R & R pgs. 10-13, Dkt. No. 28.* Since Tatta has failed to object to Judge Homer's recommendations on these claims in any form, he has procedurally defaulted. The court adopts Judge Homer's recommendations of dismissal on the Equal Protection and First Amendment claims in their entirety as they are devoid of clear error.

### B. *Eighth Amendment Claim*

Tatta has specifically and timely objected to Judge Homer's recommendation that Wright's motion for summary judgment on Tatta's Eighth Amendment claim be granted. Thus, the court reviews the recommendation *de novo.*

An Eighth Amendment claim for denial of medical care under § 1983 requires that the prisoner put forth proof of "deliberate indifference to [his] serious medical needs" by the defendant. *Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir.1998) (quoting *Estelle v. Gamble,* 429 U.S. 97, 104 (1976))." '[M]ere negligence in giving or failing to

supply medical treatment alone' does not constitute a violation of the Eighth amendment ...." *Lugo v. Senkowski,* 114 F.Supp.2d 111, 115 (N.D.N.Y.2000) (quoting *Church v. Hegstrom,* 416 F.2d 449, 450-51 (2d Cir.1969). The complaint "must suggest the possibility of some 'conduct that shocks the conscience,' or [a] 'barbarous act.' " *Church v. Hegstrom,* 416 F.2d 449, 450-51 (2d Cir.1969) (quoting *Rochin v. California,* 342 U.S. 165, 172 (1952); *Robinson v. California,* 370 U.S. 660, 676 (1962)).

Here, there is no dispute that Hepatitis C is a serious medical condition. Dr. Wright instead moves for summary judgment on the basis that Tatta has failed to show deliberate indifference to such condition. Tatta alleges that Dr. Wright failed to retreat his Hepatitis C with Pegylated Interferon in combination with Ribavirin ("P Interferon"), for twenty-two months after Tatta was treated ineffectively with non-Pegylated Interferon with Ribavirin ("N Interferon"). *See Comp. ¶¶ 1, 18, Dkt. No. 21.* While retreatment with P Interferon was not FDA approved, Tatta asserts that "there was an exception to DOCS policy [that allowed approval of] medical treatments or re-treatments with non FDA approved drugs." *See Obj. ¶ 9, Dkt. No. 29.* It is Dr. Wright's failure to resort to such exception that Tatta claims exhibits deliberate indifference to his medical condition.

This court agrees with Judge Homer's finding that "[i]t was neither unreasonable nor indifferent for Dr. Wright to refuse a treatment not approved by the FDA." *See R & R pg. 8, Dkt. No. 28.* While there may have been an exception in DOCS policy which would have allowed Dr. Wright to treat Tatta with P Interferon, it was available only "in rare cases" where there were "circumstances that permit[ted] exceptions to the general policy." *See Resp. in Opp. to MSJ, Affirmation pgs. A66-67; Dkt. No. 24.* Special circumstances that would warrant such an exception were not presented to Dr. Wright when the initial request for retreatment with P Interferon was put before him. *Id.* Subsequently, when he became

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

aware of such circumstances, Dr. Wright approved
Tatta's P Interferon retreatment. *Id.*

*3 The decisions Dr. Wright made regarding treat-
ment of Tatta's condition did not exhibit a deliber-
ate indifference to Tatta's medical needs, but rather
reasonable medical judgments based the informa-
tion before him at the time. Viewing the facts in a
light most favorable to Tatta, there is simply a
dearth of any allegations of conduct that would rise
to the level required to establish an Eighth Amend-
ment violation.

### C. *Qualified Immunity*

Because Tatta has specifically objected to Judge
Homer's finding that Dr. Wright was entitled to
qualified immunity, the court reviews this finding
*de novo.*

Qualified immunity protects government officials
from civil liability provided "their conduct does not
violate clearly established statutory or constitution-
al rights of which a reasonable person would have
known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818
(1982). The court is in accord with the finding of
Judge Homer that Dr. Wright is entitled to qualified
immunity as there is no statutory or constitutional
violation.

### III. *Conclusion*

Having reviewed the Report-Recommendation, and
Tatta's specific objections *de novo,* the court adopts
Judge Homer's recommendation that the complaint
be dismissed in its entirety for the reasons he artic-
ulated and for the additional reasons articulated by
this court.

**WHEREFORE,** for the foregoing reasons, it is
hereby

**ORDERED** that Judge Homer's August 17, 2007
Report-Recommendation (*Dkt. No. 28* ) is accepted
and adopted in its entirety; and it is further

**ORDERED** that the Clerk of the Court enter judg-
ment and close this case; and it is further

**ORDERED** that the Clerk of Court provide copies
of this Order to the parties.

**IT IS SO ORDERED.**

### REPORT-RECOMMENDATION AND ORDER[FN1]

> FN1. This matter was referred to the un-
> dersigned for report and recommendation
> pursuant to 28 U.S.C. § 636(b) and
> N.D.N.Y.L.R. 72.3(c).

DAVID R. HOMER, U.S. Magistrate Judge.

Plaintiff pro se Louis Tatta ("Tatta"), an inmate in
the custody of the New York State Department of
Correctional Services ("DOCS"), brings this action
pursuant to 42 U.S.C. § 1983 alleging that defend-
ant Dr. Lester Wright ("Dr.Wright"), DOCS Chief
Medical Officer, violated his constitutional rights
under the First, Eighth, and Fourteenth Amend-
ments. Am. Compl. (Docket No. 21). Presently
pending is Dr. Wright's motion for summary judg-
ment pursuant to Fed.R.Civ.P. 56. Docket No.
22.Tatta opposes the motion. Docket No. 24.For the
following reasons, it is recommended that Dr.
Wright's motion be granted.

### I. Background

The facts are presented in the light most favorable
to Tatta as the non-moving party. *See Ertman v.
United States,* 165 F.3d 204, 206 (2d Cir.1999).

At all relevant times, Tatta was an inmate in the
custody of DOCS. In February 2000, Tatta was dia-
gnosed with Hepatitis C.[FN2]*See* Tatta Dep.
(Seaman Aff. (Docket No. 22), Ex. A) at 28. On Ju-
ly 25, 2000, Dr. Raelene Milicevic examined Tatta
and recommended to Dr. Wright that Tatta begin
treatment with a combination of non-Pegylated In-
terferon with Ribavirin ("Rebetron") to treat his

Hepatitis C. *See* Wright Decl. (Docket No. 22) at ¶ 28 & Ex. C. Later that same day, Dr. Wright approved Dr. Milicevic's request to treat Tatta with Rebetron. Wright Decl. at ¶ 29. On December 4, 2000, Tatta was examined via telemed by Dr. Rogers, a gastroenterologist. *See* Seaman Aff., Ex. C at 9. Dr. Rogers discussed treating Tatta with Rebetron, but that Tatta preferred to wait to see if the Food and Drug Administration ("FDA") would approve Pegylated Interferon [FN3] for treating Hepatitis. *Id.* However, in late December 2000, Tatta consented to treatment with non-Pegylated Interferon with Ribavirin and on or about January 6, 2001, Tatta began receiving treatment. *See* Seaman Aff., Ex. C at 1-2, 10, 36. The full course of treatment with non-Pegylated Interferon with Ribavirin is administered over forty-eight weeks. *See* Wright Decl. at ¶ 24.

> FN2. Hepatitis C is "a chronic viral liver disease that can increase the risk of liver cancer and can lead to inflammation, scarring, and cirrhosis of the liver. Cirrhosis ultimately can lead to liver failure and death." *Pabon v. Wright,* 459 F.3d 241, 246 (2d Cir.2006).

> FN3."Pegylated Interferon tends to be metabolized more slowly than non-Pegylated Interferon. As a result, it tends to remain in the body for longer periods of time."Wright Decl. at ¶ 20.

**\*4** On or about January 19, 2001, the FDA approved the use of Pegylated Interferon for naive patients, *i.e.,* patients whose Hepatitis had not previously been treated with Interferon. *See* Seaman Aff., Ex. B at 1-4. On July 9, 2001, Dr. Rogers examined Tatta and noted that even though Tatta had been treated with Rebetron for the past six months, the "rebetron has failed" and should be discontinued. Seaman Aff, Ex. C at 14. Dr. Rogers also noted that Tatta should return in six months for consideration of newer medication to treat his Hepatitis. *Id.* Per Dr. Rogers' request, Tatta's treatment with Rebetron was discontinued on July 12, 2001.

*See* Seaman Aff., Ex. C at 3, 14. On or about August 7, 2001, the FDA approved the use of Pegylated Interferon with Ribavirin for naive patients. *See* Seaman Aff., Ex. B at 5-7; *see also* Wright Decl. at ¶ 10, 18-19.

On January 22, 2002, Tatta wrote Dr. Wright a letter seeking the status of his follow-up examination with Dr. Rogers. *See* Wright Decl., Ex. D; *see also* Am. Compl. at ¶ 2. Tatta also requested that if Pegylated Interferon with Ribavirin was not currently available to DOCS inmates, he be treated with Pegylated Interferon "as a maintenance therapy." *Id.* Dr. Wright forwarded Tatta's letter to Dr. Marc Stern for investigation and handling. *See* Wright Decl. at ¶¶ 31-32. On September 19, 2002, Dr. Stern responded to Tatta's January 2002 letter, noting that the re-treatment of patients such as Tatta with Pegylated Interferon was still deemed experimental by the FDA and, thus, would not be approved by DOCS. *See* Wright Decl., Ex. E. During this time, Tatta was examined by Dr. Rogers, who noted that "[i]f approved by DOC[S]," Tatta may be retreated with Pegylated Interferon in combination with Ribavirin. *See* Seaman Aff., Ex. C at 15.

On April 23, 2002, Tatta was examined by Dr. Douglas Fish, an infectious disease specialist, who agreed with Dr. Rogers' recommendation for re-treating Tatta with Pegylated Interferon in combination with Ribavirin. *See* Seaman Aff., Ex. C at 8, 16. Shortly thereafter, Dr. Mikhail Gusman, a physician at Eastern Correctional Facility ("Eastern"), contacted Dr. Wright to request approval to retreat Tatta's Hepatitis C with the combination therapy of Pegylated-Interferon with Ribavirin. *See* Wright Decl., Ex. H at 1-3; *see also* Am. Compl. at ¶ 4. Dr. Wright informed Dr. Gusman that Pegylated Interferon was not approved by the FDA for retreatment of Hepatitis C. *See* Wright Decl., Ex. H at 3-4.

On August 28, 2003, Dr. Carl Koenigsmann, a DOCS Regional Director, sent an email to Dr. Milicevic at Eastern in response to a letter from Tatta requesting re-treatment of his Hepatitis. *See* Seaman Aff., Ex. C at 37. Dr. Koenigsmann noted

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Case 3-07-cv-00096-TJM-GJD   Document 53-3   Filed 02/27/09   Page 34 of 38

that based on the new practice guidelines, Tatta's condition may be treatable with combination therapy of Pegylated Interferon with Ribavirin.*Id.* On September 18, 2003, Dr. Kathpalia, a psychiatrist, approved the recommended combination therapy of Pegylated Interferon with Ribavirin. *See* Seaman Decl., Ex. C at 17. On December 16, 2003, Dr. Milicevic submitted a request to Dr. Wright seeking approval to retreat Tatta's Hepatitis C with Pegylated Interferon in combination with Ribavirin. *See* Wright Decl., Ex. K. Shortly thereafter, Dr. Wright approved the request. *Id.* On January 6, 2004, Tatta's retreatment began with the combination therapy of Pegylated Interferon and Ribavirin. *See* Seaman Aff., Ex. C at 7; *see also* Am. Compl. at ¶¶ 18-19. This action followed.

## II. Discussion

*5 Tatta asserts three causes of action against Dr. Wright alleging that he was (1) deliberately indifferent to his serious medical needs in violation of the Eighth Amendment, (2) discriminated against him because of his HIV status in violation of the Fourteenth Amendment, and (3) retaliated against him for filing grievances in violation of the First Amendment. *See* Am. Compl. at 5. Dr. Wright seeks judgment on all claims.

### A. Standard

A motion for summary judgment may be granted if there is no genuine issue as to any material fact if supported by affidavits or other suitable evidence and the moving party is entitled to judgment as a matter of law. The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Facts are material if they may affect the outcome of the case as determined by substantive law. *Anderson v. Liberty Lobby,* 477 U.S. 242, 248 (1986). All ambiguities are resolved

and all reasonable inferences are drawn in favor of the non-moving party. *Skubel v. Fuoroli,* 113 F.3d 330, 334 (2d Cir.1997).

The party opposing the motion must set forth facts showing that there is a genuine issue for trial. The non-moving party must do more than merely show that there is some doubt or speculation as to the true nature of the facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment. *Gallo v. Prudential Residential Servs.* 22 F.3d 1219, 1223-24 (2d Cir.1994); *Graham v. Lewinski,* 848 F.2d 342, 344 (2d Cir.1988). When, as here, a party seeks summary judgment against a pro se litigant, a court must afford the non-movant special solicitude. *Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 477 (2d Cir.2006). However, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. *Anderson,* 477 U.S. at 247-48.

### B. Eighth Amendment

Tatta contends that Dr. Wright intentionally delayed approval of his retreatment of Hepatitis C for twenty-two months. *See* Am. Compl. at 5; *see also id.* at ¶ 18.Liberally construed, Tatta also contends that "[Dr. Wright's] medical staff at Eastern ... intentionally failed on numerous occasions to provide [Tatta] with his medications in a timely fashion."*See* Am. Compl. at 5.

A prisoner advancing an Eighth Amendment claim for denial of medical care must allege and prove deliberate indifference to a serious medical need. *Wilson v. Seiter,* 501 U.S. 294, 297 (1991); *Hathaway v. Coughlin,* 37 F.3d 63, 66 (2d Cir.1994). More than negligence is required "but less than conduct undertaken for the very purpose of causing harm." *Hathaway,* 37 F.3d at 66. The test for a §

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

1983 claim is twofold. First, the prisoner must show that there was a sufficiently serious medical need. *Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir.1998). Second, the prisoner must show that the prison official demonstrated deliberate indifference by having knowledge of the risk and failing to take measures to avoid the harm. *Id.*"[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer v. Brennan,* 511 U.S. 825, 844 (1994).

*6 A serious medical need is " 'one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention.' " *Camberos v. Branstad,* 73 F.3d 174, 176 (8th Cir.1995) (quoting *Johnson v. Busby,* 953 F.2d 349, 351 (8th Cir.1991)). An impairment that a reasonable doctor or patient would find important and worthy to treat, a medical condition that affects the daily activities of an individual, or the existence of chronic and substantial pain are all factors that are relevant in the consideration of whether a medical condition was serious. *Chance,* 143 F.3d at 702-03. Here, Tatta's Hepatitis C virus constitutes a serious medical need.[FN4]*See Johnson v. Wright,* 234 F.Supp.2d 352, 360 (S.D.N.Y.2002) (citing cases).

> FN4. In his memorandum of law, Dr. Wright does not appear to dispute the contention that Tatta's Hepatitis C constitutes a serious medical need. *See* Def. Mem. of Law (Docket No. 22) at 2-7.

Dr. Wright contends, however, that Tatta has failed to meet the deliberate indifference requirement of his claim. Deliberate indifference requires the prisoner to prove that the prison official knew of and disregarded the prisoner's serious medical needs. *Id.* at 702.Mere disagreement over proper treatment does not create a constitutional claim as long as the treatment was adequate. *Id.* at 703.Allegations of negligence or malpractice do not constitute deliber-

ate indifference unless the malpractice involved culpable recklessness. *Hathaway v. Coughlin,* 99 F.3d 550, 553 (2d Cir.1996). Tatta contends that Dr. Wright should have followed the recommendations of two outside specialists and Dr. Gusman, who prescribed Pegylated-Interferon with Ribavirin for retreatment. *See* Am. Compl. at ¶¶ 9, 18. However, "[i]t is well-established that mere disagreement over the proper treatment does not create a constitutional claim" so long as the treatment was adequate. *Chance,* 143 F.3d at 703;*see also McKenna v. Wright,* No. Civ. 01-6571(WK), 2002 WL 338375, at *8 (S.D.N.Y. Mar. 4, 2002) ("courts have repeatedly held that dispute between two doctors as to the proper course of medical treatment will not give rise to an Eighth Amendment violation") (citations and internal quotations omitted).

Here, there is no evidence that the medical treatment Tatta received between Dr. Wright's initial denial of Tatta's April 2002 request to be retreated with Pegylated Interferon in combination with Ribavirin and his subsequent approval of Tatta's request in December 2003 was inadequate. Further, Dr. Wright has repeatedly stated that he initially refused to re-treat Tatta with Pegylated-Interferon with Ribavirin because, even though recommended by Drs. Fish and Rogers, the treatment had yet to gain FDA approval. *See*Wright Decl. at ¶¶ 18, 35-39. It was neither unreasonable nor indifferent for Dr. Wright to refuse a treatment not approved by the FDA. Thus, Tatta has failed to demonstrate that Dr. Wright was deliberately indifferent to his serious medical needs. *See United States ex rel. Hyde v. McGinnis,* 429 F.2d 864, 867-68 (2d Cir.1970) (holding that inmates do not have the right to the medication of their choice).

*7 As to Tatta's allegation that Eastern's medical department intentionally failed to provide him with his medications in a timely fashion, this contention is without merit. Tatta contends that he was temporarily denied the following medications: Pegylated-Interferon, Glucerna (a dietary supplement), and Epogen (for anemia).*See* Seaman Aff., Ex. B at

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

8-24. However, it is undisputed that Tatta's temporary delays in receiving his medications did not seriously affect his health.[FN5] *See* Def. Statement of Material Facts (Docket No. 22) at ¶¶ 55, 61; Pl. Mem. of Law at ¶¶ 18, 21. Further, Tatta offers only vague, conclusory allegations to show that the temporary delays in administering his medications presented a substantial risk of harm. Thus, Tatta has failed to offer any evidence to demonstrate that the temporary delay in receiving his medications caused any serious harm, much less that Dr. Wright was in any way deliberately indifferent to Tatta's serious medical needs. *See Pierre v. County of Broome,* No. Civ. 05-332(TJM), 2007 WL 625978, at *5-6 (N.D.N.Y. Feb. 23, 2007).

> FN5. Although Tatta contends that the delays in distributing Glucerna caused him to feel fatigued and weak, these temporary conditions hardly constitute a serious medical need. See Pl. Reply Statement of Facts (Docket No. 24) at ¶ 21.

Therefore, it is recommended that Dr. Wright's motion on this ground be granted.

### C. Equal Protection

Liberally construed, Tatta's second cause of action alleges that Dr. Wright violated his equal protection rights under the Fourteenth Amendment when Tatta was treated differently from another inmate, Robert Wolley, whom Tatta contends was accorded the treatment sought by Tatta. *See* Am. Compl. at ¶ 5, 10-13.

The Fourteenth Amendment's Equal Protection Clause mandates equal treatment under the law. Essential to that protection is the guarantee that similarly situated persons be treated equally. *City of Cleburne, Tex. v. Cleburne Living Ctr.,* 473 U.S. 432, 439 (1985)."In order to establish an equal protection violation, the plaintiffs must show that they were treated differently than other people in similar circumstances and must establish that such unequal

treatment was the result of intentional and purposeful discrimination." *Myers v. Barrett,* No. Civ. 95-1534(RSP/GJD), 1997 WL 151770, at *3 (N.D.N.Y. Mar. 28, 1997). In addition, a valid equal protection claim may be brought by a "class of one" "where the plaintiff alleges that she [or he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."*See Village of Willowbrook v. Olech,* 528 U.S. 562, 564 (2000); *Neilson v. D'Angelis,* 409 F.3d 100, 105 (2d Cir.2005).

Tatta's equal protection claim fails for at least three reasons. First, The evidence offered by Tatta to support this claim consists entirely of inadmissible hearsay information concerning Wooley's medical condition and treatment. *See* Am. Compl. at ¶¶ 11-13. Under Rule 56(e), the party opposing a motion for summary judgment must raise a material question of fact through affidavits "made"on personal knowledge." A statement, as here, asserting the existence of facts not personally known to the declarant may not be considered. *See Patterson v. County of Oneida. N.Y.,* 375 F.3d 206, 219 (2d Cir.2004) (holding that hearsay in affidavit which would be inadmissible in evidence at trial could not be considered on motion for summary judgment). Because Tatta's hearsay assertions regarding Wooley's medical condition and treatment would be inadmissible as hearsay if offered at trial, they may not be considered on this motion. Since this presents the only genuine issue of fact on this claim, Tatta's claim on this ground should be denied.

*8 Second, even if Tatta's statements about Wooley's condition and treatment are considered, there is insufficient evidence offered by Tatta to determine that Tatta and Wooley were similarly situated. For example, it appears from the amended complaint that Tatta never responded medically to the treatment he received while Wooley responded medically for a period of one year before relapsing. Am. Compl. at ¶ 12. The undisputed fact that

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Wooley responded medically to the initial treatment while Tatta did not supports Dr. Wright's differentiated treatment of the two inmates and defeats Tatta's claim that the two inmates were similary situated. Tatta's equal protection claim, therefore, also fails for this reason.

Finally, even assuming that Tatta's hearsay assertions should be considered and credited, and assuming that Tatta and Wooley were similarly situated but treated differently, there is no evidence that Dr. Wright's different treatment of Tatta was motivated by discriminatory animus. *See Douglas v. Stanwick*, 93 F.Supp.2d 320, 325 (W.D.N.Y.2000) (Larimer, J.) ("Not every physician will treat every ailment in exactly the same manner."). As noted, there existed a rational basis for Dr. Wright to treat Tatta and Wooley differently based on their differing responses to prior treatment. The record contains no evidence to refute that Dr. Wright's different treatment of Tatta was motivated by anything other than this medical fact. Tatta's claim should also be denied for this reason.

Therefore, it is recommended that Dr. Wright's motion on this ground be granted.

### D. Retaliation

In his third cause of action, Tatta contends that "in retaliation for plaintiff's filings of numerous grievances against the medical department, defendant's medical staff at Eastern ... intentionally failed on numerous occasions to provide the plaintiff with his medications in a timely fashion as prescribed by the facility doctor ...." Am. Compl. at 5.

In order to prevail on a retaliation claim, a plaintiff must first assert that his conduct was constitutionally protected and that this conduct was a "substantial factor" that caused the adverse action against plaintiff. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977). The burden then shifts to the defendant to show that by a preponderance of the evidence, the adverse action would have resulted even in the absence of the protected conduct. *Id.; see also Dawes v. Walker*, 239 F.3d 489, 492 (2d. Cir.2001), *overruled on other grounds, Swierkiewicz v. Sorema*, 534 U.S. 506 (2002). Retaliation claims are actionable because the conduct may tend to chill an individual's exercise of constitutional rights. *Dawes*, 239 F.3d at 491. However, courts must view retaliation claims with care and skepticism to avoid judicial intrusion into prison administration matters. *Id.*

Here, Tatta's filing of grievances were clearly assertions of a constitutional right protected by the First Amendment. *See Graham v. Henderson*, 89 F.3d 75, 80 (2d Cir.1996). Tatta claims that the adverse action which resulted from this conduct was the intentional delay of providing him with his medications. To constitute adverse action, a plaintiff must establish that the action would deter a similarly situated individual from exercising his or her constitutional rights. *Dawes*, 239 F.3d at 491. It is reasonably possible that other inmates would fail to exercise their constitutional right to file grievances for fear that their medications would not be provided to them in a timely fashion. However, as discussed *supra,* Tatta was not denied adequate or timely medical attention. Thus, Tatta fails to demonstrate that he suffered any adverse action as a result of his filing of grievances.[FN6]

> FN6. Moreover, Tatta has failed to demonstrate that Dr. Wright was personally involved in the temporary denial of medications. There is no evidence beyond Tatta's conclusory allegations that Dr. Wright participated in the temporary denial of medications, created a policy which allowed the temporary denial of medications to continue, or was grossly negligent in managing the medical staff at Eastern.

*9 Therefore, Dr. Wright's motion for summary judgment on this ground should be granted.

### E. Qualified Immunity

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Case 9:07-cv-00996-TJM-GJD   Document 53-3   Filed 02/27/09   Page 38 of 38

Dr. Wright also contends that he is entitled to qualified immunity. Qualified immunity generally protects governmental officials from civil liability insofar as their conduct does not violate clearly established constitutional law of which a reasonable person would have known. *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982); *Aiken v. Nixon,* 236 F.Supp.2d 211, 229-30 (N.D.N.Y.2002) (McAvoy, J.), *aff'd,* 80 Fed.Appx. 146 (2d Cir. Nov. 10, 2003). A court must first determine that if plaintiff's allegations are accepted as true, there would be a constitutional violation. Only if there is a constitutional violation does a court proceed to determine whether the constitutional rights were clearly established at the time of the alleged violation. *Aiken,* 236 F.Supp.2d at 230. Here, the second prong of the inquiry need not be reached because, as discussed *supra,* accepting all of Tatta's allegations as true, he has not shown that Dr. Wright violated his constitutional rights.

Therefore, in the alternative, it is recommended that Dr. Wright's motion on this ground be granted.

### III. Conclusion

For the reasons stated above, it is hereby:

**RECOMMENDED** that Dr. Wright's motion for summary judgment (Docket No. 22) be **GRANTED** and the case be terminated.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993); *Small v. Sec'y of HHS,* 892 F.2d 15 (2d Cir.1989); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).

N.D.N.Y.,2007.
Tatta v. Wright
Not Reported in F.Supp.2d, 2007 WL 2993823 (N.D.N.Y.)

END OF DOCUMENT

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.