UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

7:07 CV 996

RE:   Civil No. CV 3-96-310
RE:   File No. 99-66 DSD/JMM

C. Earl Grant,

Plaintiff,

Vs.

L. Thompson-Bowles, Brian Wilsford, Deborah Cusson
David Johnson, Gerald S. Golden, National Board of Medical Examiners
Federation of States Medical Boards

Defendants

**AFFIDAVIT OF C. EARL GRANT IN
OPPOSITION TO MOTION FOR SUMMARY
JUDGMENT**

STATE OF NEW YORK      )
                       )      SS
COUNTY OF JEFFERSON  )

Upon first duly sworn under oath, Affiant states and alleges as follows:

1.  Plaintiff agrees that defendants NBME/FSMB have been established as private non-profit
    organizations that have created and established the USMLE and offers services to the
    public throughout the United States and Canada.

2.  Plaintiff agrees that there are three parts to the USMLE: Step 1, Step 2 and Step 3 that are
    required for physicians to obtain a license and practice medicine independently.

3.  NBME is responsible for administering Steps 1 and 2, issuing permit and scoring or
    grading of all three Steps of the USMLE.  The FSMB, a subsidiary of the NBME is
    responsible for administering the Step 3 USMLE application processes including
    reporting exam scores and handling requests for re-grading of examinations.

1

4.   The NBME approves applications and scores or grades all three Steps of the USMLE.

5.   The NBME in its effort to continue its reprisal in the grading and/or re-grading of the plaintiff's Step 3 USMLE, in 1998, intentionally denied its involvement with the Step 3 USMLE in its effort to limit a settlement agreement with plaintiff to include only Steps 1 and 2 USMLE **(EXHIBIT A: Civil No. CV 3-96 -310).**  In 1998, after requesting and arriving at a settlement agreement with plaintiff on 29 December 1997, the NBME through its legal counsel claimed that the individual states were responsible for administering and scoring the Step 3 USMLE.  The NBME/FSMB to date has refused plaintiff's request to preserve test answer sheets and answer keys for the USMLE Step 3 examinations taken by plaintiff.  Similarly the NBME has refused to objectively grade and/or regrade by hand-scoring any Steps 1, 2, or 3 exam result that it claimed plaintiff had failed **(EXHIBIT B: Affidavit and letter of Larry E. Reed) and correspondence from Mr. David Johnson.**

### Step 1 Examinations

### (RE:  Civil No. CV 3-96-310)

A passing grade on the USMLE Step 1 examination is required for medical students to transition from the basic sciences to the clinical training required for completion of medical school training.

6.   Plaintiff agrees that he took the USMLE Step 1 examination on June 8, 1994, September 22, 1994, June 14, 1995, September 27, 1995 and June 11, 1996, respectively.

7.   Plaintiff agrees that the Step 1, USMLE results were released on July 20, 1994, November 3, 1994, July 26, 1995, November 8, 1995, and July 23, 1996, respectively.

2

8. Plaintiff requested reasonable accommodation and hand-scoring for the Step 1 USMLE taken in September 1994, June 1995, and September 1995, respectively. The NBME refused to grant the requested accommodation and refused to objectively regrade each examination by hand using the answer keys.

9. Between November 1994, and January 1996, plaintiff made several requests to the University of Minnesota medical School Committee on Students Scholastic Standing (COSSS) and the Dean of Student Affairs for permission to take a comparable alternate examination administered by the NBME on behalf of medical schools throughout the US and Canada. Plaintiff's requests were denied by the COSSS and the Dean of Student Affairs and told that the NBME was responsible for granting such permission.

10. In January, 1996, plaintiff, in the presence of his medical school advisor, made the same request for the COSSS and Dean of Student Affairs to grant him permission to take the alternate examination. In February, 1996 the COSSS granted plaintiff permission to take the alternate examination administered by the NBME and claimed that it had made an error in believing that it needed the NBME to grant permission to take that examination.

11. In March 1996, plaintiff submitted applications to the NBME to take the alternate examination and retake the USMLE Step 1 examination with accommodation.

12. In April, 1996, a joint complaint was filed in the Federal Court of Minnesota on behalf of plaintiff and another African-American female student at the University of Minnesota Medical who was then experiencing similar discrimination by the NBME and the medical school. The NBME subsequently granted plaintiffs the requested accommodation. Additionally, the NBME granted plaintiff's request to secure all test answer sheet by

copying, and placing in sealed envelopes which it agreed would be kept with its legal counsel.

13. Plaintiff took the alternate examination approximately one week before he took the USMLE Step 1 examination in 1996, while his case was pending in the court and received passing grades for both examinations.

14. Plaintiff did not request a regarding of either exam in 1996.


### Step 1 & 2 Examinations

A passing grade on the USMLE Step 2 exam is required for completion of the medical school curriculum and for awarding the MD degree. Between 1994, and 1999 the NBME under the management of its President, L. Thompson-Bowles and the Director of Examinee records, Mr. Gerald Golden, knowingly and willfully reported falsified grades that prevented plaintiff's career advancement and progression.

15. Plaintiff submitted application in December, 1996, to take the Step 2 examination March 3, 1997, and requested the same accommodations granted by the NBME in June, 1996. In January 1997, the NBME replied to plaintiff and requested that plaintiff paid a late fee of $25.00, despite the fact that the application was received on time by the NBME.

16. In January 1997, plaintiff submitted the $25.00 late fee and a copy of the certified return receipt which showed that the application was received in a timely manner by the NBME **(EXHIBIT C: Certified mail receipt and letter).**

17. In early February, 1997, the NBME informed plaintiff that it had made an error and promised to refund the late fee amount.

4

18. On February 28, 1997, plaintiff received a telephone call from the NBME's Chief Legal Counsel, Ms. Janet Carson who informed him then, that the NBME had denied his application for the examination and that his application fee and late fee would be refunded at a later date.  Plaintiff was advised by his legal counsel not to take the examination under the terms proposed by the NBME and its legal counsel.  The examination was scheduled to begin on March 3, 1997. The fees were refunded later in March, 1997.

19. Plaintiff resubmitted his application for the Step 2 examination in May 1997, and requested the same accommodation and terms to those granted by the NBME in June, 1996.  The NBME approved the application and plaintiff took the examination August 26, 1997.

20. NBME issued a failing grade **(4 points less than passing)** to plaintiff on October 7, 1997 and subsequently refused plaintiff's request to objectively hand-score the examination using the appropriate answer keys.  Around November, 1997, the NBME requested an out-of-court settlement for the lawsuit filed in reference to the Step 1 USMLE and a settlement was conducted on December 29, 1997.

21. Plaintiff reapplied and retook the Step 2 USMLE on March 2, 1998, and the NBME issued a failing grade which plaintiff received on April 24, 1998 **(2 points less than passing).**  On May 4, 1998, plaintiff paid the required service fee to the NBME and requested that that examination be re-graded by hand-scoring.  The NBME refused to regrade that examination objectively and further **sent its threat via its legal counsel Ms. Janie Mayeron, to plaintiff's legal counsel and indicated that plaintiff would not receive a passing grade on the USMLE Step 2 examination unless plaintiff dropped**

**the lawsuit filed in April, 1996,** and which the NBME had requested an out-of-court

settlement. In April, 1998, the NBME filed a motion for the court to force plaintiffs to

accept its newly proposed settlement that included several new clauses and terms that

were not agreed upon during the settlement conference. Plaintiff's senior counsel Ms.

Pamela Hoops had communicated this fact to the plaintiff in June, 1998, after several

weeks of the Defendant's delayed response to plaintiff's request to regrade the March,

1998, Step 2 USMLE.

Plaintiff was scheduled to begin his medical residency training on June 24, 1998. On June
18, 1998, plaintiff's legal counsel informed him that the NBME had proposed that, if
plaintiff signed the settlement agreement on June 19, 1998, the NBME would also sign
the agreement on June 19, 1998, and would regrade the March, 1998, Step 2 USMLE by
hand-scoring and provided timely feedback for plaintiff to begin his residency training on
June 24, 1998 **(EXHIBIT D: AFFIDAVIT OF RODERICK J. MACPHERSON 21
APRIL, 1998, MACPHERSON'S 22 JUNE 1998, LETTER TO MAGISTRATE
JONATHAN G. LEBEDOFF, LETTERS FROM PACPHERSON ON 18, 19, AND
24 JUNE 1998).**

22. The NBME further refused to sign the settlement agreement on June 19, 1998, requested

that additional restrictive terms be included in the agreement after it was signed by

plaintiff. On June 22, 1998, the NBME claimed that it re-graded plaintiff's March, 1998,

exam by its "standard measures" and concluded that the originally reported scores were

correct **(EXHIBIT E: LETTER FROM NBME ).** The NBME subsequently continued

its reprisal against plaintiff and signed the settlement agreement on July 1, 1998, instead

of on June 19, and only after it made sure plaintiff had missed another opportunity to

pursue his residency training **(EXHIBIT F: SETTLEMENT AGREEMENT AND

LRTTER TO L.THOMPSON-BOWLES 8 JULY 1998).**

23. Plaintiff retook the USMLE Step 2, August 25, 1998 and the NBME issued a failing

grade ( 1 point less than passing) on October 6, 1998, again refused to objectively

regrade the exam by hand-scoring despite receiving plaintiff's request and fee in a timely manner, and on November 20, 1998, issued a report to plaintiff and indicated that the grade originally reported was correct. For each request made by plaintiff for the Defendants to objectively regrade the Steps 1, 2, and 3 USMLE, the Defendants produced a canned reply that **"The result of the hand scoring process has confirmed that your scores are accurate as originally reported" (EXHIBIT C IN AMENDED COMPLAINT).**

24. In November 1998, plaintiff employed the services of attorney Larry E. Reed, Minneapolis, Minnesota, to review the Step 2 USMLE documents copied and graded by the NBME with NBME's legal counsel present. Only the Step 2 USLME answer sheets for the August, 1997, appeared to be partially re-graded by hand-scoring as indicated by markings made on several pages of those answer sheets with several pages and columns without markings. There were no markings on the March, 1998, or August, 1998, answer sheets to indicate that any attempt was made to regrade either test by hand-scoring **(EXHIBIT G:  AFFIDAVIT OF LARRY E. REED AND STEP 2 USMLE DOCUMENTS RETAINED BY LEONARD STREET AND DEINARD).**

25. On November 5, 1998, attorney Larry E. Reed submitted his findings and a request to the NBME to regrade all three Step 2, examinations reviewed.  The NBME ignored all requests from Mr. Reed and plaintiff **(EXHIBIT H: LETTER FROM LARRY E. REED TO JANET CARSON, NOVEMBER 5, 1998).**

26. On January 15, 1999, plaintiff filed a second law suit against the NBME to address its continued discrimination and reprisal **(RE:  File No. 99-66 DSD/JMM).**  Plaintiff retook the Step 2 USMLE in March, 1999, and the NBME issued a minimum passing score as means of its continued reprisal.  Plaintiff did not request a re-grading for the March, 1999 examination.

7

## Step 3 Examinations

A passing grade for the Step 3 USMLE is required for physicians to receive a license and practice medicine independently. The FSMB under the management of CEO, Mr. Brian Wilsford, and employees Mr. David Johnson and Ms. Deborah Cusson, and the NBME under the management of its President, L. Thompson-Bowles willfully reported falsified grades, defamed plaintiff's character and prevented plaintiff's career advancement and professional development. The FSMB/NBME intentionally failed to grade/regrade plaintiff's Step 3 USMLE objectively and continues its abuse of authority, continues its reprisals and gross disregard for plaintiff's rights to pursue a career in medicine.

27. Plaintiff submitted application for the Step 3 USMLE in December, 2002, and requested similar accommodations and preservation of examination documents in accordance with the procedure established for the Step 1, and Step 2 USMLE.

28. Plaintiff needed to have completed that examination by March, 2003, and provide feedback to the Office of The Surgeon General of the US Army by April, 2003, in support of his active duty assignment scheduled to begin at Fort Benning, Georgia, on July 1, 2003.

29. In March 2003, the FSMB/NBME failed to provide plaintiff with the permit required to take Step 3 USMLE and maliciously cancelled plaintiff's application without notice or reasonable explanation of the cancellation. When plaintiff requested explanation from Mr. Brian Wilsford, of the FSMB regarding the delayed processing Mr. Wilsford informed plaintiff that the FSMB was awaiting the State Medical Board of Ohio approval of plaintiff's application. The State Medical Boards do not grant approve or disapprove medical licensing applications. State Medical Boards merely verify eligibility of

8

candidates for the Step 3 USMLE and provide feedback to the FSMB if a resident has less than nine months of residency training in the state. By the time of his Step 3 USMLE application plaintiff had completed over two years of residency training in the State of Ohio. Accordingly, the State of Ohio Medical Board has provided certification that the FSMB had no communication with the medical board between December 2002 and August 2003, and therefore was not party to the delays claimed by the FSMB. **(EXHIHIT I: NBME CANDIDATE REGISTRATION STATUS STEP 3, 03/20/2003 = CANCELLED; AND CERTIFIED DOCUMENTATION FROM STATE OF OHIO MEDICAL BOARD).**

30. After several months of intentional delay by the FSMB/NBME a permit for that examination was issued in May 2003, and sent to plaintiff June 2003, with an incorrectly spelled plaintiff's first name. Plaintiff immediately contacted Mr. Brian Wilsford through the US mail and telephone and informed him of the discrepancy. The name on the permit was corrected several weeks later and a permit reissued to Plaintiff on or about July 7, 2003, a few days before taking that exam.

31. As a direct and proximate result of the defendant's wrongful and deliberate actions, the Plaintiff was unable to provide a timely update to the Office of The Surgeon General and was reassigned to a duty station in South Korea with a report date of July14, 2003. Plaintiff requested permission to extend his departure date to South Korea and was granted a new departure date of August 4, 2003. Plaintiff took the Step 3 USMLE on July 9, 2003. Plaintiff received a failing grade in October 2003, and did not request a regrading owing to the untimely score release by the NBME/FSMB.

32. While stationed in South Korea, in April 2004, plaintiff reapplied and retook the Step 3 USMLE on July 21, 2004. The NBME/FSMB issued a failing grade similar to the grade reported for the 2003 Step 3 USMLE. The defendants mailed the plaintiff's July 21, 2004 test results on or about August 23, 2004. Plaintiff received the notification via US mail on August 28, 2004, while residing in South Korea. The stipulation by the NBME/FSMB was that in order to retake the Step 3 USMLE by December 2004, an application must be submitted by September 1, 2004.

33. Plaintiff resubmitted application electronically on August 31, 2004 and received electronic confirmation on August 31, 2004, that the application was accepted. The mailed-in portion of the application was received by FSMB at 0945 A.M. on September 1, 2004. On September 2, 2004, the FSMB/NBME refunded the application fee electronically in its attempt to deny plaintiff's application. Plaintiff immediately mailed a personal check from the same account to the FSMB to ensure that that application fee was paid. The FSMB subsequently debited plaintiff's account on 3 September 2004, acknowledged the payment of the fee paid electronically on August 31, 2004, and returned the personal check to plaintiff **(EXHIBIT J: FSMB CHECKOUT PROCESSING 31 AUGUST 2004; LETTER TO MR. BRIAN WILSFORD 3 SEPTEMBER 2004; CHECKING ACCOUNT STATEMENT 09/03/2004, FSMB DEBIT AMOUNT $610.00).**

34. Plaintiff submitted the required fee and timely request to regrade the 2004, Step 3 USMLE by hand-scoring. Mr. David Johnson replied and informed plaintiff that regrading by hand-scoring is no longer done and that only a systems check would be done electronically to determine if the primary software used in the initial grading differs

from the results obtained using a second software program. NBME subsequently claimed that on or around October 2004, NBME performed a score recheck of the July 21, 2004 Step 3 USMLE in accordance with plaintiff's request and his score was accurate as originally reported. In fact the FSMB/NBME did not perform a score recheck by hand-scoring using the appropriate answer key as requested by plaintiff **(FSMB/NBME 2008, PROPOSED SETTLEMENT AGREEMENT 'Score Re-check of Certain Step 3 Examinations. Items 1-e, 3 and 4').**

35. Plaintiff retook the Step 3 USMLE on July 25, 2005, the FSMB/NBME refused to secure test materials consistent with the procedure established for the Steps 1, and 2 examinations and intentionally delayed the grade reporting to plaintiff. Plaintiff received similar failing grades to the grades issued in 2003 and 2004, in late October 2005.

36. Plaintiff resubmitted application for the Step 3 USMLE in November 2005. Processing of the application was completed on July 6, 2006, by the New York State Department of Education which sent confirmation to the plaintiff and FSMB. After several weeks of additional delay, plaintiff contacted Ms. Deborah Cusson of the FSMB towards the end of July 2006, and was informed that she was not aware that the application was approved by the New York State Department of Education and forwarded to the FSMB. In September 2006, Ms. Cusson informed plaintiff that the exam permit had been posted to the FSMB's website. There was no communication from the FSMB to notify plaintiff that it had changed its procedure. Plaintiff took that exam on November 1, 2006, and specifically requested via certified mail to Ms. Deborah Cusson to have all further correspondences including the examination report sent to plaintiff's local mailing

address, P.O. Box 551, Fort Drum, NY 13602, in order to avoid delays with the
examination result.

37. Plaintiff subsequently received the examination result on March 7, 2006, similar to the
grades previously reported in 2003, 3004, and 2005. Ms. Cusson did not reply to
plaintiff's request to have the test results mailed to plaintiff's local mailing address and
deliberately failed to notify plaintiff that the FSMB/NBME had changed its examination
reporting procedure. Plaintiff requested re-grading of the 2006 Step 3 USMLE in July
2007, after having contacted legal counsel, and was promptly referred to the NBME's
policy which required that a regrading be requested within 90 days of the exam result
date. That 90-day period had passed by the time plaintiff received the exam results on
March 7, 2007. The NBME/FSMB failed to take responsibility for delayed processing of
plaintiff's applications, inaccurate grading and delayed score reporting.

38. In March 2007, plaintiff resubmitted application for the Step 3 USMLE and after several
months of delayed notification plaintiff contacted Ms. Cusson and was subsequently
granted extension of the examination eligibility period during a period when plaintiff was
unable to take the examination owing to plaintiff's need to fulfill timely military
assignment.

39. Plaintiff requested additional extension of the eligibility period and was denied. Plaintiff
was told by Ms. Cusson that he had to resubmit a new application and a partial refund of
the application fee was made to plaintiff during the fall of 2007.

40. Plaintiff sought legal recourse in May 2007, and the case filed in the federal court during
the August to September period of 2007 and requested to have his Step 3 USMLE
examinations regraded objectively by hand-scoring. Plaintiff's request was ignored

apparently for several months by the NBME/FSMB and without appropriate communication from his legal counsel.

41. Plaintiff resubmitted his application for the Step 3 USMLE in April 2008, with the intent to retake the examination in May, or early June, 2008. On or about May, 2008, plaintiff received communication from his then legal counsel regarding a settlement proposal from the defendants. The proposal was reviewed by plaintiff and found to be unacceptable.

42. After several weeks of delay, without any feedback from the FSMB plaintiff inquired regarding the status of the application was informed by Ms. Cusson via US mail dated 29 May 2008, and indicated that the application was being processed and that plaintiff would be notified by e-mail when the permit was issued.

43. Again, after several weeks delay plaintiff followed up by telephone and left a message for Ms. Cusson to provide feedback regarding when the permit would be ready.

44. Ms. Cusson replied by US mail and indicated that the permit had been available for several weeks and the e-mail notification had been returned as undelivered. Ms. Cusson further indicated that that she had been experiencing problem sending e-mail to plaintiff's e-mail address since April, 2008 (**EXHIBIT L:  LETTERS DATED MAY 29, 2008, AND SEPTEMBER 2, 2008, AND  E-MAILS FROM DEBORAH CUSSON**). On the basis of this evidence Ms. Cusson knew that plaintiff would not receive and e-mail notification from her as promised and failed to provide timely information to plaintiff regarding the availability of the permit required to take the examination.

## Residency Training Years

Between June, 1999, and February 17, 2003, plaintiff pursued residency training in three internal Medicine residency training programs. An evaluation report of satisfactory or better

from the Program Directors to the American Board of Internal Medicine (ABIM) is required
to be eligible to take the ABMI board certification examination.

During this period there were at least three ABIM Liaison Officer who visited plaintiff's
residency programs. Shortly after each visit there were concerted efforts to defame
plaintiff's character. Plaintiff requested to see his residency personnel files after periods
of noticeable unusual behaviors and discovered discrepancies that were not intended for
plaintiff's to see and in a few occasions plaintiff was not allowed to see certain
documentation.

45. During plaintiff's medical residency training the NBME through its association and
influence on the residency training programs, continued its reprisal and discriminatory
actions intended to deny plaintiff's access to the medical profession as a physician.

46. Deliberate efforts were made by the NBME to issue failing grades on the Internal
Medicine In-service Examinations done by plaintiff and which it provides to the program
directors. In addition, the residency program personnel were coerced to report inaccurate
residency evaluation reports to the ABIM, to prevent plaintiff from being able to take the
ABIM board certification examination. The ABIM has mandated that plaintiff needs to
satisfactorily complete twenty four months of additional training to be eligible to take its
board certification examination. **(EXHIBIT M: LETTER FROM THE ABIM TO
PLAINTIFF JULU 22, 2003).**

47. The program directors and the ABIM failed to correct the inaccurate residency evaluation
reports that were intentionally submitted and received with the intent to defame plaintiff's
character and terminate pursuit of a career in medicine. Plaintiff has been unjustifiably
barred from taking the ABIM board certification examination.

48. Between fall 2001 and February 17, 2003, efforts were intensified and well orchestrated among the NBME/FSMB, the ABIM and the Residency Training Directors. Despite monthly documentations by the by the residency training medical attendings who provided written documentation that established plaintiff's clinical proficiency, competency and professionalism to be satisfactory to superior, each Program Director was coerced into submitting falsified marginal evaluation reports to the ABIM **(EXHIBIT N: PLAINTIFF'S AFFIDAVIT TO THE OHIO STATE MEDICAL BOARD 31 JANUARY 2005).**

## Prior Litigation

49. Plaintiff agrees that a suit was filed against the NBME in 1996, that in 1997 the NBME requested an out-of-court settlement agreement and a settlement conference was held on 29 December 1997, in the Chambers of Magistrate J. Lebedoff, Minneapolis, MN, in which the parties agreed to dismiss that lawsuit.

50. In 1998, the NBME after having accepted the terms of the agreement during the settlement conference, made several subsequent changes to the agreement and made several attempt to have the court force the plaintiffs to accept its new terms.

51. The NBME wrongfully denied its involvement with the Step 3 USMLE and modified the original settlement agreement to limit some terms of the agreement to the Step 1, and Step 2 USMLE taken by plaintiff in the Minneapolis St. Paul area.

52. The NBME continued its reprisal and discrimination against the plaintiff, coerced the plaintiff to sign the agreement on 19 June 1998, and refused to sign the agreement on June 19, 1998, and continued it discrimination and falsified grading in connection with

the Step 2 USMLE in August 1998, March 1999; and the Step 3 USMLE in 2003, 2004, 2005, 2006, 2007 and 2008. **(EXHIBITS G AND H OF THIS AFFIDAVIT).**

53. The NBME claimed that it scored plaintiff's Steps 2 and 3 examinations using standard procedures, in the manner that it scored all other examinations taken at that time. The NBME lied about its grading of plaintiff's Steps 1, 2, and 3 examinations **(EXHIBITS G AND H )** and in doing so, breached the terms of the settlement agreement with the plaintiff.

54. Plaintiff did not release the NBME and its employees from claims of discrimination on the Step 2 or Step 3 examinations when entered into a settlement conference and agreement to the claims filed in connection with the Step 1 examinations.

55. Plaintiff in good faith agreed to release the NBME and its employees from the claims filed in connection with the Step 1 examination in return for the NBME's promise of non-retaliation, non-reprisal and non-discrimination and a promise to grade and/or regrade all future examinations fairly and objectively. As noted above NBME breached its promises to the plaintiff.

56. To date, the NBME continues it reprisal in the application processing, grading and scoring of plaintiff's examinations, and has refused to objectively regrade plaintiff's steps 2 and 3 examinations even after it collected additional fees from plaintiff for the service of hand-scoring.

57. Plaintiff agrees that the FSMB was not a part of the 1998, settlement agreement. The FSMB does not conduct its business independently of the NBME. Instead, as a subsidiary of the NBME, the FSMB is responsible for receiving all Step 3 USMLE applications from all candidates on behalf of the NBME, providing timely feedback

16

communication between the NBME and Step 3 candidates, conveying examination permits from the NBME to Step 3 candidates, reporting examination scores to candidates and receiving requests for regrading of the Step 3 USMLE on behalf of the NBME.

58. The FSMB has the responsibility to ensure that all its dealing with, and between the candidates and the NBME are fair and honorable and that the score results of the examinations accurately reflect the result of objective and unbiased grading.  The FSMB is part of the NBME and does not function independently of the NBME.


Date: *11 February 2009*

*C. Earl Grant*
C. Earl Grant
P.O. Box 1067
Fort Belvoir, VA 22060


Subscribed and sworn before me
This *11th* day of  February, 2009

*Pamela S. Lissin*
Notary Public
*My Commission Expires 31 Aug 2009*
*Fairfax Co, VA*