UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

C. EARL GRANT,

                              Plaintiff,

           v.                                                                           7:07-cv-996

NATIONAL BOARD OF MEDICAL EXAMINERS, et al.,

                              Defendants.
_____

THOMAS J. McAVOY,
Senior United States District Judge

**DECISION and ORDER**

**I.    INTRODUCTION**

On September 19, 2007, Plaintiff C. Earl Grant ("Plaintiff") brought the instant action against the National Board of Medical Examiners ("NBME") and the Federation of States Medical Board ("FSMB"). Plaintiff alleges that Defendants NBME and FSMB breached their internal policies and settlement agreement with Plaintiff by scoring his United States Medical Licensing Examinations ("USMLE") in a discriminatory manner. Plaintiff further contends that Defendants engaged in discriminatory scoring which caused his USMLE certification to be delayed, thereby preventing Plaintiff's career advancement and causing Plaintiff to suffer financial loss.

On November 19, 2008, Plaintiff moved to amend his Complaint to include claims under: (1) the Americans with Disability Act ("ADA"); (2) the Minnesota Human Rights Act ("MHRA"); and (3) the Civil Rights Act of 1964. Plaintiff also seeks to add as

1

defendants five individuals who were employed in a representative capacity for either NBME or FSMB.  On December 5, 2008, Defendants submitted a Motion in Opposition to Plaintiff's Motion to Amend and a Cross Motion for Summary Judgment on all of Plaintiff's claims.  On February 12, 2009 Plaintiff filed a Supplemental Response to Defendant's Motion for Summary Judgment in which he addressed Defendants' assertion that many of Plaintiff's claims are time barred.  On March 27, 2009, Plaintiff sought to add portions of the Judge Advocate General's Service Members Civil Relief Act as an exhibit in support of this Supplemental Response.  On March 27, 2009, Defendants submitted a letter requesting that the Court reject Plaintiff's Supplemental Response and the supporting exhibit as untimely or, in the alternative, that the Court allow Defendants the opportunity to respond to Plaintiff's supplemental response.  The Court has reviewed Plaintiff supplemental response and supporting exhibit.  For the reasons set forth below, Defendants Motion for Summary Judgement is GRANTED and Plaintiff's claims are DISMISSED in their entirety.

## II.     BACKGROUND

The United States Medical Licensing Exam (USMLE) is a three-part exam that all state medical boards require allopathic physicians (M.D.s) to pass prior to obtaining a medical license.  The USMLE is comprised of three separate "Steps": Step 1, Step 2, and Step 3.  Together, the NBME and FSMB are responsible for the application, administration and scoring process for the USMLE.  The NBME administers Steps 1 and 2, scores all three Steps, and is responsible for reporting exam scores and performing score rechecks.  The FSMB administers the Step 3 exam and receives requests for rechecks of Step 3 scores, which it then forwards to NBME for re-grading.

Plaintiff is an allopathic candidate who first took Step 1 of the USMLE in June 1994. Between June 1994 and June 1996, Plaintiff took Step 1 six times. On his sixth attempt, Plaintiff passed Step 1. In April 1996, Plaintiff and another medical student sued the NBME for its alleged failure to provide them with reasonable testing accommodations in violation of the Americans with Disabilities Act ("ADA"). While the lawsuit was pending, Plaintiff twice took and failed Step 2 of the USMLE.

In June 1998, Plaintiff and the NBME entered into a Settlement Agreement. In exchange for certain testing accommodations, Plaintiff released the NBME from "any claim which he had or may have had against NBME for its refusal to accommodate him in connection with any test administered by the NBME." Specifically, the Settlement Agreement released the NBME from:

> (A) all claims of discrimination (including disability, sex and age discrimination pursuant to the MHRA or the ADA), breach of contract, promissory estoppel, defamation, negligent or intentional infliction of emotional distress, harassment, impairment of economic opportunity, fraud, misrepresentation, or any other theory of liability. . . .

Settlement Agreement at ¶ 21. With respect to future Step 2 exams, the NBME agreed to, *inter alia*, reasonably accommodate Plaintiff for the remainder of his Step 2 exams and preserve and recheck his Step 2 exam results upon request. A procedure by which Plaintiff could preserve and re-check his future Step 2 exam results was set forth in the Settlement Agreement. The Settlement Agreement states that if Plaintiff wishes to preserve his Step 2 exam results, he must make a request to NBME's general counsel no later than 30 days prior to the date of the exam. Id. at p. 5.

Additionally, as a part of the Settlement Agreement, Defendant NBME agreed:

> not to retaliate against [Plaintiff] in any manner in connection with the testing or

3

scoring of any future examination taken by [Plaintiff] and administered or scored by the NMBE, or in connection with the exercise of [Plaintiff's] rights under this Agreement.

The FSMB was not a party to the June 1998 Settlement Agreement. Additionally, the Settlement Agreement advises Plaintiff that the NMBE does not determine requests for accommodations for Step 3 of the USMLE. Id. at p. 1. Although the Settlement Agreement includes a general assurance of fair and objective scoring by Defendant NBME with respect to *any* examination administered or scored by it, the Agreement does not set out a score preservation or re-check process for Step 3 in a manner similar to that established for Step 2.

In August 1998, after the effective date of the Settlement Agreement, Plaintiff took and failed the Step 2 examination. On December 5, 1998, Plaintiff requested that his 2 exam score be re-checked. NBME rechecked the score and, on December 18, 1998, notified Plaintiff that the score re-check confirmed his initial score. Dillion Aff. at p. 11. On March 2, 1999, Plaintiff took and passed Step 2.

Between July 2003 and November 2006, Plaintiff took Step 3 of the USMLE five times. As noted, Step 3 is administered by FSMB and scored by NBME. The Step 3 examination is delivered in two parts: a multiple choice portion and a computer-based case simulation ("CCS"). Dillion Aff. at p. 3. In the computer-based simulation, a "computer presents a simulated patient to the examinee, who decides which diagnostic information to obtain and how to treat and monitor patient progress in computer-simulated time." Id. Together, an examinee's response to both portions of the Step 3 exam combine to create his "Response Record." After a Step 3 exam ends, the test delivery vendor, Prometric, "electronically bundles the examinee's Response Record

and other Response Records from that testing center, encrypts the data and transmits it over secure lines to Prometric's data center." The Response Records are stored at Prometic's data center until the NBME decrypts and scores the records using a computerized scoring program. Id at p. 5. The computerized scoring program is completely automated and computers perform "all the substantive tasks necessary to produce a final score." Id at p. 6. For each Response Record, the computerized scoring program produces a multiple choice raw score and a CCS raw score. The multiple choice raw score reflects the number of items answered correctly and the CCS raw score reflects the number of points obtained in managing the simulated patient. An examinee's final score is derived from these two scores.

    If an examinee wishes to have his exam re-checked, he must do so in accordance with the policy laid out in the USMLE *Bulletin of Information* ("*Bulletin*"). The *Bulletin* describes the USMLE application process, test regulations, rules of conduct, and the process of scoring and score reporting. As part of the application process for each Step, a prospective examinee must certify that he has read the *Bulletin* and agrees to comply with the policies and procedures set forth therein. Dillon Aff. at p. 8. Pertinent to Plaintiff's claim, the USMLE *Bulletin* requires that an examinee request a score re-check within 90 days of the score report release date.

    Between July 2003 and November 2006, Plaintiff took the Step 3 exam five times. In August 2004, Plaintiff timely requested a score re-check for his July 2004 examination. In October 2004, Plaintiff received his requested score re-check, confirming the accuracy of his previously reported score. Plaintiff's four other requests

for score re-checks were returned by the USMLE as untimely. Johnson Aff. at p. 4.

Plaintiff then commenced the instant action. The crux of Plaintiff's claims revolve around a perceived bias towards him. Plaintiff claims that Defendants subjectively graded his examinations in an unfair manner. With respect to the August 1998 and March 2, 1999 Step 2 examinations, Plaintiff asserts that Defendants breached the terms of the Settlement Agreement by not objectively re-grading his exam. Plaintiff claims that only one of the re-graded exams "was partially hand-scored. . . and each of the other exam documents had no markings indicative of an attempt to objectively re-grade the test." Plaintiff contends that NBME "lied" about scoring Plaintiff's examinations using standard procedures and in the same manner that it scored all other examinations taken at that time. Plaintiff further contends that Defendants' standard grading procedures are not objective and fair. Plaintiff also asserts that Defendants NBME and FSMB "falsified" his exam results. With respect to the USMLE Step 3 examination, Plaintiff asserts that Defendants failed to provide him with the permit required to take the Step 3 examination and "intentionally cancelled plaintiff's application in March 2003, without notice to plaintiff." Am. Compl. at par. 29.

Presently before the Court is Plaintiff's motion to amend pursuant to Fed. R. Civ. P. 15 and Defendants' cross-motion for summary judgment pursuant to Fed. R. Civ. P. 56.

### III.   STANDARD OF REVIEW

It is well settled that on a motion for summary judgment, the Court must construe the evidence in a light most favorable to the non-moving party, see Tenebaum v.

Williams, 193 F. 3d 581, 593 (2d Cir. 1999), and may grant summary judgment only where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  An issue is genuine if the relevant evidence is such that a reasonable jury could return a verdict for the non moving party.  Anderson v. Liberty Lobby, 477 U.S. 242, 248, 106 S. Ct 2505 (1986). A party seeking summary judgment bears the burden of informing the court of the basis for the motion and of identifying those portions of the record that the moving party believes demonstrate the absence of a genuine issue of material fact as to a dispositive issue. Celotox Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986).  If the movant is able to establish a prima facie basis for summary judgment, the burden of production shifts to the party opposing summary judgment who must produce evidence establishing the existence of a factual dispute that a reasonable jury could resolve in his favor. Matsushita Elec. Indus. Co. v.Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348 (1986).  A party opposing a properly supported motion for summary judgment may not rest upon "mere allegations or denials" asserted in his pleadings, Rexnord Holdings, Inc. v. Bidermann, 21 F.3d 522, 525-26 (2d Cir.1994), or on conclusory allegations or unsubstantiated speculation.  Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir.1998).

Also pending before the Court is Plaintiff's motion for leave to amend his Complaint.  Leave to amend shall be freely granted, Fed. R. Civ. P. 15, but such leave may be denied as futile when the evidence in support of the plaintiff's proposed new claim creates no triable issue of fact and the defendant would be entitled to judgment as a matter of law under Rule 56(c).  See Milanese v. Rust-Oleum Corp., 244 F.3d 104,

110 (2d Cir. 2001).

IV.     DISCUSSION

   A.     Claims against NBME Arising Prior to June 1998

Pursuant to the settlement agreement between Plaintiff and NBME, Plaintiff released NBME from any and all claims of discrimination, breach of contract, promissory estoppel, defamation, negligence or intentional infliction of emotional distress, harassment, impairment of economic opportunity, fraud, misrepresentation, or any other theory of liability.  This broad release is sufficient to preclude the instant claims against NBME in connection with any matters arising prior to the effective date of the settlement agreement, June 2008.  Accordingly, any such claims are dismissed.

   B.     Breach of the Settlement Agreement

Plaintiff contends that NMBE and FSMB breached the terms of the June 1998 Settlement Agreement.  Plaintiff suggests that FSMB, which is not a party to the Settlement Agreement, is bound by its terms as a subsidiary of the NMBE.

      1.     NMBE

Settlement Agreements are to be construed "according to the general principles of contract law." Rexnord Holdings, Inc. V. Bidermann, 21 F. 3d 522, 525 (2d Cir. 1994). Where the facts demonstrate a party's "marked adherence" to the terms of a settlement agreement, that party cannot be held liable for breach. McKinnon v. Heremes of Paris, Inc., 2007 WL 1098707, at 3* (S.D.N.Y. 2007).

 Here, Plaintiff asserts that Defendant NMBE breached the terms of the 1998

8

Settlement Agreement by failing to objectively grade or re-score his USMLE exams. Under the terms of the Settlement Agreement, Defendant NMBE agreed to preserve and seal Plaintiff's Step 2 exam answer sheets upon request and to make the answer sheets available to Plaintiff. Additionally, NMBE agreed that, upon request, it would review Plaintiff's Step 2 score "fairly and objectively and using exactly the same procedure as it would use to review any other examinee's score."

Plaintiff does not deny that his examination answer sheets were made available to him when requested. He claims, however, that NMBE did not fairly and objectively re-check his examination score when requested. To support this claim, Plaintiff refers to a Step 2 examination that appears to be partially hand-scored or had hand-writing on it.

The Settlement Agreement does not guarantee Plaintiff the right to have his Step 2 exam re-scored by hand. Although the Settlement Agreement speaks of "manual rechecks," paragraph 6 of the Settlement Agreement explains that if Plaintiff requested a manual recheck of his score, NBME agreed to "review [Plaintiff's] score fairly and objectively and using exactly the same procedure as it would use to review any other examinee's score." Pursuant to the USMLE *Bulletin of Information*, scores and score rechecks are generated by the software programs; specifically the "Scoring" and "QA" software. Original scores are generated by the "Scoring" software. Rechecks are generated by the "QA" software that electronically compares the score from the QA software with the original score generated by Scoring software. If a discrepancy between the two scores is identified, NBME "investigates and resolves it, then reports the accurate scores to the examinee." Dillion Decl. at ¶ 28. Thus, any alleged failure to

9

re-check the scores by hand does not constitute a breach of the settlement agreement.

The partial-score re-check Plaintiff may have observed on one of his USMLE Step 2 examinations does not raise a genuine issue of material fact regarding the fulfillment of NMBE's obligations under the Settlement Agreement. The particular Step 2 recheck at issue occurred in or about August 1997. Aff. of C. Earl Grant in Opposition to Motion for Summary Judgment at ¶ 24. Because that recheck occurred prior to the June 1998 Settlement Agreement, Plaintiff released any claim based upon that recheck.

Regardless, Plaintiff does not explain how the alleged partial hand re-scoring of his examination constitutes a breach of Defendant's obligation to recheck his examination score in an objective manner consistent with how it rechecks the scores of other examinees. Plaintiff similarly fails to submit any facts substantiating his claim that Defendants' handling of this Step 2 examination was, in any way, discriminatory. Plaintiff has not introduced sufficient facts from which a fair-minded trier of fact could reasonably conclude that NMBE breached the terms of the June 1998 Settlement Agreement. Accordingly, Plaintiff's breach of the June 1998 Settlement Agreement claim against NMBE is DISMISSED.

  **2. Defendant FSMB**

To support a claim for breach of contract, Plaintiff must first show the existence of a contract between the parties. Golden Trade, S.r.L. v. Jordache, 143 F.R.D. 504, 506 (S.D.N.Y. 1992). If the Defendant is not a party to the contract, it cannot be bound by the contract's terms. Id; see also E.E.O.C. v. Waffel House, Inc., 534 U.S. 279, 294 (2002). "'A contract cannot bind a non-party.'" D'Antonio v. Metropolitan Trans. Auth.,

2008 WL 582354, at *7 (S.D.N.Y. 2008) (quoting Int'l Customs Assocs ., Inc. v. Ford Motor Co., 893 F. Supp. 1251, 1256 (S.D.N.Y. 1995)).  Here, Plaintiff acknowledges that Defendant FSMB was not a party to the June 1998 Settlement Agreement.  Rather, Plaintiff asserts that because the FSMB "is a subsidiary of the NBME" it is also bound by the terms of the 1998 Settlement Agreement.

Plaintiff's breach of contract claims against Defendant FSMB must be dismissed.  The June 1998 Settlement Agreement expressly stated that it was "made and entered into by C. Earl Grant and the National Board of Medical Examiners."  It was signed only by Plaintiff and NBME.  In the Settlement Agreement, Plaintiff was expressly informed that "it does not determine accommodation for Step III of the USMLE."  Further, Plaintiff submits no evidence demonstrating that FSMB is a subsidiary of NBME.  Assuming FSMB is a subsidiary of NBME, that fact alone is insufficient to bind FSMB to a settlement agreement entered into by NBME.  See e.g. Thomson-CSF, S.A. v. Am. Arbitration Ass'n, 64 F.3d 773, 780 (2d Cir. 1995); Rus, Inc. v. Bay Industries, Inc., 322 F. Supp.2d 302, 316 (S.D.N.Y. 2003).  Plaintiff fails to identify a proper basis upon which to hold FSMB to the terms of the Settlement Agreement.  Accordingly, Plaintiff's breach of settlement agreement claim against Defendant FSMB is DISMISSED.

    **C.**    **Breach of Contract**

In New York, a contract is formed between a testing organization and the test taker when the test taker agrees to be bound by the terms of the testing organization's registration bulletin.  Dalton v. Educational Testing Service, 87 N.Y. 2d 384, 389 (1995).  The testing organization must perform a "good faith compliance with the [bulletin's] stated

procedures." Id. Plaintiff claims that Defendants breached their contract with him in his capacity as a test-taker by grading his exams in an "unfair" and "discriminatory" manner and by failing to rescore his examination in accordance with internal policy.

### 1.   NBME

NBME was responsible for scoring Plaintiff's Step 3 examination. FSMB had no role in the scoring of Step 3 examinations. The USMLE *Bulletin of Information* formed the basis for the contract between Plaintiff, as a test taker, and NMBE with respect to the applicable scoring procedures. Prior to taking the Step 3 examination, Plaintiff certified that he had read the *Bulletin* and that he would "abide by the policies and procedures described therein." App. Ex. 40. The *Bulletin* informed Plaintiff that all examinations are administered by a computer and scored using standard scoring procedures - the Software Score and QA Scoring process described above.

Plaintiff asserts that Defendants NBME breached its contract with him as a test taker by grading his exam in an "unfair" and "discriminatory" fashion. Plaintiff does not allege any facts, admissible in form, to support that NMBE deviated from its standard scoring procedure when grading Plaintiff's Step 3 exam. Plaintiff does not challenge the standard score procedures used by Defendant NMBE. In fact, Plaintiff acknowledges that he has no reason to believe that there were problems with the computer programs used for grading the exams." Pl.'s Mem. of Law in Opp. to Summ. Jud. at p. 7. Plaintiff provides nothing more than conclusory, unsubstantiated allegations that cannot survive Defendants' motion for summary judgement. Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir.1998). Accordingly, Plaintiff's breach of contract claim against NBME with respect to

the scoring of the Step 3 examination is DISMISSED.

### D.     FSMB

With respect to Plaintiff's request for a Step 3 score recheck, Plaintiff claims that FSMB breached its own "internal rules by not re-scoring Plaintiff's examinations when requested." App. Ex. ¶¶ 40-41. Plaintiff asserts that Defendant FSMB did not follow the terms of the *Bulletin* in denying all but one of Plaintiff's requests for a Step 3 examination re-check.

A party alleging breach of contract must prove that he performed any condition precedent to the other party's performance. MHR Capital Partners LP v. Presstek, Inc., 863 N.Y.S.2d 154 (1st Dept. 2008)(where condition precedent was not satisfied, defendant was relieved of its obligations under the contract). The express terms of the USMLE *Bulletin of Information* states that a score recheck will be done if a written request, together with the required service fee, is received by the appropriate registration entity within ninety days of the date the examinee's score was released. FSMB was the registration entity for the Step 3 examination and all requests for USMLE Step 3 score rechecks had to be directed to the FSMB. The requirement that a score recheck request be made within ninety days after the score was released was a condition precedent to FSMB's contractual obligation to recheck the score.

Here, Plaintiff submitted a request to FSMB for a score recheck of his July 2004 Step 3 examination on August 30, 2004, within ninety days of the date of his July 2004 score was released. The undisputed record evidence is that, in accordance with its policy, FSMB forwarded Plaintiff's recheck request to NBME and NBME rechecked

Plaintiff's score using the QA Software. No discrepancies were found and Plaintiff was informed that his July 2004 examination score was correct as originally reported.

The remainder of Plaintiff's score re-check requests were rejected by the FMBE as untimely. All of Plaintiff's remaining requests were made at least 8 months, and up to 3 years, after his scores were released. As Plaintiff did not fulfill the condition precedent of requesting a score recheck in a timely fashion, his breach of contract claim against FMBE for failure to recheck these Step 3 exams is DISMISSED.

    E.    **ADA/MHRA Claims**

        1.    **Statute of Limitations**

Claims under the ADA are subject to a three-year statute of limitations. Cabassa v. Smith, 2009 WL 1212495, at *4 n.7 (N.D.N.Y. 2009). Claims under the MHRA are subject to a one-year statute of limitations period. Minn. Stat. § 363A.28; Hayes v. Blue Cross Blule Shield of Minn., Inc., 21 F. Supp.2d 960, 977 (D. Minn. 1998) ("The MHRA requires a plaintiff to file an administrative charge of discrimination, or commence a lawsuit, within one year of the alleged discriminatory conduct.").

Pursuant to 50 U.S.C.App. § 526, "[t]he period of a servicemember's military service may not be included in computing any period limited by law . . . for the bringing of any action or proceeding in a court . . . or agency of a State or the United States. . . ." According to Plaintiff, he has been on "continuous active duty since 4 August 2003." Assuming this to be true, any ADA claims arising three years prior to August 4, 2003, and any MHRA claims arising one year prior to August 4, 2003, are time-barred. Accordingly, any ADA claims that accrued prior to August 4, 2000, or any MHRA claims that accrued

prior to August 4, 2002, are time-barred and those claims are DISMISSED.

### 2. Whether There Was a Violation of the ADA or the Minnesota Human Rights Act[1]

To establish a prima facie claim under the Americans with Disabilities Act or the MHRA, Plaintiff must demonstrate that (1) he is a "qualified individual" with a disability; (2) the defendants are subject to one of the Acts; and (3) he was denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or was otherwise discriminated against by defendants, by reason of his disability.  42 U.S.C.A. § 12101 et seq; Powell v. National Bd. of Medical Examiners, 364 F. 3d 79 (2d Cir. 2004); see also Liljedahl v. Ryder Student Transp. Servs., Inc., 341 F.3d 836, 842 (8th Cir. 2003) (applying the MHRA); Sonkowsky v. Bd. of Educ. for Independent School, 327 F.3d 675, 678 (8th Cir. 2003) (same).

#### a. Whether Plaintiff is a Qualified Individual With A Disability

Under the ADA, a disabled individual is one who suffers from "a physical or mental impairment that substantially limits one or more of the major life activities of such individual." 42 U.S.C. § 12102(2)(A) (2000).[2]  Plaintiff contends that he has been diagnosed with, and suffers from, Attention Deficit-Hyperactivity Disorder.  Plaintiff has

---

[1] "[B]ecause the purposes of the MHRA and ADA are similar, case law under the ADA may be used to interpret the MHRA."  Manska v. Fabian, 2008 WL 5215954, at *3 (Minn. App. Dece. 16, 2008); see also Landers v. National R.R. Passenger Corp., 345 F.3d 669 (9th Cir. 2003); Kolton v. County of Anoka, 645 N.W.2d 403, 410 (Minn. 2002); Hayes v. Blue Cross Blue Shield of Minn., Inc., 21 F. Supp.2d 960, 971 (D. Minn. 1998) ("The Courts have generally interpreted the MHRA as an analog to the ADA, without substantive distinction between the two.").

[2] The MHRA has a similar definition.  See Minn. Stat. § 363A.03 subd. 12.

not submitted into evidence any documentation supporting such a diagnosis, nor does Plaintiff explain how this diagnosis qualifies him as disabled within the meaning of the ADA.  Rather, Plaintiff asserts that Defendants stipulated to his status as a disabled individual in the June 1998 Settlement Agreement.

In the June 1998 Settlement Agreement, Defendant NMBE stipulated that it "would not challenge the diagnosis of ADD which [Plaintiff] has received with respect to all future examinations it administers and for which it makes decisions whether an applicant will be granted examination accommodations." Settlement Agr. at par. 1.  This stipulation is not the equivalent of a concession that Plaintiff is disabled within the meaning of the ADA or the MHRA.  Moreover, as will be discussed, FSMB is not a party to the Settlement Agreement and, therefore, is not bound by the terms thereof.  Because Plaintiff failed failed to submit evidence, admissible in form, upon which it reasonably can be concluded he is disabled within the meaning of the ADA or the MHRA, the ADA and MHRA claims must be DISMISSED.

### b.   Whether Plaintiff Was Discriminated Against On Account of a Disability or Retaliated Against For Engaging in Protected Activity

Assuming, *arguendo,* that Plaintiff's ADD diagnosis substantially limits one or more of his major life activities, Plaintiff has not shown that he was denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or was otherwise discriminated against by defendants by reason of his disability.  To date, Plaintiff has participated in services offered by NMBE and FSMB and has, since the June 1998 Settlement Agreement, done so with the accommodations requested by him.

Plaintiff has not submitted evidence of the denial of a requested test accommodation subsequent to the June 1998 Settlement Agreement.

Similarly, Plaintiff fails to proffer sufficient evidence from which it can reasonably be inferred that Defendants retaliated against him for engaging in protected activity. The undisputed evidence is that Defendants granted Plaintiff's requests for reasonable accommodations, sealed Plaintiff's Step 1 and Step 2 examinations,[3] objectively scored Plaintiff's examinations using the computer systems applicable to all candidates, and rechecked Plaintiff's score (upon timely request) in accordance with its standard policy. To the extent Plaintiff argues that Defendants improperly delayed approval of his application to take the Step 3 exam, the undisputed evidence in the record is that FSMB transmitted a request to the State Medical Board of Ohio ("SMBO") seeking approval of its recommendation regarding providing accommodations to Plaintiff on April 7, 2003. The SMBO did not respond until May 15, 2003. Thus, any delay was caused by the SMBO. There is insufficient evidence that Defendants delayed approving Plaintiff's application to take the Step 3 exam on account of his disability or because he engaged in protected conduct. Accordingly, Plaintiff's ADA and MHRA claims against Defendants are DISMISSED.

### F.    Title II of Civil Rights Act

Plaintiff next claims that NMBE and FSMB actions violated Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000(a). Title II states, in pertinent part:

---

[3] Under the terms of the Settlement Agreement, there was no obligation to preserve test materials with respect to the Step 3 examination, but only as to Step 2 examinations.

> All persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations of any place of public accommodation, as defined in this section, without discrimination or segregation on the ground of race, color, religion or natural origin.

Title II of the Civil Rights Act of 1964 addresses claims of discrimination on the ground of race, color, religion or natural origin. Plaintiff fails to proffer sufficient evidence upon which a fair-minded trier of fact could reasonably conclude that Defendants discriminated against him because of any protected status. Mere speculation or conjecture that he was discriminated against on the basis of his race, color, religion or natural origin is insufficient to defeat Defendants' motion for summary judgment. Harpen v. F.B.I., 181 F. 3d 279, 287 (2d Cir. 1999). Accordingly, Plaintiff's claim against Defendants for violation of Title II of the Civil Rights Law of 1964 is DISMISSED.

### G. Motion to Stay Pursuant to 50 U.S.C.App. § 522

Plaintiff moves for a ninety day stay of this matter pursuant to 50 U.S.C.App § 522. Section 522(b)(1) provides that "upon application by the servicemember" the Court shall "stay the action for a period of not less than 90 days, if the conditions in paragraph (2) are met." Under paragraph b(2), the servicemember must, among other things, include a letter "setting forth facts stating the manner in which current military duty requirements materially affect the servicemember's ability to appear. . . ."

Based on the mandatory nature of this section, the motion is GRANTED. In light of the disposition of the pending motions and, in particular, the granting of Defendants' cross-motion for summary judgment dismissing Plaintiff's claims in their entirety, the Clerk of the Court is directed to enter judgment in favor of Defendant and dismissing Plaintiff's claims no earlier than ninety days from the date of this Order.

## V.   CONCLUSION

For the reasons set forth above: it is ORDERED THAT:

A.    Plaintiff's motion for leave to file an amended Complaint (Dkt. No. 33) is DENIED;

B.    the Court accepts Plaintiff's supplemental submissions and DENIES Defendant's request to file a response (Dkt. No. 55);

C.    Defendants' cross-motion for summary judgment (Dkt. No. 38) is GRANTED and Plaintiff's claims are DISMISSED IN THEIR ENTIRETY; and

D.    Plaintiff's motion pursuant to 50 U.S.C.App. § 522 is GRANTED. Accordingly, the Clerk shall not enter judgment in this case for at least ninety days from today's date.

IT IS SO ORDERED.

Dated: May 22, 2009

_____
Thomas J. McAvoy
Senior, U.S. District Judge